# Exhibit B



* 5 0 4 7 0 8 1 *
FILED
8/5/2024
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L006012
Calendar, I
28803549

FILED DATE: 8/5/2024 11:53 AM    2024L006012

July 6, 2021

Dear Lakeisha Stone,

We are excited to offer you a position with North Lawndale College Preparatory Charter High School (NLCP) as a social studies teacher. We are grateful to have your talent and efforts leading and supporting student learning. We hope you will choose to join us as we are confident that you will be an asset to our school community and we are confident you will find this new opportunity both challenging and rewarding. The following points outline the terms and conditions we are proposing.

Start date: *August 2021*

Salary: $ 65,323

Hours of work: M-F 8:00a - 3:45p

Probation: Your probation is based on the completion of the onboarding and orientation program for NLCP

Group benefits: NLCP offers a comprehensive benefits package that starts on your first day of employment.  Those offerings include:  BCBS PPO and HMO medical options, Guardian Dental PPO and DHMO options, Eyemed Vision Insurance, NLCP paid life insurance and long term disability, and voluntary short term disability and life insurance options, 403b option for retirement, and Chicago Teachers Pension Fund contributions for employees who hold a current IL Professional Educator License.

*Reporting relationship: Darryl Baker, Assistant Principal and Kyera Bradley, Assistant Principal Intern*

If you accept the terms of this  offer, please sign this offer letter and return to DeAndre Brown, dbrown@nlcphs.org

Best,

*Kyera Bradley*

*Assistant Principal Intern*

With the signature below, I accept this offer for employment.

_____          _____

Name                                              Date

Hearing Date: No hearing scheduled
Location: < Court Room Number >
Judge: Calendar, I



NORTH LAWNDALE
C O L L E G E   P R E P
*To and Through College!*

Christiana Campus
1615 S. Christiana Ave.
Chicago, IL 60623

Collins Campus
1313 S. Sacramento Dr.
Chicago, IL 60623

FILED
8/5/2024 11:53 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L006012
Calendar, I
28803549

FILED DATE: 8/5/2024 11:53 AM   2024L006012

Dear Lakeisha Stone,

Over the past few months, we have researched market trends and worked to create a staff salary scale for North Lawndale College Prep that is competitive and honors the hard work and dedication of our staff. We are inspired by our staff's efforts and outcomes every day and hope you will see this reflected in the salary increase.

We are pleased to inform you that your salary for SY 22-23 will be $74,907. The increase in your salary will be effective 8/1/2022

Your position next year is Teacher. If you are a teacher, this salary is based on placement in Lane 3 Step 7. To verify these placements, send a resume, license, and a copy of your transcripts to hrteam@nlcphs.org. We will also ask for employment verification forms.

NLCP will continue to offer competitive benefits packages. Each July, we renegotiate our plans with our carriers and work to provide the best benefit options for our employees and their families. We understand the importance of access to high quality benefits and are committed to keeping the costs as low as possible.

We appreciate your commitment to create a strong school culture and provide excellent instruction for our students and commend you for all you have accomplished this year.

If you have any questions or concerns, please reach out to your principal or assistant principal. If you do not plan to return for SY 22-23, please reach out to your supervisor immediately.  If your plans are still uncertain, please let us know so we can schedule a follow-up conversation.

We look forward to SY 22-23 and the teamwork ahead. Thank you for being a part of the Phoenix team. Together, we rise.

Best,

Michael Stewart
Principal, Christiana Campus

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, I

November 1, 2023

**EXPERT REPORT:** **E. Hopewell**

* 5 0 4 7 0 0 8 4 *

FILED
8/5/2024 11:53 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L006012
Calendar, I
28803549

FILED DATE: 8/5/2024 11:53 AM    2024L006012

# REPORT OF POTENTIALLY FRAUDULENT TRANSACTIONS

### By Earl Hopewell, MBA., CPA., CFE

**IN THE MATTER OF:**

**LAKEISHA STONE**

v.

