# Exhibit C

Case: 1:24-cv-11350 Document #: 7-4 Filed: 11/12/24 Page 2 of 10 PageID #:136

Elue v. City of Chicago, Not Reported in Fed. Supp. (2017)
2017 WL 2653082, 2017 IER Cases 211,471

🚩 KeyCite Yellow Flag - Negative Treatment
Distinguished by [Montoya v. Atkore International, Inc.,](#) N.D.Ill., March 19, 2019

2017 WL 2653082
United States District Court, N.D. Illinois, Eastern Division.

Vera ELUE, Plaintiff,
v.
CITY OF CHICAGO, Defendant.

No. 16 CV 09564
|
Signed 06/20/2017

**Attorneys and Law Firms**

[Martin K. Denis](#), [Bethany A. Hilbert](#), Barlow Kobata & Denis, [Michael David Robbins](#), Michael D. Robbins & Associates, Chicago, IL, for Plaintiff.

[Carl Michael Johnson](#), O'Hagan Meyer LLC, [Daniel W. Myerson](#), [Mark J. Bereyso](#), [Susan Margaret O'Keefe](#), City of Chicago, Department of Law, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

[Manish S. Shah](#), United States District Judge

*1 Plaintiff Vera Elue sues the City of Chicago for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, [42 U.S.C. § 2000e *et seq.*](#), (Count I) and for retaliation under the Illinois Whistleblower Act, [740 ILCS 174/1 *et seq.*](#) (Count II). The City moves to dismiss Elue's whistleblower claim. For the following reasons, the motion is granted in part, denied in part.

**I. Background**[1]

[1] Bracketed numbers refer to entries on the district court docket. The allegations of Elue's amended complaint, [21], are taken as true for resolving the motion to dismiss.

Vera Elue, an attorney, was senior legal counsel overseeing prosecutions and settlement agreements for the City of Chicago's Department of Business Affairs and Consumer Protection. She had started working for the department in 2005. Elue supervised other employees (including other attorneys), represented the department in administrative and court proceedings, and generated over $20 million in consumer retail and fraud prosecutions for the City of Chicago.

In March 2012, the Illinois Attorney Registration and Disciplinary Commission received a complaint that John Mariane, a Manager of Collections/Public Way in Elue's department, had engaged in the unauthorized practice of law. A month or two later, Barbara Gressel, the department's Deputy Commissioner and Elue's immediate supervisor, asked Elue to sign an affidavit stating that Mariane had not practiced law on behalf of the department. An attorney for the City also asked Elue to sign the affidavit. Elue refused to sign, telling them that she believed the affidavit contained false statements and therefore violated Illinois and federal law prohibiting perjury and the Illinois Rules of Professional Conduct.

The following summer, Elue complained to the department's Commissioner that Gressel was involved in violating Illinois law, rules, and regulations on public corruption. The Commissioner told Elue to talk to Gressel. Gressel approached Elue two days later, banged her hand on Elue's desk, yelled profanities at Elue, and told Elue to never again complain about Gressel or Gressel would "fix" Elue and teach her a lesson she would never forget. Around this time, Elue filed a complaint with the City's Office of the Inspector General, alleging that the department, Gressel, and Mariane had violated Illinois law and regulations.

Also during that summer, Elue—who is black—complained to Gressel that the department's black staff members and investigators were being treated differently than white employees. Several months later, on October 21, 2013, in Elue's presence, Mariane and William Basek (a law clerk in the department) told an administrative law judge that Sam Kavathas (an attorney defending clients before the department) had made racial statements, refused to deal with Elue, and said that he wanted a white man to handle the department's cases for his clients. That same day, Elue complained about Kavathas's statements to the Commissioner. The Commissioner asked Gressel to write a letter to Kavathas, denying his request. Gressel did not write the letter. The issue came up again on November 5, 2013, when Elue was in court prosecuting cases against the Kavathas's clients. Elue again complained to Gressel about Kavathas. A few days later, Gressel told Elue to prepare settlement offers to Kavathas's clients and that Basek and

Case: 1:24-cv-11350 Document #: 7-4 Filed: 11/12/24 Page 3 of 10 PageID #:137

Elue v. City of Chicago, Not Reported in Fed. Supp. (2017)
2017 WL 2653082, 2017 IER Cases 211,471

Mariane—who are white men—would handle settlement offers to Kavathas. Elue was removed from handling settlement offers during litigation calls to Kavathas. Elue later complained about the situation to the Commissioner, copying Gressel on her email.