**NORTH LAWNDALE COLLEGE PREP CHARTER HIGH SCHOOL**

**And**

**Board of Directors (Individually)**

November 1, 2023
**EXPERT REPORT:**

**E. Hopewell**

FILED DATE: 8/5/2024 11:53 AM   2024L006012

## Table of Contents

Summary of Opinions: Potentially Fraudulent Transactions          3

Factual Bases Underlying Potentially Fraudulent Transactions      4-5

Organizational Red Flags                                          6

Limitations Of This Preliminary Investigative Report              7

Expert Rule 26 (B) Information                                    8

November 1, 2023
**EXPERT REPORT:**

* 5 0 4 7 0 0 8 4 *

**E. Hopewell**

FILED DATE: 8/5/2024 11:53 AM  2024L006012

## Summary of Opinions:   Potentially Fraudulent Transactions

- North Lawndale College Prep Charter High School's (NLCP) senior management produced and mailed to Lakeisha Stone two erroneous federal annual employee tax filings, reported to the United States Department of Treasury's Internal Revenue Service (IRS), that management knew and should have known to be incorrect.  Members of the organization's board of directors bear liability for the erroneous filings, and uncollected and unpaid Federal Trust Funds under the Internal Revenue codes.  (See Bases for Opinion, page 4).

- North Lawndale College Prep Charter High School's (NLCP) senior management potentially misappropriated Lakeisha Stone's pension contributions to the Chicago Teachers Pension Fund, thereby engaging in potentially abusive tax transactions involving a retirement plan.  Members of the organization's board of directors bear liability for the abusive tax transactions under the Internal Revenue codes. (See Bases for Opinion, page 5).

- North Lawndale College Prep Charter High School's senior management knew and should have known that its weak internal control structure over processing of employee tax filings and pension fund contributions would result in material misstatement and financial irregularities.

3

November 1, 2023
**EXPERT REPORT:**                                                   **E. Hopewell**

**Factual Bases for Opinions Expressed**

The following facts were relied upon by this expert in this report:

1. Lakeisha Stone is a certified and licensed teacher during all relevant times (See Exhibit A).

2. Lakeisha Stone completed the on-boarding process put forth by the organization resulting in her attestation to the process.(See Exhibit B).

3. Lakeisha Stone received an initial contract from NLCP. (See Exhibit C).

4. Lakeisha Stone received a second contract from NLCP. (See Exhibit D).

5. Lakeisha Stone's Paycor bi-weekly payroll direct-deposit receipts do not reconcile to her annual employee federal tax filings mailed to her residence. Stone's tax practitioner, Nedra Cales, CPA., Informed Stone of the errors and omissions along with the unreconciled status of the documents as required by United States Treasury Department Circular No. 230 (See Exhibit E). This expert confirmed these matters.

6. Internal Revenue Code Section 7501 requires NLCP to the withholding and collection of Internal Revenue taxes be held in a special trust fund.

7. IRC Section 6672(a) addresses the failure to collect or pay over trust fund taxes as willful conduct by responsible person(s).

8. A responsible person's failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid satisfies the willfulness criteria. (Finley v United States, 123 F.3d 1342) (10th. Cir.1997).

9. A voluntary board member of a tax-exempt organization who is involved in the financial decisions of the company may be a responsible person. (See Jefferson v. United States, 459 F.Supp.2d 685 (N.D. ILL.2006).

4

November 1, 2023
**EXPERT REPORT:**

E. Hopewell

10. Lakeisha Stone's initial contract (See Exhibit F) and NLCP's On-Boarding documents require periodic pension contributions totaling 9% of her total wages be contributed to the Chicago Teachers Pension Fund (inclusive of 2% by the employee and 7% by the employer).

11. Chicago Teachers Pension Fund confirmed that it received no pension contributions from NLCP for Lakeisha Stone for either 2021, 2022, or the 2023 fiscal or calendar years. (See Exhibit G).