**\*2** Around this time, the department also posted a job opening for an Assistant Commissioner. The job posting went up on October 28, 2013, and closed on November 5, 2013. The job posting stated that an interview was required and that the selected candidate needed at least five years of litigation experience with at least two years in a managerial role. Elue told Gressel that she wanted to apply for the position. Gressel responded that she wanted to give the position to someone outside the department, not Elue, and that she did not want to lose Elue as litigation counsel handling both the retail and fraud administrative hearing litigation calls. Also, months before the job had been posted, Mariane told Elue that Gressel said she was going to become the Deputy Commissioner and that Jim Potter had been selected as Assistant Commissioner. [2] Elue applied for the Assistant Commissioner position and was interviewed by the Commissioner and Gressel in December 2013.

[2] Elue's complaint also alleges, inconsistently, that Gressel was already Deputy Commissioner. *See* [21] ¶¶ 24, 36.

In January 2014, during a meeting with the Commissioner and other staff members, Gressel said that Elue was a problem employee and that she wanted Elue removed from the retail and fraud calls. Later that month, Elue was told that she was being removed from handling the retail call. (Elue had handled the call for the ten years, spending approximately three days a week on it.) A white attorney, with only a few years' experience in litigation, replaced Elue in handling the retail call. Elue asked Gressel if she was being removed from the retail call in retaliation but Gressel did not give any explanation.

In February 2014, the department announced that Jim Potter, who is white, was selected for the Assistant Commissioner position. At that time, Elue had more litigation and managerial experience than Potter, who had no managerial experience. Elue filed another complaint with the Office of the Inspector General, alleging that the department had discriminated and retaliated against her. The following month, Gressel and the Commissioner told Elue that she would no longer handle the fraud call and that they wanted to remove her from the fraud call so that she could handle laws being enacted in the future. Gressel told Elue that she would not be handling any more court cases. Elue asked if she had done anything wrong and was told that she had not.

Starting in April 2014, Elue was assigned to meet with community groups to resolve their complaints. Conducting and scheduling these community hearings became Elue's primary job duty, and her job duties involving administrative law judge hearings or litigation were substantially reduced. Before April 2014, Elue was handling hundreds of court cases a year. Afterwards, she only had ten court cases in 2014 (after April), ten in 2015, and six in 2016. Elue alleges that the community hearing assignments are "dead-end" job duties that white attorneys and employees in the department have successfully avoided.

Elue also alleges that she has been subjected to continuous harassment by the City and its employees, including Gressel, since March 2014 and through January 2017, including:

- Excluding Elue from some meetings, communications sent to other staff members, and department reports and investigations;

- At times giving other employees credit for Elue's work and removing Elue's name from documents that she drafted;

- Reassigning some matters to other employees;

- Giving Elue contradictory instructions and rebuking her for following them;

- Making demeaning or mocking comments to or about Elue and instructing other employees and persons to ignore Elue's recommendations;

- Treating Elue in a humiliating manner by: telling her to attend a meeting but not say anything at it in May 2014, and in August 2015 when Gressel told other employees that Elue had been removed from community hearings;

- Undermining Elue and rendering her job duties involving "KCRO" useless between August 2015 and August 2016 by having the department stop enforcing "KCRO" and by countermanding Elue's requests for KCRO compliance; [3]

**\*3** • Gressel telling an alderman to not give Elue new work assignments;

- Gressel refusing to respond to Elue's multiple requests for information about the Minimum Wage Ordinance and the Sick Leave Ordinance;

- Giving Elue derogatory performance appraisals in February 2014 and August 2016;

- Repeatedly making false accusations against Elue, resulting in written discipline and placement on a performance improvement plan in 2014;

- Repeatedly threatening Elue with demotion in 2015;

- Making false complaints about Elue's conduct, falsely accusing her of criminal violations, and encouraging others to make false complaints about Elue;

- Gressel asking an employee in the fall of 2014 to spy on Elue and report back with any "dirt;"

- In January 2017, Elue's officemate threw his garbage bin and back bag at Elue after speaking with Gressel.

[21] ¶¶ 70, 100. Elue filed suit against the City in October 2016, [1], and amended her complaint in January 2017. [21].[4] She brings claims against the city for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, (Count I) and for retaliation under the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq.* (Count II). The City moves to dismiss Elue's whistleblower claim. [23].