12. United States Treasury Department Circular No. 230, Title 31 Code of Federal Regulations, Subtitle A, Part 10, published June 12, 2014, (See Exhibit E), govern how licensed Certified Public Accountants (CPA) must respond to:

    a. Knowledge of Omissions, and
    b. Must promptly make disposition of such omissions without any unreasonable delay.

13. Illinois State Tax Form AG-990 has been reviewed and contains many of the defalcations noted in items 1) through 12) above, including but not limited to the false certification by management of NLCP that there are no misappropriations or fraud contained in the filed AG-990 forms for 2021-2022 years.

FILED DATE: 8/5/2024 11:53 AM  2024L006012

November 1, 2023

**EXPERT REPORT:**                                                          **E. Hopewell**

*5 0 4 7 0 0 8 4*

FILED DATE: 8/5/2024 11:53 AM  2024L006012

## NLCP's Known Red Flags

- Both Generally Accepted Governmental Auditing Standards (GAGAS) and Generally Accepted Accounting Standards (GAAS) provide guidance to licensed CPA practitioners about red flags that indicate the occurrence of fraud in the financial reporting process. Additionally, the State of Illinois published a document entitled ***Illinois Charter Schools Fraud,*** *Risking Public Money,* Jan. 2015., that details "charter schools oversight depends heavily on self-reporting by charter schools, **or by whistleblowers** because general auditing techniques alone do not uncover fraud." (See Exhibit H).

Here are some *key red flags* that pertain to NLCP:

1. NLCP received $1,390,000 from the United States *Payroll Protection Program* in May 2020 that was forgiven in March 2022.

2. Despite the PPP forgiven loan, NLCP has a fully-drawn $700,000 line-of-credit.

3. NLCP is supposedly under "CPS pension contribution" reconciliation process. The audited financial statements discloses that pension contributions for fiscal year 2021 has been made and the 2022 fiscal year is still open. (See Exhibit I).

4. NLCP has not made timely reconciliations for accrued expenses and accrued liabilities.

5. Chicago Teachers Pension Fund has not received pension contributions from Lakeisha Stone (Exhibit G) in 2021, 2022, or 2023. (See Exhibit G).

6

November 1, 2023
**EXPERT REPORT:**                                    **E. Hopewell**

**Limitations of this Preliminary Report.**

This preliminary report is preliminary subject to revision based upon documentation

forthcoming from the discovery phase of litigation.    It is not only preliminary in the

investigative process but it relies on information and documentation from only the client,

Lakeisha Stone, and her attorney.   As matters progress beyond discovery, the legal process

may produce documentation that may substantially change preliminary opinions and bases for

the opinions expressed in this preliminary report.   I reserve the right to amend this report

based upon such matters.

7

November 1, 2023

**EXPERT REPORT:**

**E. Hopewell**

\* 5 0 4 7 0 0 8 4 \*

FILED DATE: 8/5/2024 11:53 AM 2024L006012

      **Earl Hopewell, MBA., CPA., CFE.,** has authored this preliminary report. Hopewell is a licensed Wisconsin CPA (having held license in both Illinois and Michigan since the mid-1980s) and a founding member of the Association of Certified Fraud Examiners. Hopewell's Rule 26 (B) Resume has been attached and discloses his expertise in public school matters in the State of Illinois which includes the following cases:

1. **Shirley Woodard v Chicago Board of Education/KMPG International.   00-C-5515**

   In this case, Hopewell testified against Chicago Board of Education and its auditor, KPMG, which produced a report entitled, "Litany of Financial Horrors by Shirley Woodard." Hopewell's investigative report disclosed how KPMG failed to following generally accepted standards in producing a report that not only falsified but overstated financial transactions. Woodard prevailed at trial in the Northern District Federal Court against both CBOE and KPMG.

2. **State of Illinois v Alex Boyd and Mable Chapman.  12CR-14315**

   In this case, the Cook County States' Attorney Anita Alvarez, brought forth a 26-count felony-theft criminal indictment against West Harvey School District 147's superintendent and board treasurer. Hopewell investigated and produced a report that concluded no fraud or theft took place at the school district from 2002 through 2012. On the morning of trial, the States Attorney dismissed all charges against Mable Chapman and accepted a insignificant violation of law from Boyd due to Hopewell's investigative work.