[3]  Elue does not define "KCRO" in her complaint, but she likely refers to the Protecting Tenants in Foreclosed Rental Property Ordinance, commonly known as the "Keep Chicago Renting Ordinance," Chicago Municipal Code § 5-14-010 *et seq.*

[4]  The factual allegations outlining the alleged continuous harassment were not in Elue's original complaint. After the City moved to dismiss the whistleblower claim from Elue's original complaint, she filed an amended complaint with these additional allegations.

## II. Legal Standards
To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 678–79.

## III. Analysis
Under the Illinois Whistleblower Act, an employer may not retaliate against an employee:

- "who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation," 740 ILCS 174/15(a);

- "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation," 740 ILCS 174/15(b);

- "for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation," 740 ILCS 174/20;

- through an act or omission "materially adverse to a reasonable employee" because "of the employee disclosing or attempting to disclose public corruption or wrongdoing," 740 ILCS 174/20.1;

*4  - by threatening "any employee with any act or omission if that act or omission would constitute retaliation against the employee under this Act," 740 ILCS 174/20.2.

An employee can sue for "all relief necessary to make the employee whole," including reinstatement, back pay, and damages. 740 ILCS 174/30.

### A. Preemption[5]

[5]  Although the City brings its motion to dismiss under Rule 12(b)(6), IHRA preemption is more appropriately addressed under Rule 12(b)(1) because it divests a court of subject-matter jurisdiction. *See, e.g., Mendez v. Perla Dental*, 646 F.3d 420, 421–23 (7th Cir. 2011) (addressing IHRA preemption in terms of subject-matter jurisdiction because the IHRA establishes a comprehensive,

Case: 1:24-cv-11350 Document #: 7-4 Filed: 11/12/24 Page 5 of 10 PageID #:139

Elue v. City of Chicago, Not Reported in Fed. Supp. (2017)
2017 WL 2653082, 2017 IER Cases 211,471

and in certain cases exclusive, administrative procedure to address civil rights violations).

The City contends that Elue's whistleblower claim is preempted by the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, to the extent that it is premised on her alleged activity in opposing or complaining about racial discrimination. Elue responds that she carefully pled her whistleblower claim so that it does not mention racial discrimination and that her whistleblower claim instead centers on her complaints in 2012 about the false affidavit, in 2013 about public corruption, and in 2014 to the OIG about being denied the Assistant Commissioner position in retaliation.

The IHRA prohibits employers from retaliating against a person because she opposed what she believed to be unlawful discrimination or because she "made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act." 775 ILCS 5/6-101(A). Section 8-111(D) of the act also provides that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act," meaning that the IHRA preempts all state-law claims for a "civil rights violation" arising under it. *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 515–16 (1997). But "where a course of conduct states an independent state law claim, that independent claim is not preempted by the IHRA. That is, if the conduct would be actionable even aside from its character as a civil rights violation" under the IHRA, it is not preempted because the IHRA did not furnish the legal duty allegedly breached. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) (citing *Maksimovic*, 177 Ill.2d at 517).

Elue concedes that racial discrimination and retaliation for racial discrimination are conduct preempted by the IHRA. The City concedes that other instances of whistleblowing, unrelated to racial discrimination, are not preempted. Elue's whistleblower claim alleges retaliation for her refusal to sign the false affidavit in 2012, her public corruption complaints about Gressel in 2013, and her OIG complaint in 2014—these allegations do not rely on racial discrimination, and the City does not argue that they are preempted. Elue's whistleblower claim is not preempted by the IHRA. [6]

[6] To the extent Elue's 2014 OIG complaint refers to racial discrimination, if at all, any retaliation based on that is preempted by the IHRA and cannot support her whistleblower claim.

### B. Adverse Employment Action

**\*5** The City also moves to dismiss Elue's whistleblower claim for failure to state a claim under Rule 12(b)(6), arguing that she failed to plead a materially adverse employment action. Elue responds that only whistleblower claims brought under 740 ILCS 174/20.1 require retaliation amounting to a "materially adverse" action, and that she has also alleged her whistleblower claim under §§ 15(a)–(b), 20, and 20.2. Elue argues that under these other sections of the act, retaliation can be actionable if the conduct is sufficient to dissuade the employee from the protected activity. She also contends that retaliatory actions can be considered in the aggregate under a "totality of the circumstances" approach. However, the history of the act and Illinois appellate cases show that under the Illinois Whistleblower Act, the employer's retaliation must constitute a materially adverse employment action and that Illinois courts apply the same standard as for federal anti-retaliation statutes.