FILED DATE: 8/5/2024 11:53 AM  2024L006012



**EXHIBIT A**

## EMPLOYEE HANDBOOK ACKNOWLEDGMENT AND RECEIPT

I have received my copy of the Employee Handbook.

I understand and agree that nothing in the Employee Handbook creates, or is intended to create, a promise or representation of continued employment and that employment at NLCP is employment at will, which may be terminated at the will of either NLCP or myself.

Furthermore, I acknowledge that this handbook is neither a contract of employment nor a legal document.

Employee's Signature

Employee's Name (Print)

Date

**EXHIBIT B**



NORTH LAWNDALE
C O L L E G E   P R E P

FILED DATE: 8/5/2024 11:53 AM 2024L006012

July 6, 2021

Dear Lakeisha Stone,

We are excited to offer you a position with North Lawndale College Preparatory Charter High School (NLCP) as a social studies teacher. We are grateful to have your talent and efforts leading and supporting student learning. We hope you will choose to join us as we are confident that you will be an asset to our school community and we are confident you will find this new opportunity both challenging and rewarding. The following points outline the terms and conditions we are proposing.

Start date: *August 2021*

Salary: $ 65,323

Hours of work: M-F 8:00a - 3:45p

Probation: Your probation is based on the completion of the onboarding and orientation program for NLCP

Group benefits: NLCP offers a comprehensive benefits package that starts on your first day of employment.  Those offerings include:  BCBS PPO and HMO medical options, Guardian Dental PPO and DHMO options, Eyemed Vision Insurance, NLCP paid life insurance and long term disability, and voluntary short term disability and life insurance options, 403b option for retirement, and Chicago Teachers Pension Fund contributions for employees who hold a current IL Professional Educator License.

Reporting relationship: *Darryl Baker, Assistant Principal and Kyera Bradley, Assistant Principal Intern*

If you accept the terms of this  offer, please sign this offer letter and return to DeAndre Brown, dbrown@nlcphs.org

Best,

*Kyera Bradley*

*Assistant Principal Intern*

With the signature below, I accept this offer for employment.

_____          _____
Name                                                          Date

**EXHIBIT C**



**NORTH LAWNDALE**
C O L L E G E   P R E P
*To and Through College!*

Christiana Campus
1615 S. Christiana Ave.
Chicago, IL 60623

Collins Campus
1313 S. Sacramento Dr.
Chicago, IL 60623

FILED DATE: 8/5/2024 11:53 AM   2024L006012

Dear Lakeisha Stone,

Over the past few months, we have researched market trends and worked to create a staff salary scale for North Lawndale College Prep that is competitive and honors the hard work and dedication of our staff. We are inspired by our staff's efforts and outcomes every day and hope you will see this reflected in the salary increase.

We are pleased to inform you that your salary for SY 22-23 will be $74,907. The increase in your salary will be effective 8/1/2022

Your position next year is Teacher. If you are a teacher, this salary is based on placement in Lane 3.Step 7. To verify these placements, send a resume, license, and a copy of your transcripts to hrteam@nlcphs.org. We will also ask for employment verification forms.

NLCP will continue to offer competitive benefits packages. Each July, we renegotiate our plans with our carriers and work to provide the best benefit options for our employees and their families. We understand the importance of access to high quality benefits and are committed to keeping the costs as low as possible.

We appreciate your commitment to create a strong school culture and provide excellent instruction for our students and commend you for all you have accomplished this year.

If you have any questions or concerns, please reach out to your principal or assistant principal. If you do not plan to return for SY 22-23, please reach out to your supervisor immediately. If your plans are still uncertain, please let us know so we can schedule a follow-up conversation.

We look forward to SY 22-23 and the teamwork ahead. Thank you for being a part of the Phoenix team. Together, we rise.