### 1. *To Be Actionable, Retaliation Under the Illinois Whistleblower Act Must Be Materially Adverse*

The Illinois Whistleblower Act was amended in 2009 to add §§ 20.1 and 20.2. These sections "expanded the scope of conduct that could give rise to a cause of action for an employee under the Act." *Money Mgmt., Inc. v. Thomas*, 2017 IL App (2d) 160333-U, ¶ 29. Section 20.1 was added to show that "retaliation is not limited to defined acts but rather includes *any act materially adverse* to a reasonable employee, within or without the workplace" and § 20.2 was added to prohibit "an employer from threatening retaliation against an employee." *Id.* (emphasis added). Therefore, "[r]etaliation, short of termination, under the IWA is defined as an 'act or omission [that] would be *materially adverse* to a reasonable employee.'" *LaRiviere v. Board of Trustees of S. Ill. Univ.*, 2015 IL App (5th) 140443-U, ¶ 23 (emphasis added) (quoting 740 ILCS 174/20.1).

"A materially adverse employment action is 'one that significantly alters the terms and conditions of the employee's job.'" *Owens v. Department of Human Rights*, 403 Ill.App.3d 899, 919 (1st Dist. 2010) (quoting *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004)). "[N]ot everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an employee did not like would form the basis of a

Case: 1:24-cv-11350 Document #: 7-4 Filed: 11/12/24 Page 6 of 10 PageID #:140

Elue v. City of Chicago, Not Reported in Fed. Supp. (2017)
2017 WL 2653082, 2017 IER Cases 211,471

discrimination suit.' " *Id.* (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)).

Elue contends that under *Bagwe v. Sedgwick Claims Management Services, Inc.*, 811 F.3d 866, 889 (7th Cir. 2016), retaliation need not be a materially adverse action and that instead a plaintiff need only show that "the employee would be dissuaded from engaging in the protected activity" by the retaliatory conduct. Elue, however, omits a key part of this quote, which states that "[t]o rise to the level of an *adverse action*, a change 'must be one that a reasonable employee would find to be *materially adverse* such that the employee would be dissuaded from engaging in the protected activity.' " *Id.* (emphasis added) (quoting *Lewis v. City of Chicago*, 496 F.3d 645, 655 (7th Cir. 2007)).

Elue also argues that each alleged retaliatory act cannot be considered separately but must be considered in the aggregate under a "totality of circumstances" test. Elue, however, cites no authority for this proposition, only *Bagwe*'s reference to conduct dissuading an employee from protected activity. But a totality of circumstances approach is limited to hostile work environment claims. *See Boss v. Castro*, 816 F.3d 910, 917–18 (7th Cir. 2016) (separate incidents did not amount to adverse employment actions, and "[i]nsofar as [plaintiff] argues for a 'totality of the circumstances' view, the caselaw limits that approach to his hostile work environment claims").[7]

---

[7] To be clear, retaliatory harassment can rise to the level of a materially adverse employment action (and coworker campaigns of harassment should be viewed in their totality). *See Stutler v. Illinois Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). But such acts of harassment must cause a significant change in the plaintiff's employment status. *Id.*

---

**\*6** Elue looks to *Taylor v. Board of Education of City of Chicago*, 2014 IL App (1st) 123744, to support her argument that "petty harassment" alone is actionable. But although *Taylor* referenced harassment as conduct that was alleged, the plaintiff in *Taylor* was effectively demoted and had his contract not renewed—both materially adverse employment actions. *See id.* ¶ 52 (there was sufficient evidence "to sustain a finding that the plaintiff suffered an adverse employment action, in the form of the non-renewal of his employment contract").

Elue also cites *Young v. Alden Gardens of Waterford, LLC*, 2015 IL App (1st) 131887 for the proposition that whistleblower claims do not require a materially adverse employment action. She contends that *Young* recognized that conduct such as no longer asking the employee to train others, giving less favorable performance evaluations, and treating the employee "differently" are actionable retaliation for whistleblowing. But the plaintiff in *Young* was actually limited to proceeding on her contention that the defendant reduced her work hours and responsibilities, resulting in her constructive discharge. *Id.* ¶ 13. The other evidence of retaliation presented at trial was offered merely to corroborate the theory that the plaintiff was singled out in retaliation. *Id.* ¶¶ 60–64. *Young* in no way holds that these other actions would have been stated a claim alone, without the tangible job consequence of the plaintiff's declining hours and responsibilities.