Best,

Michael Stewart
Principal, Christiana Campus

**EXHIBIT D**

FILED DATE: 8/5/2024 11:53 AM 2024L006012

**Treasury Department Circular No. 230 (Rev. 6-2014)**

Catalog Number 16586R
www.irs.gov

**Regulations Governing Practice before the Internal Revenue Service**

---

Department
of the
Treasury

**Internal Revenue Service**

**Title 31 Code of Federal Regulations, Subtitle A, Part 10, published (June 12, 2014)**

**EXHIBIT E**

* 5 0 4 7 0 0 8 4 *

FILED DATE: 8/5/2024 11:53 AM   2024L006012

## Subpart B —Duties and Restrictions Relating to Practice Before the Internal Revenue Service

### § 10.20  Information to be furnished.

(a) *To the Internal Revenue Service.*

(1) A practitioner must, on a proper and lawful request by a duly authorized officer or employee of the Internal Revenue Service, promptly submit records or information in any matter before the Internal Revenue Service unless the practitioner believes in good faith and on reasonable grounds that the records or information are privileged.

(2) Where the requested records or information are not in the possession of, or subject to the control of, the practitioner or the practitioner's client, the practitioner must promptly notify the requesting Internal Revenue Service officer or employee and the practitioner must provide any information that the practitioner has regarding the identity of any person who the practitioner believes may have possession or control of the requested records or information. The practitioner must make reasonable inquiry of his or her client regarding the identity of any person who may have possession or control of the requested records or information, but the practitioner is not required to make inquiry of any other person or independently verify any information provided by the practitioner's client regarding the identity of such persons.

(3) When a proper and lawful request is made by a duly authorized officer or employee of the Internal Revenue Service, concerning an inquiry into an alleged violation of the regulations in this part, a practitioner must provide any information the practitioner has concerning the alleged violation and testify regarding this information in any proceeding instituted under this part, unless the practitioner believes in good faith and on reasonable grounds that the information is privileged.

(b) *Interference with a proper and lawful request for records or information.* A practitioner may not interfere, or attempt to interfere, with any proper and lawful effort by the Internal Revenue Service, its officers or employees, to obtain any record or information unless the practitioner believes in good

faith and on reasonable grounds that the record or information is privileged.

(c) *Effective/applicability date.* This section is applicable beginning August 2, 2011.

### § 10.21  Knowledge of client's omission.

A practitioner who, having been retained by a client with respect to a matter administered by the Internal Revenue Service, knows that the client has not complied with the revenue laws of the United States or has made an error in or omission from any return, document, affidavit, or other paper which the client submitted or executed under the revenue laws of the United States, must advise the client promptly of the fact of such noncompliance, error, or omission. The practitioner must advise the client of the consequences as provided under the Code and regulations of such noncompliance, error, or omission.

### § 10.22  Diligence as to accuracy.

(a) *In general.* A practitioner must exercise due diligence—

(1) In preparing or assisting in the preparation of, approving, and filing tax returns, documents, affidavits, and other papers relating to Internal Revenue Service matters;

(2) In determining the correctness of oral or written representations made by the practitioner to the Department of the Treasury; and

(3) In determining the correctness of oral or written representations made by the practitioner to clients with reference to any matter administered by the Internal Revenue Service.

(b) *Reliance on others.* Except as modified by §§ 10.34 and 10.37, a practitioner will be presumed to have exercised due diligence for purposes of this section if the practitioner relies on the work product of another person and the practitioner used reasonable care in engaging, supervising, training, and evaluating the person, taking proper account of the nature of the relationship between the practitioner and the person.



# Transactions

FILED DATE: 8/5/2024 11:53 AM 2024L006012

## More In Retirement Plans ✛

The IRS is engaged in extensive efforts to curb abusive tax shelter schemes and transactions. The Tax-Exempt and Government Entities Division of the IRS, including the office of Employee Plans, participates in this IRS-wide effort by devoting substantial resources to the identification, analysis, and examination of abusive tax shelter schemes and promotions.