2. *Elue Has Alleged Two Materially Adverse Employment Actions in Retaliation for Whistleblowing*

Elue sufficiently alleges two materially adverse employment actions in retaliation for her whistleblowing activity. She alleges that in February 2014, she was denied the Assistant Commissioner position in retaliation for her earlier complaints about the false affidavit and public corruption complaints. Denial of a promotion is a materially adverse employment action. *See, e.g., Owens*, 403 Ill.App.3d at 919. She also alleges that her job responsibilities were dramatically altered in April 2014, when she was removed from the retail and fraud calls and instead relegated to the "dead-end" job of handling community hearings. An effective demotion or substantial change in employment responsibilities can be a materially adverse employment action. *Id.*

Elue's other allegations from March 2014 through January 2017 are not adverse employment actions because she does not allege that they are tied to a tangible job consequence. Elue alleges that all of the City's actions adversely affected her compensation, adversely affected her promotion opportunities, and caused her a loss of wages or benefits. *See* [21] ¶¶ 110–11. But Elue does not allege that any specific instances of alleged harassment were tied to some tangible job consequence, such as loss of pay or an effective demotion. The factual detail in her complaint belies the conclusory allegations of paragraph 110 and 111. As noted earlier, "not everything that makes an employee unhappy is an actionable adverse action." *Owens*, 403 Ill.App.3d at 919–20 (quoting *Smart*, 89 F.3d at 441).

Elue alleges that she was excluded from some department reports, investigations, meetings, and communications, that other employees were given credit for her work, that she was subject to demeaning and mocking comments, that others were instructed to ignore her recommendations, that she was told to attend a KCRO meeting and remain silent, that her name was removed from draft documents, that she was given contradictory instructions and rebuked for following them, that the department stopped enforcing KCRO (which formed part of her job duties), that she had a few matters reassigned to others, and that other employees were told that she was removed from community hearings. These actions are not materially adverse because they would not dissuade a reasonable person from protected activity. *See, e.g., Boss,* 816 F.3d at 918 (in the retaliation context, the law "does not protect against petty slights, minor annoyances, and bad manners"); *Brown v. Advocate S. Suburban Hosp.,* 700 F.3d 1101, 1107 (7th Cir. 2012) (getting a "cold shoulder" from management and being called a "trouble maker," a "cry baby," and a "spoiled child" were not materially adverse employment actions); *Dunn v. Washington Cty. Hosp.,* 429 F.3d 689, 692–93 (7th Cir. 2005) (being told in a "nasty and uncivil tone" to withdraw a complaint and that "paybacks are hell" were not materially adverse actions); *Stephens v. Erickson,* 569 F.3d 779, 790 (7th Cir. 2009) (being "stared and yelled at" was not an actionable harm); *Recio v. Creighton Univ.,* 521 F.3d 934, 940–41 (8th Cir. 2008) (getting "the silent treatment" from colleagues not materially adverse); *Somoza v. University of Denver,* 513 F.3d 1206, 1214–15 (10th Cir. 2008) (coworkers' incivility, including eye-rolling, laughing at plaintiff's opinions, and commenting behind his back, were not materially adverse).