- <u>Listed Transactions - Background</u>
- <u>Employee Plans Listed Transactions</u>
- <u>How Abusive Transactions Impact Availability of EPCRS</u>
- <u>Report an Abusive Transaction Involving a Retirement Plan</u>
- <u>Additional Resources</u>

**EXHIBIT F**

Employee Plans maintains the Abusive Transaction Hotline that people can use to share information (anonymously, if preferred) about abusive tax shelters and emerging issues that may be abusive in retirement plans.

- Email: eoclass@irs.gov ✉
- Mail:

  Internal Revenue Service
  EP Tax Shelter Coordinator
  31 Hopkins Plaza, Room 1542
  Baltimore, MD 21201

Return to top

# Additional Resources

IRS Corporate Abusive Tax Transactions - Listed transactions, with citations of published guidance, regulations or court cases and other useful resources.

S Corporation ESOP Guidance - Guidance and other useful information to assist in understanding issues that may exist with S Corporation ESOPs

Describe the failure - For example: "The plan sponsor failed in operation to make timely contributions to the plan as required by the written terms of the plan document."

The description should include the following:

- The plan year or years for which contributions were not made
- Amount of the deficiency
- Number of participants who should have received a contribution
- Why the failure occurred

# Form 14568, Section III. Description of Proposed Method Correction

Describe the correction method applicable to each failure listed on the attachment for Section II. Include the following information:

- The amount of the corrective contribution made (or to be made) to the plan. Include an explanation of how this amount was determined.
- The date that the late contribution was made

* 5 0 4 7 0 0 8 4 *

**From:** Paul Pasternak <pasternakp@ctpf.org>
**Sent:** Monday, October 16, 2023 10:51 AM
**To:** Becky Ziak Gonzales <gonzalesr@ctpf.org>
**Cc:** Edgar M. Samayoa, MBA <samayoae@ctpf.org>; Daniel J. Hurtado <hurtadod@ctpf.org>; Jenn Pentangelo <pentangeloj@ctpf.org>; Ketki Shah, MBA <shahk@ctpf.org>
**Subject:** RE: Lakeisha Stone - Authorization form and questions

Good morning Becky,

Below is snapshot of Ms. Stone employment history and for which schools contributions were reported. During her employment with North Lawndale she was classified as full time employee, however in the second screenshot, the employer indicated that she started and ended her employment on the same day. This looks like the employer entered this date incorrectly. I can follow up with the employer but if I could have a copy of last paystub showing contributions withheld by the employer would be helpful. If that's not possible, then is there a possibility to get exact employment days from Ms. Stone while at North Lawndale?

| Employer | Current Employment Status | Employment Years | Contributions Reported |
|---|---|---|---|
| Chicago Public Schools | Active | FY23 | Yes |
| Kipp Ascend Charter School | Terminated | FY20-FY22 | Yes |
| North Lawndale College Prep | Terminated | FY23 | No |

**North Lawndale Employment**

Employment Status

| Status | Start Date | End Date | |
|---|---|---|---|
| Active | 08/01/2021 | 07/31/2021 | |

| Status | Start Date | End Date | Last Day Worked |
|---|---|---|---|
| Terminated | 08/01/2021 | mm/dd/yyyy | 01/06/2023 |

Add Status

Please let me know if you have any que-

**EXHIBIT G**

Thank you!

FILED DATE: 8/5/2024 11:53 AM 2024L006012

* 5 0 4 7 0 0 8 4 *

FILED DATE: 8/5/2024 11:53 AM  2024L006012

Paul Pasternak
*Employer Reporting Manager*
Chicago Teachers' Pension Fund
T: 312-604-1239 | F: 312-641-7185

**From:** Becky Zlak Gonzales
**Sent:** Friday, October 13, 2023 3:14 PM
**To:** calvita.frederick@att.net <calvita.frederick@att.net>
**Subject:** Lakeisha Stone - Authorization form and questions

Hi Calvita,

Attached is the information release form, please return it to me at your earliest convenience. The information that I would need to have benefits/compliance look into this would be:

- Dates of employment at the charter.
- Exact check dates in which she is seeing deductions for pension contributions but believes contributions were not posted to her CTPF account.
- Amounts of contributions deducted.
- Name of the school (I think you said North Lawndale Charter, but please verify).
- Was Ms. Stone working in a full-time teaching position at the school?