**\*7** Elue also alleges that she was given derogatory performance appraisals, that she was falsely accused of unspecified conduct (resulting in written discipline and placement on a performance improvement plan), that she was threatened with demotion, that she was spied-on by other employees told to report back to Gressel with any "dirt," that she had false complaints made against her (including complaints of criminal violations for videotaping people). But allegations of threatened discipline do not constitute an adverse employment action in the retaliation context because they are not tied to a tangible job consequence; while threats may be stressful, they have no effect on the employee's compensation or career prospects. *Poullard v. McDonald,* 829 F.3d 844, 856–57 (7th Cir. 2016). Negative performance evaluations alone also are not materially adverse even if false. To be actionable, such disciplinary actions must occur in tandem with some other tangible job consequence, such as an effective demotion. *See Boss,* 816 F.3d at 918 ("implementing such a [performance improvement] plan is simply not materially adverse" when it does not create a significant change in benefits); *Bagwe,* 811 F.3d at 889; *Brown,* 700 F.3d at 1108–09; *Smart,* 89 F.3d at 442. Oral and written reprimands and placement on performance improvement plans also do not constitute adverse employment actions when they are not tied to changes in the terms and conditions of employment. *See Cole v. Illinois,* 562 F.3d 812, 816 (7th Cir. 2009) (performance improvement plan, although disciplinary, was not an adverse action because it did not deprive plaintiff of her responsibilities, hours, or pay); *Owens,* 403 Ill.App.3d at 920 ("[I]t has repeatedly been held that oral and written reprimands alone do not alter an employee's terms or conditions of employment to such an extent so as to constitute an adverse employment action.") (collecting cases). False accusations, without a more tangible injury, are also not actionable. *See, e.g., Cody v. County of Nassau,* 345 Fed.Appx. 717, 719 (2d Cir. 2009) (falsely accusing plaintiff of being absent without authorization and threatening her with future disciplinary actions were not adverse employment actions for purposes of a retaliation claim); *Perez v. Norwegian-Am. Hosp., Inc.,* 93 Fed.Appx. 910, 916 (7th Cir. 2004) (even if false, accusations unaccompanied by any "tangible job consequence" did not establish adverse employment action); *Brown v. Missouri State Highway Patrol,* 56 Fed.Appx. 282, 285 (8th Cir. 2003) (lowered performance ratings, false accusations of insubordination, and undermining plaintiff's authority were not adverse employment actions); *Benningfield v. City of Houston,* 157 F.3d 369, 376 (5th Cir. 1998) (alleged demotions were adverse actions but other alleged retaliation was not materially adverse, including: false accusations of stealing and sabotage, lowered job performance ratings, being prevented from attending conferences, and having people prevented from speaking with the plaintiff).[8]

[8] To the extent Elue attempts to plead retaliatory harassment in the form of a hostile work environment, such a claim would involve those acts that were separate from independently actionable unlawful acts like retaliatory denial of promotion and demotion. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114–115 (2002) (hostile environment claims are different in kind from discrete acts, such as the failure to promote). Putting aside the discrete acts of promotion denial and effective demotion, the allegations of the

Case: 1:24-cv-11350 Document #: 7-4 Filed: 11/12/24 Page 8 of 10 PageID #:142

Elue v. City of Chicago, Not Reported in Fed. Supp. (2017)
2017 WL 2653082, 2017 IER Cases 211,471

complaint even when viewed in combination, do not support a hostile work environment because they do not paint a picture of a materially adverse change in working conditions.

Elue also alleges that her officemate threw a garbage bin and back bag at her. But it is not an adverse employment action. "Only in limited circumstances does a single, acute incident of abuse qualify as an adverse employment action." *Mathirampuzha v. Potter*, 548 F.3d 70, 78–79 (2d Cir. 2008). In *Vanover v. White*, No. 3:07-CV-15, 2008 WL 2713711, at *13 (E.D. Tenn. July 10, 2008), cited by Elue for the proposition that coworkers throwing objects can be adverse employment actions, the plaintiff faced several instances of physical contact, include having dirt dumped on the cab of her truck, having boulders dropped on her truck from high distances (jarring the plaintiff's body), and having a bottle thrown at her. These repeated instances of physical invasion were sufficiently frequent and severe to amount to an adverse employment action. Elue does not allege that this type of conduct occurred more than once. There are no allegations in her complaint suggesting that this single incident was severe enough to materially alter her working conditions, and therefore it is not an adverse employment action *See, e.g., Mathirampuzha*, 548 F.3d at 79.[9]

[9] Moreover, this allegation suffers from a causation problem. Elue alleges that her officemate threw objects at her after speaking with Gressel, but she does not allege that he did so at Gressel's direction or that he was motivated to throw objects at Elue in January 2017 in retaliation for her whistleblowing against others in 2012, 2013, 2014. Unlike Elue's other allegations—which center around Gressel's alleged conduct or conduct allegedly instigated at Gressel's direction—Elue's complaint does not plausibly allege a causal connection between her officemate's conduct and her whistleblowing years before. Similarly, the causal link between Elue's protected activity and the alleged harassment after 2015 is not readily apparent from the complaint, but in any event, since only the denied promotion and the effective demotion in 2014 are actionable under a retaliation theory, I do not reach the City's arguments concerning causation for the other acts.

*8 The only instances of actionable retaliatory conduct alleged in Elue's complaint are her denied promotion in February 2014 and her removal from the fraud and retail calls in April 2014. Elue's allegations of other retaliatory conduct do not state a claim but may provide admissible evidence of intent or relevant context for Elue's working conditions.