Thanks,

Becky



* 5 0 4 7 0 0 8 4 *

FILED DATE: 8/5/2024 11:53 AM 2024L006012

# Risking Public Money: Illinois Charter School Fraud

## Best Practices to Protect Public Dollars & Prevent Financial Mismanagement



## January 2015



**EXHIBIT H**





* 5 0 4 7 0 0 8 4 *

FILED DATE: 8/5/2024 11:53 AM   2024L006012

# Risking Public Money: Illinois Charter School Fraud

## Best Practices to Protect Public Dollars & Prevent Financial Mismanagement

**Center for Popular Democracy**
**Action Now**

January 2015

## Executive Summary

In 2010, fourteen years after Illinois passed its charter school law, the U.S. Department of Education raised a red flag about the state's oversight of fiscal controls at its charter schools, finding that the state "has no system in place for monitoring [charter schools]." Four years later, this problem continues. To date, $13.1 million in fraud by charter school officials has been uncovered in Illinois. Because of the lack of transparency and necessary oversight, total fraud is estimated at **$27.7 million in 2014 alone.** Our research uncovered three fundamental flaws with the state's oversight of charter schools:

- **Oversight depends heavily on self-reporting by charter schools, or by whistleblowers.** Illinois oversight agencies rely almost entirely on complaints from whistleblowers and audits paid for by charter operators. Both methods are important to uncover fraud; however, neither is a systematic approach to fraud detection, nor are they effective in fraud prevention.

- **General auditing techniques alone do not uncover fraud.** The audits commissioned by the charters and provided to Illinois oversight agencies use general auditing techniques, not those specifically designed to uncover fraud. The current processes may expose inaccuracies or inefficiencies; however, without audits targeted at uncovering financial fraud, state and local agencies will rarely be able to detect fraud without a whistleblower.

- **Adequate staffing is necessary to detect and eliminate fraud.** We found evidence that the government agencies tasked with investigating fraud are severely understaffed, which is prohibitive to conducting high quality, time-intensive audits of any type.

We propose the following targeted reforms of the existing oversight structure to remedy these flaws:

## Mandate Audits Designed to Detect and Prevent Fraud

- Charter schools should institute an internal fraud risk management program, including an annual fraud risk assessment and audits that specifically investigate high-risk areas;

- Charter schools should commission audits of internal controls over financial reporting that are integrated with an audit of financial statements;

1

FILED DATE: 8/5/2024 11:53 AM   2024L006012

June 30, 2022 and 2021, total lease expense under operating lease agreements amounted to $14,684 and $23,708, respectively.

* 5 0 4 7 0 0 8 4 *

### NOTE 8   EMPLOYEE BENEFIT PLANS

The School participates in the Public School Teachers' Pension and Retirement Fund of Chicago (the Plan), a defined benefit plan covering all certified employees. The School makes contributions to the Plan each year equal to 7% of all participants' base salary. In addition, the School deducts 2% from the employees' base salary to be paid into the Plan. Total expenses for these contributions for the years ended June 30, 2022 and 2021 were $257,682 and $204,114, respectively.

During the years ended June 30, 2022 and 2021, CPS deducted from the School additional contributions of $293,582 and $423,977, respectively, representing 11.16% of estimated pensionable salaries.

The difference between the estimated contributions deducted by CPS and the calculated contributions based on actual pensionable salaries for each fiscal year is the pension true-up amount. The pension true-up amount is subject to reconciliation and review by CPS prior to being paid out by or owed to CPS and, as a result, the outstanding true-up amounts may change. The amounts refunded or paid as a result of the claim will be recognized in the year CPS has completed their review and reconciliation.