**C. Statute of Limitations Defense**

The City also moves to dismiss Elue's whistleblower claim as untimely, arguing that it is subject to a one-year period of limitations for tort actions brought against public employers, pursuant to the Illinois Local Government and Governmental Employee Tort Immunity Act. 745 ILCS 10/8-101(a). The City contends that the last materially adverse employment action alleged to have been taken against Elue was in April 2014, but Elue did not file suit until October 2016. Elue responds that the Tort Immunity Act does not apply to the Illinois Whistleblower Act. Because the statute of limitations is an affirmative defense that a plaintiff need not anticipate or plead around, a motion to dismiss for failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014). Here, the statute of limitations bars Elue's pursuit of damages for her whistleblower claim, but it does not bar her from pursuing equitable relief.

1. *The Illinois Tort Immunity Act Statute of Limitations Applies to Elue's Whistleblower Claim*

The Tort Immunity Act states that no civil action "may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a). Retaliation in a "whistleblower" situation is considered analogous to retaliatory discharge. *See Fragassi v. Neiburger*, 269 Ill.App.3d 633, 637 (2d Dist. 1995). Because retaliatory discharge is a tort, the one-year statute of limitations period in the Tort Immunity Act is applicable to claims of retaliatory discharge. *Halleck v. County of Cook*, 264 Ill.App.3d 887, 890–92 (1st Dist. 1994). For this reason, most district courts have held that the Tort Immunity Act's one-year statute of limitation also applies to claims brought under the Illinois Whistleblower Act. *See Vasquez v. Board of Educ. for Sch. Dist. U-46*, No. 16 C 7022, 2017 WL 1250839, at *4 (N.D. Ill. Apr. 5, 2017) (collecting cases); *see also Williams v. Office of Chief Judge of Cook Cty. Ill.*, 839 F.3d 617, 627 (7th Cir. 2016) ("It is unclear under Illinois law whether this statute of limitations applies to retaliatory discharge claims under

Case: 1:24-cv-11350 Document #: 7-4 Filed: 11/12/24 Page 9 of 10 PageID #:143

Elue v. City of Chicago, Not Reported in Fed. Supp. (2017)
2017 WL 2653082, 2017 IER Cases 211,471

the Illinois Whistleblower Act, although one appellate court seemed to suggest that it might." (citing *Taylor*, 2014 IL App (1st) 123744, ¶ 46)); *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005) ("Illinois local governmental entities and their employees, however, benefit from a one-year statute of limitations for 'civil actions' against them." (citing 745 ILCS 10/8-101)); *Taylor*, 2014 IL App (1st) 123744, ¶ 46 ("The parties do not dispute that actions under the Act against public employers are subject to the one-year limitations period set forth in the Local Governmental and Governmental Employees Tort Immunity Act.").

**\*9** The one-year limitations period in the Tort Immunity Act applies to Elue's whistleblower claim. [10]

[10] *Zelman v. Hinsdale Township High School Dist. 86*, No. 10 C 00154, 2010 WL 4684039, at \*2 (N.D. Ill. Nov. 12, 2010), found that the statute of limitations from the Tort Immunity Act was not applicable to Illinois Whistleblower Act claims. *Zelman* relied on *Smith v. Waukegan Park District*, 231 Ill.2d 111 (2008), but that case did not address whether the statute of limitations under § 8-101 of the Tort Immunity Act applied to retaliatory discharge claims. Subsequent cases distinguish *Zelman* as an unpersuasive outlier, and I agree with that assessment. *See Vasquez*, 2017 WL 1250839, at \*4; *Williams v. Office of Chief Judge of Cook Cty., Ill.*, No. 13 C 1116, 2015 WL 2448411, at \*13 n.11 (N.D. Ill. May 21, 2015), *aff'd*, 839 F.3d 617 (7th Cir. 2016).

### 2. *Elue's Pursuit of Equitable Relief Is Not Time-Barred by the Tort Immunity Act*

There is one important caveat to the Tort Immunity Act statute of limitations: the Tort Immunity Act only applies to actions seeking damages, not equitable relief. *See* 745 ILCS 10/2-101 ("Nothing in this Act affects the right to obtain relief other than damages against a local public entity or public employee."); *PACE, Suburban Bus Div. of Reg'l Transp. Auth. v. Regional Transp. Auth.*, 346 Ill.App.3d 125, 143 (2d Dist. 2003) ("It is well settled that the Tort Immunity Act applies only to tort actions seeking damages and not to actions seeking injunctive relief."). In addition to damages, Elue seeks equitable relief for her whistleblower claim, including back pay, reinstatement, and "appropriate injunctive relief."