The pension true-up reconciliation and approval by CPS for the school was completed for the year ended June 30, 2021 during the year ended June 30, 2022 and resulted in a true-up receipt of $98,563. The pension true-up reconciliation and approval by CPS for the school was completed for the year ended June 30, 2020 during the year ended June 30, 2021 and resulted in a true-up receipt of $64,413. The pension true-up reconciliation and approval by CPS for the School is still outstanding for the year ended June 30, 2022.

A summary of the School's participation in the Fund for the year ended June 30, 2022 is as follows:

| | | |
|---|---|---|
| Total Pensionable Salaries | $ | 3,681,165 |
| Employee's Contribution Expense Picked up by Employer (7%) | $ | 257,682 |
| Employer's Contribution Expense (11.16%) | $ | 410,818 |
| Less: CPS Deduction Amount for Employer's Pension Expense | | (293,582) |
| Pension True-Up Amount | $ | 117,236 |

(18)

### NOTE 8   EMPLOYEE BENEFIT PLANS (CONTINUED)

# EXHIBIT I

The School adopted a 403(b) plan for the benefit of its employees during the year ended June 30, 2019. All employees are eligible to participate in the Plan and make contributions to the Plan up to the maximum dollar limit which is set by law. The Plan includes discretionary employer contributions. Charges to expenses for the Plan amount to $-0- for the years ended June 30, 2022 and 2021.

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act

Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| EEOC | 2024L006012 |
| FEPA | and EEOC Calendar, I |

**Illinois Department Of Human Rights**

*State or local Agency, if any*

| I Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| Lakeisha Stone | (773) 870-9978 | 1981 |

Street Address

1510 S 48TH CT

CICERO, IL 60804

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| North Lawndale College Prep High School | 501+ Employees | |

Street Address

1615 S. Christiana

Chicago, IL 60623

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address | City, State and ZIP Code

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Age, Retaliation | 10/07/2022 | 12/15/2022 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with the Respondent in or around July 2019. My most recent position title was African American History Teacher. During my employment, I was treated less favorably than similarly situated, younger, employees. I was also subjected to different terms and conditions of employment, including but not limited to, not being compensated for additional duties, and being excluded from the Respondents 30-60-90 program. I complained to the Respondent. Subsequently, on or about December 15, 2022, I was discharged.

I believe I have been discriminated against because of my age, 40 (YOB: 1981), and in retaliation for engaging in protected activities, in violation of the Age Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| I declare under penalty of perjury that the above is true and correct. | |
| **Digitally Signed By: Lakeisha Stone** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| 03/01/2023 | |
| *Charging Party Signature* | |

Page 1 of 2

FILED DATE: 6/5/2024 12:00 AM 2024L006012



CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

**(This Notice replaces EEOC FORMS 161, 161-A & 161-B)**

Issued On: 03/04/2024

**To:** Lakeisha Stone
1510 S 48TH CT
CICERO, IL 60804

**Charge No:** 440-2023-02557

**EEOC Representative and email:**   FATIMA SANDOVAL
Investigator
fatima.sandoval@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2023-02557.

On behalf of the Commission,

Digitally Signed By:Amrith Kaur Aakre
03/04/2024

Amrith Kaur Aakre
**District Director**



FILED DATE: 6/5/2024 12:00 AM 2024L006012

**Cc:**
Kevin McKeown
Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP
500 PARK BLVD STE 1000
Itasca, IL 60143

Erin Simunovic
North Lawndale College Prep
1615 S. Christiana
Chicago, IL 60623

Athena Christofalos
Hodges and Loizzi
500 PARK BLVD STE 1000
Itasca, IL 60143

Calvita J Frederick
Calvita J. Frederick & Associates
Post Office Box 802976
Chicago, IL 60680


Please retain this notice for your records.



Enclosure with EEOC Notice of Closure and Rights (01/22)

\* 5 0 4 7 0 0 8 4 \*

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2023-02557 to the



Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2023-02557 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.