The City does not dispute that the Tort Immunity Act does not bar actions for equitable relief. But the city argues that Elue's pursuit of equitable relief is barred by the Illinois two-year statute of limitations for personal injury actions. 735 ILCS 5/13-202. By its terms, that two-year limitations period applies to "[a]ctions *for damages* for an injury to the person, or for false imprisonment, or malicious prosecution." 735 ILCS 5/13-202 (emphasis added). Moreover, the Illinois Supreme Court has acknowledged in analyzing laches that "courts follow statutes of limitation as convenient measures for determining the length of time that ought to operate as a bar to an equitable cause of action," *Meyers v. Kissner*, 149 Ill.2d 1, 12 (1992), but the City has not argued that laches applies here. The court also said that "[s]tatutes of limitation, applicable in legal actions, are not directly controlling in suits seeking equitable relief," but that "[d]epending upon the particular circumstances before the court, however, equitable relief may be refused although the time fixed by the statute of limitations has not expired, or conversely, relief may be granted even though the limitation period had long since elapsed." *Id.* Elue's claim for equitable relief is not barred by the statute of limitations, and laches cannot be addressed on the current record, at this early stage in the case. Elue filed suit on October 6, 2016. [1]. Therefore, she is barred from pursuing damages for her whistleblower claim based on retaliation prior to October 6, 2015. Elue cannot pursue damages for the alleged denial of her promotion and her effective demotion in 2014, but she may continue to pursue equitable relief for that alleged retaliation.

### 3. *Elue's Whistleblower Claim Was Not a Continuing Tort or Equitably Tolled*

**\*10** Elue also argues that the statute of limitations was tolled, or did not accrue, because of the continuing tort rule and equitable tolling. Elue maintains that her whistleblower claim alleges a continuing tort starting in 2014, when she was denied the promotion, and continuing through 2017, when she had objects thrown at her by a coworker. The continuing tort rule holds that where the tort involves continuous or repeated injurious behavior (by the same actor and of a similar nature), the limitations period is held in abeyance and the plaintiff's cause of action does not accrue until the date the final injury occurs or the tortuous acts cease. *Taylor*, 2014 IL App (1st) 123744, ¶ 46. The validity of the continuing violation rule is dependent upon the cause of action alleged and applies "where the pattern, course, and accumulation of the defendant's acts are relevant to the cause of action."

Case: 1:24-cv-11350 Document #: 7-4 Filed: 11/12/24 Page 10 of 10 PageID #:144

Elue v. City of Chicago, Not Reported in Fed. Supp. (2017)
2017 WL 2653082, 2017 IER Cases 211,471

*Kidney Cancer Ass'n v. North Shore Cmty. Bank & Trust Co.*, 373 Ill.App.3d 396, 405 (1st Dist. 2007) (citing *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill.2d 325, 348–49 (2002)). Where a complaint alleges discrete conduct providing a basis for a cause of action, courts do not apply the continuing violation rule. *Id.* The denied promotion in February 2014 and effective demotion in April 2014 are each discrete actions providing a basis for Elue's whistleblower claim.[11] Elue's allegations after 2014 do not amount to actionable retaliatory conduct, and therefore the continuing tort rule does not apply.

[11]  *See* footnote 8, above.

Elue's whistleblower claim for damages also was not equitably tolled while she was awaiting the results of the inspector general's investigation, which she did not receive until January 2017. Equitable tolling applies where "disability, irremediable lack of information, or other circumstances" beyond the plaintiff's control delay filing. *Williams v. Board of Review*, 241 Ill.2d 352, 360 (2011). But Elue filed suit in October 2016, *before* she learned the results of the investigation in January 2017. She does not explain this inconsistency or how the unresolved nature of the investigation prevented her from filing suit earlier. Equitable tolling is inapplicable in these circumstances. *See, e.g., Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 721 (7th Cir. 1993) ("Equitable tolling just means that without fault by either party the plaintiff does not have enough information to sue within the period of limitations.").

The IHRA does not preempt Elue's whistleblowing claim, but the only instances of actionable retaliatory conduct alleged in her complaint are her denied promotion in February 2014 and her effective demotion in April 2014. Because these events occurred more than a year prior to filing suit, Elue may not pursue damages for this alleged retaliation but she may continue to pursue equitable relief.

**IV. Conclusion**

Defendant's motion to dismiss Count II, [23], is granted in part, denied in part.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2653082, 2017 IER Cases 211,471

End of Document © 2024 Thomson Reuters. No claim to original U.S. Government Works.