**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

LAKEISHA STONE,

        Plaintiff,

v.

NORTH LAWNDALE COLLEGE
PREPERATORY CHARTER HIGH SCHOOL,
BOARD OF DIRECTORS OF NORTH
LAWNDALE COLLEGE PREPARATORY
CHARTER HIGH SCHOOL, JENNA
CUNNINGHAM-ELDER in her Ind Capacity as
Chief Executive Officer,  ERIN SIMUNOVIC, in
her Ind Capacity as CEO, GARLAND LOUIS
THOMAS-MCDADE, in his Ind Capacity as Board
Member, BRUCE MILLER, in his Ind Capacity as
Board Member, ALLEN BENNETT in his Ind
Capacity as Board Member, ROBIN STEANS, in
her Ind Capacity as Board Member, JIM MINIS, in
his Ind Capacity as Board Member, DR. KIM
HINTON, in her Ind Capacity as Board Member,
WILONDA CANNON, in her Ind Capacity as
Board Member, CARRIE STEWART, in her Ind
Capacity as Board Member, PAYCOR, INC., and
THE BOARD OF TRUSTEES OF THE PUBLIC
SCHOOL TEACHERS' PENSION AND
RETIREMENT FUND OF CHICAGO,

        Defendants.

Case No. 24 CV 11350

Judge Sharon Johnson Coleman

**<u>VERIFIED SECOND AMENDED COMPLAINT</u>**

Now comes LAKEISHA STONE, ("STONE" or "Plaintiff" ) by and through her attorneys,

Jessica G. Brown for her Second Amended Complaint against Defendants NORTH LAWNDALE

COLLEGE   PREPARATORY   CHARTER   HIGH   SCHOOL,   ("NLCP")   BOARD   OF

DIRECTORS OF NORTH LAWNDALE COLLEGE PREPARATORY CHARTER HIGH SCHOOL, ("the BOARD") JENNA CUNNINGHAM-ELDER, ("CUNNINGHAM-ELDER") in her individual capacity as the Chief Executive Officer, ERIN SIMUNOVIC, (SIMUNOVIC") in her Individual Capacity as Chief Financial Officer, GARLAND LOUIS THOMAS-MCDADE, ("THOMAS-MCDADE") in his Individual Capacity as Board Member, BRUCE MILLER, ("MILLER") in his Ind Capacity as Board Member, ALLEN BENNETT ("BENNETT") in his Ind Capacity as Board Member, ROBIN STEANS, ("STEANS") in her Individual Capacity as Board Member, JIM MINIS ("MINIS") in his Individual Capacity as Board Member, DR. KIM HINTON, ("HINTON") in her Individual Capacity as Board Member, WILONDA CANNON, ("CANNON") in her Individual Capacity as Board Member, CARRIE STEWART, ("STEWART") in her Individual Capacity as Board Member, ("collectively Individual Defendants"), PAYCOR, INC. ("PAYCOR") and THE BOARD OF TRUSTEES OF THE PUBLIC SCHOOL TEACHERS' PENSION AND RETIREMENT FUND OF CHICAGO, ("PENSION FUND") state as follows:

## NATURE OF THE CASE

1. This is an action pursuant to Articles 1 and 17 of the Illinois Pension Code, 40 ILCS 5/1-101 et seq. and 40 ILCS 5/17-101 et seq., the Illinois Wage Payment and Collections Act ("IWPCA"), 820 ILCS 115/1 et seq. , and state common law, to request an audit (accounting), to collect delinquent contributions disclosed by the audit, for breach of fiduciary duty, and for fraud, in connection with Defendants' failure to accurately report and pay contributions to the PENSION FUND as required by the Illinois Pension Code on behalf of teachers, administrators, and other employees. Plaintiff also sues under the Illinois Whistleblower Act, 704 ILCS 174/1 et seq., for retaliation for the disclosure of a violation of a State or federal law, rule, or regulation; the Illinois Human Rights Act and

the Age Discrimination in Employment for discrimination based upon age and in retaliation for engaging in protected activities.

## JURISDICTION

2.  Jurisdiction is proper in this Court under 2-209(a)(1), (7), (10), (11), (12), (13), and (14) of the Illinois Code of Civil Procedure, 735 ILCS. Jurisdiction and venue are proper in the County of Cook and State of Illinois as Plaintiff STONE resides here and all the actions complained of occurred in this jurisdiction. In addition, Plaintiff has received a Notice of Right to Sue Letter from the Equal Employment Opportunity Commission that allows Plaintiff to bring suit in state court.

## PARTIES

3.  STONE is a teacher licensed by the State of Illinois. and at all times relevant was a resident of the City of Cicero, Couty of Cook and the State of Illinois.

4.  NLCP is a public charter school, organized under the Illinois School Code, ILCS 5/1 et seq. NLCP has two campuses (Christiana and Collins) located in Chicago, Illinois and serves more than 750 high school students.

5.  NLCP is an Illinois not-for-profit corporation licensed to do business in Illinois and has its principal place of business at 1615 Christiana, Chicago, Illinois 60623.

6.  NLCP is governed by the BOARD which is charged with overseeing the school and organizational operations.

7.  CUNNINGHAM-ELDER is or was the Chief Executive Officer of NLCP and oversees overall operations of NLCP and is believed to be a resident of the City of Chicago and the State of Illinois.

8. SIMUNOVIC is or was the President of NLCP and manages the operations, finances, and human resources of NLCP. SIMUNOVIC is believed to be a resident of the City of Chicago and the State of Illinois.

9. THOMAS-MCDADE, MILLER, BENNETT, STEANS, MINIS, HINTON, CANNON, and STEWART are or were all members of the BOARD during all times relevant to this complaint and are believed to be residents of the City of Chicago and the State of Illinois.

10. PAYCOR is a Delaware corporation, registered and licensed to do business in Illinois, having its principal place of business located at 4811 Montgomery Rd, Cincinnati, Ohio, 45212. At all times relevant hereto PAYCOR was the NLCP's chosen Payroll and Benefits Advisor who provided for NLCP, inter alia, onboarding services for new employees, including STONE, as well as ongoing services related to payroll, employee benefits, including health and life insurance as well as pension benefits.

11. The PENSION FUND is a body politic and corporate with the authority to administer the Public-School Teachers' Pension and Retirement Fund of Chicago, and with the authority to bring legal proceedings on behalf of the PENSION FUND. 40 ILCS 5/17104, 5/17-137, 5/17-147. The Trustees maintain and administer the PENSION FUND in accordance with Article 1 and Article 17 of the Illinois Pension Code, 40 ILCS 5/1-101 et seq. and 40 ILCS 5/17101 et seq., at its administrative office and its principal and exclusive office in Chicago, Cook County, Illinois.

### FACTS COMMON TO ALL CHARGES

12. The Chicago Board of Education ("BOE") and NLCP entered into a Charter School Agreement.

13. NLCP is an independent public school established under the Charter School Code, 105 ILCS 5/27A-5.

14. As such, NLCP is an "EMPLOYER" within the meaning of the Illinois Pension Code, 40-ILCS 5/17-105.1.

15. The Chicago BOE and NLCP entered into a series of renewals which allowed NLCP to operate a Charter School for, the periods of August 1, 2021, through September 30, 2025.

16. STONE became a full-time employee of NLCP as a teacher for academic school year 2021-2022. For the 2021-2022 school year, and the 2022-2023 school year she remained employed as a full-time teacher, until her termination. Prior to being hired as a full time teacher, STONE was a substitute teacher for NLCP.

17. STONE signed her agreement to an employment offer with NLCP that provided payment for the academic school year 2021-2022 at annual salary of $65,323.00 and for the 2022-2023 academic school year at the annual salary of $74,907.00. (See employment agreements attached hereto as Exhibits "A" and "B")

18. At all times STONE'S work performance met NLCP's expectations.

19. In fact, STONE's performance was so good, along with her rapport with the high school students and other younger NLCP teachers that NLCP added more and more assignments to STONE'S workload.

20. NLCP'S "30-60-90" Program was designed for new hires to learn the ropes. STONE was the only over 40-year-old person and Black new hire who was denied the opportunity to matriculate through the "30-60-90" Program.

21. STONE was not compensated as agreed between the parties and as set forth in her employment agreements for the school years 2021-2022 and 2022-2023.

22. PAYCOR was the agent, servant and or employee of NLCP utilized by NLCP to provide payroll and related services to NLCP teachers, administrators, etc., including but not

limited to STONE, to gather employee pay information, including but not limited to: providing on-boarding services for new hires; to set up pay rates, benefits, deductions, and calculate taxes and withholdings; to calculate employee hours: keep track of the number of hours each employee works and import timesheets if using time and attendance software; to review the pay run: to double-check the numbers, including employees' net pay and the company's total cash requirements; to pay taxes; to withhold and remit payroll taxes and federal income tax based on various factors; to withhold and remit other benefits, including pension funds; to schedule and deposit taxes on time to avoid penalties; to deliver pay, i.e. to distribute paychecks or initiate direct deposits, run reports and maintain records; complete year-end requirements; and at year-end, to provide necessary forms to employees including W-2 and 1099-MISC.

23. As such, PAYCOR is an "EMPLOYER" within the meaning of the Illinois Pension Code, 40-ILCS 5/17-105.1.

24. STONE'S W-2's for the years 2021, 2022, and 2023 as prepared by PAYCOR were incorrect in that the W-2's did not reflect the salary that STONE was to receive as stated in the employment agreements, and also the W-2's prepared by PAYCOR and provided to STONE did not reflect the pay STONE actually received as reflected on her pay stubs.

25. STONE'S W-2 form for each year as prepared by PAYCOR was incorrect also because they did not report employee and employer pension contributions as required by state and federal wage reporting laws for 2021, 2022, or 2023.

26. STONE'S pension benefit payments were not deducted from her paycheck for 2021, pension contributions were deducted but not reported for 2022, and neither year were

pension contributions paid to the pension fund on STONE'S behalf, as required by state and federal reporting laws.

27. STONE made numerous complaints to no avail, about her salary and pay beginning the first month of her employment after SIMUNOVIC informed STONE that her first check was issued in error and was "an overpayment that had to be repaid".

28. Throughout her employment with NLCP, STONE constantly complained to NLCP's management and HR department , and PAYCOR about compensation not being paid as agreed and in accordance with her employment agreement, as well as complaints related to her inaccurate W-2 forms for the years 2021, 2022, and 2023, prepared and mailed to her by PAYCOR, to no avail; including but not limited to: incorrect gross pay, net pay, MED, SOC, state taxes, and federal taxes.

29. STONE complained to NLCP's management and HR department, and PAYCOR about employment benefits, including her pension contributions, and employee share, that were required to be deducted from her paycheck but were not deducted nor were they paid to the Pension Fund on behalf of STONE.

30. In addition to SIMUNIVIC'S duties as the President of NLCP, i.e. manages the operations, finances, and human resources of NLCP. SIMUNOVIC is or was also the "certifying officer" for pension contribution payments.   SIMUNOVIC was required to treat those pension fund contributions in a fiduciary manner until paid annually to the PENSION FUND as required for all licensed teachers working in the State of Illinois in accordance with both state and federal laws.

31. NLCP, SIMUNOVIC, the BOARD, and PAYCOR failed to pay required contributions to the PENSION FUND on behalf of licensed personnel at NLCP, including but not limited to STONE.

32. The BOARD and the individual defendants are subject to and owed to STONE, as an employee of NLCP, the fiduciary duties of care and loyalty. The duty of care requires a director to exercise due care when managing corporate assets. The duty of loyalty also requires a director to avoid undisclosed conflicts of interest.

33. STONE complained to NLCP's management and HR department that she was treated less favorably than similarly situated, younger, employees; that she was subjected to different terms and conditions of employment, including but not limited to, not being compensated for additional duties, and being excluded from the NLCP'S "30-60-90" Program.

34. On or about December 15, 2022, NLCP terminated STONE'S employment with NLCP.

35. The cited reason for STONE'S termination was poor performance.

36. This reason is pretextual because it is untrue, because similarly situated individuals outside of STONE'S protected class groups were not discharged for engaging in similar activity, and because NLCP retaliated against STONE for engaging in a protected activity.

37. The Trustees of the PENSION FUND are fiduciaries and parties in interest as those terms are defined by the Illinois Pension Code, 40 ILCS 5/1-101.2, 5/1-101.3, 5/1-109, and are authorized to commence a civil action in order to obtain appropriate relief for breach of fiduciary duty, to enjoin any act or practice which violates any provision of

the Illinois Pension Code, or to obtain other appropriate equitable relief to redress any such violation, or to enforce any such provision of the Code. 40 ILCS 5/1-115.

38. The PENSION FUND is an Illinois public employee pension fund, within the meaning of the Illinois Pension Code, 40 ILCS 5/17-101 and 5/17-109, established to pay pensions to eligible contributors, members, or teachers employed in District 299, and to certain other staff employed at charter schools, as those terms are used in 40 ILCS 5/17-106. The terms "contributor," "member," or "teacher" generally refer to a person whose employment requires a teaching license/certificate and who are so licensed/certified.

39. STONE advised, notified and complained to the PENSION FUND, in October of 2023 of the failure of NLCP, the BOARD and the individual defendants to pay into the pension funds, monies collected from or on behalf of STONE.

40. PENSION FUND confirmed that no pension fund contributions had been made by NLCP on behalf of STONE for the school years 2021-2022 or 2022-2023.

41. STONE was individually hurt by the BOARD as well as the individual defendants when the defendants acted beyond the scope of their duties, including the violation of state and federal reporting laws related to wages, year-end statements, pension certifications and otherwise exhibited a wanton disregard of duties.

42. STONE suffered damage as a result of the actions or inactions of all defendants. (See Report of Potentially Fraudulent Transactions prepared by E. Hopewell and attached hereto as Exhibit "C").

**FACTS RELATED TO VIOLATION OF THE ILLINOIS PENSION CODE**

43. The BOE is a body politic and corporate organized and existing under 105 ILCS 5/34-1 et seq. and is the primary employer of teachers and administrators whose retirement

benefits are paid by the PENSION FUND. See 40 ILCS 5/17-105, 5/17-105.1. The BOE operates, manages, and controls the public school district for the City of Chicago (City of Chicago School District 299), commonly known as the Chicago Public Schools ("CPS").

44. The BOE and NLCP entered into a Charter School Agreement.

45. NLCP is an independent public school established under the Charter Schools Law, 105 ILCS 5/27A-1 et seq.

46. A charter school, as defined by the provisions of Section 275-5 of the School Code, 105 ILCS 5/27A-5, is an "Employer" under the Illinois Pension Code. See 40 ILCS 5/17105.1.

47. As such, NLCP is an "Employer" within the meaning of the Illinois Pension code, 40 ILCS 5/17-105.1.

48. The BOE and NLCP entered into a Grant of Charter and Charter School Agreement and a series of renewals which allowed NLCP to operate a charter school known as North Lawndale College Prep for, upon information and belief, the period August 1, 2021, through June 30, 2025.

49. The Illinois Pension Code Requires Payment to the PENSION FUND of contributions deducted from the salaries of Contributors, Members, and Teachers.

50. The Illinois Pension Code provides that the revenues of the PENSION FUND shall consist of contributions paid by an Employer, contributions deducted from the salaries of contributors, including teachers and administrators, and investment returns thereon, along with other contributions that may be made to the Fund. 40 ILCS 5/17-127.

51. Section 17-130 of the Illinois Pension Code, 40 ILCS 5/17-130, provides for the deduction from each teacher's salary in the form of contributions to the PENSION FUND in the total amount of 9% (nine percent) of the teacher's salary. Teachers do not participate in Social Security.

52. Section 17-130 of the Illinois Pension Code, 40 ILCS 5/17-130, titled "Participants' contributions by payroll deductions," in relevant part provides:

There shall be deducted from the salary of each teacher 7.50% of his salary for service or disability retirement pension and 0.5% of salary for the annual increase in base pension.

In addition, there shall be deducted from the salary of each teacher 1% of his salary for survivors' and children's pensions.

An Employer and any employer of eligible contributors as defined in Section 17-106 is authorized to make the necessary deductions from the salaries of its teachers. Such amounts shall be included as a part of the Fund. An Employer and any employer of eligible contributors as defined in Section 17-106 shall formulate such rules and regulations as may be necessary to give effect the provisions of this Section.

40 ILCS 5/17-1306 (b)

53. The Illinois Pension Code provides that an Employee and an Employer may reach an agreement as to the payment to the Fund of the teacher contributions required by Section 17130 of the Code. Section 17-130.1, titled "Employer contributions on behalf of employees," provides:

54. An Employer and the Board may make and may incur an obligation to make contributions on behalf of its employees in an amount not to exceed the employee contributions required by Section 17-130 for all compensation earned after September

11

21, 1981. If the Employer or the Board of Education determines not to make such contributions or incur an obligation to make such contributions, the amount that it could have contributed on behalf of its employees shall continue to be deducted from salary. If contributions are made by an Employer or the Board on behalf of its employees, they shall be treated as employer contributions in determining tax treatment under the United States Internal Revenue Code. An Employer or the Board may make these contributions on behalf of its employees by a reduction in the cash salary of the employee or by an offset against a future salary increase or by a combination of a reduction in salary and offset against a future salary increase. An Employer or the Board shall pay these employee contributions from the same source of funds which is used in paying salary to the employee, or it may also or alternatively make such contributions from the proceeds of the tax authorized by Section 34-60 of the School Code. Such employee contributions shall be treated for all purposes of this Article 17 in the same manner and to the same extent as employee contributions made by employees and deducted from salary; provided, however, that contributions made by the Board of Education on behalf of its employees which are to be paid from the proceeds of the tax, as provided in Section 34-60 of the School Code, shall not be treated as teachers' pension contributions for the purposes of Section 17-132 of the Illinois Pension Code, and provided further, that contributions which are made by the Board of Education on behalf of its employees shall not be treated as a pension or retirement obligation of the Board of Education for purposes of Section 12 of "An Act in relation to State revenue sharing with local governmental entities", approved July 3 1, 1969.

See 40 ILCS 5/17-130.1 (footnotes omitted)

55. Pursuant to Section 17-130.1 and a subsequent agreement between NLCP and some or all of its teachers, NLCP agreed to "pension pick up" — i.e. to pay to the Fund — a portion of the contributions otherwise required to be made to the Fund by the teachers. On information and belief, NLCP agreed to pick up 7% of the required 9% employee contribution. This percentage pick-up is the same as the FICA contribution required of employees participating in Social Security.

56. The remaining 2 % of the required teacher contribution is paid by the teachers through payroll deductions.

57. Pursuant to Section 5(a)(xii) of the Charter Agreements that NLCP executed with the Board of Education, NLCP agreed to comply with all provisions of the Illinois Pension Code, which necessarily included the deduction of pension contributions from each teacher's salary and/or pension pick-up in some circumstances and the payment of the amounts due to the Fund.

58. The Illinois Pension Code Authorizes the Fund to Audit an Employer to Verify the Accuracy of the Employer's Payroll Reports and Contribution Obligations, and Provides for Penalties Against a Non-Compliant Employer

59. The Fund relies upon a self-reporting system that requires the Employer, after each predesignated payday, to advise the Fund of the identity of the teachers/members from whose salaries contributions have been deducted and are owed to the Fund, and to pay those contributions to the Fund for the benefit of the teachers/members/contributors.

60. The Illinois Pension Code requires the Employer to provide the Fund with all members' payroll records and to pay to the Fund a total of 9% of salary, including all members' pension contributions that have been deducted from the members' salaries on a timely

basis, that is, within 30 calendar days after each payday. Section 17-132(a) of the Illinois Pension Code provides:

61. An Employer shall cause the Fund to receive all members' payroll records and pension contributions within 30 calendar days after each predesignated payday. For purposes of this Section [17-132], the predesignated payday shall be determined in accordance with each Employer's payroll schedule for contributions to the Fund.

40 ILCS 5/17-1326)

62. The Illinois Pension Code imposes penalties on an Employer that fails to timely certify and submit payroll records and contributions. Section 17-132(b) of the Illinois Pension Code provides:

An Employer that fails to timely certify and submit payroll records to the Fund is subject to a statutory penalty in the amount of $ 100 per day for each day that a required certification and submission is late.

Amounts not received by the 30th calendar day after the predesignated payday shall be deemed delinquent and subject to a penalty consisting of interest, which shall accrue on a monthly basis at the Fund's then effective actuarial rate of return, and liquidated damages in the amount of $ 100 per day, not to exceed 20% of the principal contributions due...

An Employer in possession of member contributions deducted from payroll records is holding Fund assets, and thus becomes a fiduciary over those assets.

40 ILCS 5/17-132(b)

63. The Illinois Pension Code details the payroll records an Employer must submit, including the contributions due for each member, as well as the number of days of service each member performed for the purpose of calculating the member's creditable

service toward a pension benefit. Section 17-132(c) of the Illinois Pension Code in relevant part provides:

64. The payroll records shall report (1) all pensionable salary earned in that pay period. . .; (2) adjustments to pensionable salary,.made in a pay period for any prior pay periods; (3) pension contributions attributable to pensionable salary earned in the reported pay period or the adjusted pay period... ; and (4) any salary paid by an Employer if that salary is compensation for validated service... Payroll records required by item (4) of this paragraph shall identify the number of days of service rendered by the member and whether each day of service represents a partial or whole day of service. 40 ILCS 5/17-132(c)

65. The Illinois Pension Code requires an Employer to "certify" the accuracy of the information reported to the Fund, and further requires a Charter School — such as Defendant NLCP — to appoint a "Pension Officer" for that purpose. Section 17-132(d) of the Illinois Pension Code provides:

The appropriate officers of the Employer shall certify and submit the payroll records no later than 30 calendar days after each predesignated payday. The certification shall constitute a confirmation of the accuracy of such deductions according to the provisions of this Article [17].

Each Charter School shall designate an administrator as a 'Pension Officer' [who] shall be responsible for certifying all payroll information, including contributions due and certified sick days payable pursuant to Section 17-134, and assuring resolution of reported payroll and contribution deficiencies.
40 ILCS 5/17-132(d)

66. NLCP designated Defendant SIMUNOVIC as its "Pension Officer," as that term is used in the Illinois Pension Code, 40 ILCS 5/17-132(d), for some or all of the period for which NLCP had an obligation to the Fund.

67. Finally, the Illinois Pension Code authorizes the Fund to audit a charter school Employer to verify the accuracy of the payroll records submitted and the contributions deducted and paid to the Fund, and to file suit in state court to collect delinquent contributions. The Code further provides that an Employer may be required to pay the Fund's reasonable expenses, including attorney's fees, incurred in collection procedures, including litigation. Section 17132(e) of the Illinois Pension Code provides:

68. The Board [of Trustees of the Fund] has the authority to conduct payroll audits of a charter school to determine the existence of any delinquencies in contributions to the Fund, and such charter school shall be required to provide such books and records and contribution information as the Board [of Trustees of the Fund] or its authorized representative may require. The Board [of Trustees of the Fund] is also authorized to collect delinquent contributions from charter schools and develop procedures for the collection of such delinquencies. Collection procedures may include legal proceedings in the courts of the State of Illinois. Expenses, including reasonable attorneys' fees, incurred in the collection of delinquent contributions may be assessed by the Board [of Trustees] against the charter school. 40 ILCS 5/17-132(e)

69. NLCP has failed to comply with its obligations under the Illinois Pension Code.

70. The PENSION FUND has failed to conduct an audit of NLCP and or demand an accounting to be provided by NLCP for STONE and other teachers, administrators or employees for whom pension benefits for which NLCP deducted or should have deducted, contributions from the teacher's salary.

71. PENSION FUND records establish that NLCP did not remit the deducted sums to the Fund.

## <u>COUNT I</u>
## AGAINST NLCP, PAYCOR AND ALL INDEPENDENT DEFENDANTS FOR THE DELINQUENT PENSION CONTRIBUTIONS OWED FOR STONE FOR THE PERIOD AUGUST 1, 2021 THROUGH JANUARY 31, 2023

72. Plaintiff restates and realleges the allegations contained in Paragraphs 1- 71.

73. STONE'S W-2-year end statements prepared by PAYCOR for the years 2021, 2022 and 2023 failed to correctly detail Pension contributions deducted from STONE'S salary as a NLCP licensed teacher.

74. PAYCOR failed to produce accurate W-2-year end statements for STONE as relates to STONE'S required deductions for pension contributions in accordance with the agreement between NLCP and STONE, NLCP and the PENSION FUND and other applicable State of Illinois codes, statutes, rules and regulation.

75. NLCP and PAYCOR failed to pay the PENSION FUND pension contributions for STONE in the total amount of 9% of STONE'S salary as a licensed teacher employed by NLCP (2% deduction from STONE'S salary and 7% contribution from NLCP) for the years 2021, 2022, and 2023.

76. SIMUNOVIC as the "certifying officer" for pension contribution payments failed to treat pension contributions made by or on behalf of STONE in a fiduciary manner and failed to make the annual pension contribution payments to PENSION FUND as required for all licensed teachers working in the State of Illinois in accordance with both state and federal laws.

77. The individual members of the BOARD, in addition to SIMUNOVIC, are equally responsible to STONE for the failure to make the pension contribution payments to the PENSION FUND on behalf of STONE

78. PAYCOR is an agent of NLCP, the Employer, in possession of member contributions deducted from payroll funds and is holding Fund assets, and thus becomes a fiduciary over those assets, in accordance with 40 ILCS 5/17-132(b).

WHEREFORE, Plaintiff STONE requests the following relief on Count I:

(A)    A judgment in Plaintiff's favor and against Defendants NLCP, all Individually named Defendants, PAYCOR, and the Pension Fund, jointly and severally, to the fullest extent allowed by law, in the amount to be determined by this court; (ii) plus the principal contribution amounts to be determined upon the completion of the expanded audit of NLCP campuses; (iii) plus interest, liquidated damages, penalties, and late fees on all of the foregoing amounts.

(B)    A declaratory judgment that NLCP and PAYCOR have violated the Pension Code

(C)    Attorney's fees and costs, including audit costs, incurred by Plaintiff in connection with this action.

(D)    That the Court retain jurisdiction of this cause pending compliance with its orders.

(E)    For such further or different relief as this Court may deem proper and just.


## COUNT II
## BREACH OF FIDUCIARY DUTIES AGAINST
## NLCP, ALL INDIVIDUAL DEFENDANTS, PAYCOR,
## AND THE PENSION FUND

79. Plaintiff restates and realleges the allegations contained in Paragraphs 1- 71.

80. The Trustees of the PENSION FUND are fiduciaries and parties in interest as those terms are defined by the Illinois Pension Code, 40 ILCS 5/1-101.2, 5/1-101.3, 5/1-109, and are authorized to commence a civil action in order to obtain appropriate relief for breach of fiduciary duty, to enjoin any act or practice which violates any provision of

the Illinois Pension Code, or to obtain other appropriate equitable relief to redress any such violation or to enforce any such provision of the Code. 40 ILCS 5/1-115.

81. The Trustees of the PENSION FUND breached their fiduciary duties when they failed to conduct an audit in accordance with the Illinois Pension Code on behalf of STONE, even after they were advised that pension funds had been collected but not paid on behalf of STONE, and possible other NLCP employees for the years 2021, 2022, and 2023.

82. NLCP, as an Employer in possession of member contributions deducted from payroll records holds PENSION FUND assets and thus becomes a fiduciary over those assets 40 ILCS 5/17-132 (b)

83. PAYCOR as that part of NLCP, was responsible for STONE'S onboarding process as a new employee, more fully detailed in Paragraph 89 below, and the performance of all payroll and related functions as a continuing employee.

84. PAYCOR, as an agent, servant and/or employee of the Employer in possession of member contributions deducted from payroll funds, holds PENSION FUND assets, and thus becomes a fiduciary over those assets. 40 ILCS 5/17-132(b)

85. NLCP breached their fiduciary duties owed to STONE when they failed and refused to pay funds to the PENSION FUND on behalf of STONE and other NLCP licensed employees.

86. The individual members of the BOARD, in addition to SIMUNOVIC, breached their fiduciary duties owed to STONE when they failed and refused to pay monies to the PENSION FUND collected on behalf of STONE and other NLCP licensed employees.

87. PAYCOR breached its fiduciary duty owed to STONE when they failed and refused to pay funds to the PENSION FUND on behalf of STONE and other NLCP licensed employees.

WHEREFORE, Plaintiff STONE requests the following relief on Count II:

(A)     A judgment in Plaintiff's favor and against Defendants NLCP, all Individually named Defendants and the Pension Fund, jointly and severally, to the fullest extent allowed by law, in the amount to be determined by this court; (ii) plus the principal contribution amounts to be determined upon the completion of the expanded audit of NLCP campuses; (iii) plus interest, liquidated damages, penalties, and late fees on all of the foregoing amounts.

(B)     A declaratory judgment that NLCP and PAYCOR have violated the Pension Code.

(C)     Attorney's fees and costs, including audit costs, incurred by Plaintiff in connection with this action.

(D)     That the Court retain jurisdiction of this cause pending compliance with its orders.

(D)     For such further or different relief as this Court may deem proper and just.


**COUNT III**
**FRAUD**
**AGAINST PAYCOR**

88. Plaintiff restates and realleges the allegations contained in Paragraphs 1- 71.

89. PAYCOR was responsible for STONE'S onboarding process wherein certain withholdings and deductions were determined including STONES benefits, rate of pay, number and type of deductions, including deductions for health, life insurance, pension and other benefits, the number and type of dependents claimed, all in an effort to process STONES'S paychecks and end of year W-2 Statement of Wages.

90. STONE'S W-2 forms were distributed to STONE as well as to the federal and state taxing authorities, all by PAYCOR.

91. The salary paid to STONE as reflected in her paystubs, W-2 forms and reflection of pension benefits prepared and distributed by PAYCOR were inaccurate and were false.

92. The inaccuracies reflected in STONE'S paystubs, W-2 forms and pension benefits prepared by PAYCOR for STONE were pointed out to PAYCOR by STONE on numerous occasions, including but not limited to each time she received an inaccurate paystub and W-2, but PAYCOR refused to correct the inaccuracies.

93. PAYCOR intentionally made a false statement to STONE when PAYCOR issued the W-2 to STONE for the year 2021, including but not limited to: incorrect gross pay, net pay, MED, SOC, state taxes, pension deductions and federal taxes.

94. PAYCOR intentionally made a false statement to STONE when PAYCOR issued the W-2 to STONE for the year 2022, including but not limited to: incorrect gross pay, net pay, MED, SOC, state taxes, pension deductions, and federal taxes.

95. PAYCOR intentionally made a false statement to STONE when PAYCOR issued the W-2 to STONE for the year 2023, including but not limited to: incorrect gross pay, net pay, MED, SOC, state taxes, pension deductions, and federal taxes.

96. PAYCOR intended that all parties receiving STONE'S payroll documents would rely on said documents as a true and accurate reflection of STONE'S income, taxes paid or owed, and benefits, including pension, paid to or on her behalf for the years 2021, 2022, and 2023.

97. PAYCOR knew that the paychecks prepared for STONE, as well as her W-2's and pension benefits reflected in the payroll documents PAYCOR prepared for STONE

were in fact, false, inaccurate and incorrect, in part because PAYCOR entered and processed STONE'S payment information and also because STONE repeatedly called and informed PAYCOR that the documents were incorrect.

98. STONE relied to her detriment on the false documents prepared by PAYCOR.

99. As a result, STONE was injured in many ways, including but not limited to:

    a.    STONE did not receive monies due and owing to her for her salary,

    b.    STONE lost interest income related to her pension benefits that were not accurately reflected and were not paid into the PENSION FUND at the time and in the proper manner, and

    c.    STONE was precluded from timely filing her state and federal tax returns because her W-2's were incorrect and PAYCOR refused to correct them

WHEREFORE, Plaintiff requests the following relief on Count III:

(A)    A judgment in Plaintiffs favor and against Defendant PAYCOR, to the fullest extent allowed by law, to be determined by this court; (ii) plus the principal contribution amounts to be determined upon the completion of the expanded audit of PAYCOR and NLCP campuses; plus interest and penalties.

(B)    A declaratory judgment that PAYCOR have violated the Pension Code

(C)    Attorney's fees and costs, including audit costs, incurred by Plaintiff in connection with this action;

(D)    That the Court retain jurisdiction of the cause pending compliance with its orders; and

(E)    For such further or different relief as the Court may deem proper and just.

## COUNT IV
### FRAUD
### AGAINST NLCP AND ALL INDIVIDUAL DEFENDANTS

100.    Plaintiff restates and realleges the allegations contained in Paragraphs 1- 71.

101.    NLCP and all INDIVIDUAL DEFENDANTS were responsible for ensuring that STONE was paid in accordance with her employment agreement and the additional duties and responsibilities for which she was assigned and was entitled to be compensated.

102.    NLCP and all INDIVIDUAL DEFENDANTS were also responsible for ensuring that STONE'S pension funds were properly handled, i.e. paid to the PENSION FUND within 30 days of the end of the school years 2021 and 2022, for which the pension funds were earned.

103.    SIMUNOVIC as the "certifying officer" for pension contribution payments failed to make the pension funds payments on behalf of STONE, and other NLCP licensed teachers, administrators, etc, for at least the years 2021, 2022, and 2023.

104.    Nevertheless, SIMUNOVIC certified certain documents including but not limited to the Corporate Annual Report for Illinia Not for Profit Corporations, Illinois AG 990 form, that there was not, or that she had no knowledge of kickbacks, bribes, or theft, defalcation, misappropriation, co-mingling or misuse of organizational funds, i.e. that said pension fund payments had been made.

105.    At the time SIMUNOVIC made the statements related to the pension fund payments, SIMUNOVIC knew or should have known that the statements made related to the pension funds were false.

106.    SIMUNOVIC intended that the false statement made as the "certifying officer" would be relied upon by all parties receiving the statements, reports, etc, including all parties responsible for re-certifying NLCP as a Charter School, including but not limited to Chicago BOE, the IRS, and Illinois Department of Revenue.

107.    As a result of Defendants fraudulent actions, STONE was injured in many ways, including but not limited to:

   a.      STONE did not receive monies due and owing to her for her salary,

   b.      STONE lost interest income related to her pension benefits that were not accurately reflected and were not paid into the PENSION FUND at the proper time and in the proper manner, and

   c.      STONE was precluded from timely filing her state and federal income tax returns for the years 2021 and 2022 because her W-2's were incorrect and PAYCOR refused to correct them

WHEREFORE, Plaintiff requests the following relief on Count IV:

(A). A judgment in Plaintiffs favor and against all INDIVIDUAL DEFENDANTS and NLCP, jointly and severally, to the fullest extent allowed by law, to be determined by this court; (ii) plus the principal contribution amounts to be determined upon the completion of the expanded audit of NLCP campuses; plus interest and penalties;

(B). Attorney's fees and costs, including audit costs, incurred by Plaintiff in connection with this action;

(C). That the Court retain jurisdiction of the cause pending compliance with its orders; and

(D). For such further or different relief as the Court may deem proper and just.

## <u>COUNT V</u>
## AGAINST NLCP, PAYCOR and THE TRUSTEES OF PENSION BOARD FOR AN ACCOUNTING

108.     Plaintiff restates and realleges the allegations contained in Paragraphs 1- 71.

109.     Section 17-130 of the Illinois Pension Code, 40 ILCS 5/17-130, provides for the deduction from each Covered Employee's salary in the form of contribution to the Fund in the total amount of 9% of their periodic salary paid.   Seven (7%) is the "employer's share of the contribution funded entirely by the employer. Two (2%) is the employee's share of the contribution that may or may not be funded by the employer.  Taking together, the 9% must be collected and segregated by the employer, for each licensed teacher for each periodic pay period, to be paid to the Chicago Teachers Pension Fund Board of Trustees once annually, along with an attestation by the "Certifying Officer," that all amounts for all licensed teachers has been collected and tendered.

110.     The Board of Trustees of the Chicago Teachers Pension Fund is a body politic and corporate with the authority to administer the Public-School Teachers' Pension and Retirement Fund of Chicago and with the authority to bring legal proceedings on behalf of the Fund. 40 ILCS 5/17-104, 5/17-137, 5/17-147.   The trustees maintain and administer the Fund in accordance with Article 1 and Article 17 of the Illinois Pension Code, 40 ILCS 5/1-101 and 40 ILCS 5/17-101 at its administrative office and its principal and exclusive office in Chicago, Cook County, Illinois.

111.     The Board of Trustees of the Chicago Teachers Pension Fund, through its general counsel, informed STONE, through her attorney, that no pension contributions were remitted for Stone for the period payrolls during the 2021 calendar year or the 2022 calendar year, with information and belief, by NLCP's certifying officer, SIMUNOVIC.

112.    The PENSION FUND has failed and refused to order or conduct an audit of NLCP or to initiate legal proceedings against NLCP or any of its personnel, including SIMUNOVIC or any of NLCP BOARD members.

WHEREFORE, Plaintiff requests the following relief:

(A)    An Order requiring Defendant NLCP to comply with the terms of the Illinois Pension Code and directing Defendant NLCP to permit Plaintiff's representative to conduct an audit of Defendant NLCP 's books and records for the NLCP Christiana campus for the periods beginning with the first payroll period for STONE at the NLCP campus through January 31, 2023, at Defendant NLCP 's place of business (or other mutually agreed upon location) and to provide Plaintiffs representatives with the names, current addresses, and social security numbers of the employees, hours worked by each employee, and the amounts paid to each employee, together with any other such documentation as may be required by Plaintiffs representatives to verify said information and any other information that is reasonably required by the Board of Trustees of the Fund in connection with the proper administration of the Fund.

(B)    An Order requiring Defendant PAYCOR to comply with the terms of the Illinois Pension Code and directing Defendant PAYCOR, as relates to the books and records of NLCP, to permit Plaintiff's representative to conduct an audit of Defendant NLCP 's books and records for the NLCP Christiana campus for the periods beginning with the first payroll period for STONE at the NLCP campus through January 31, 2023, at Defendant NLCP 's place of business (or other mutually agreed upon location) and to provide Plaintiffs representatives with the names, current addresses, and social security numbers of the employees, hours worked by each employee, and the amounts paid to each employee, together with any other such documentation as may be required by Plaintiffs representatives to verify said information and any other information that is

26

reasonably required by the Board of Trustees of the Fund in connection with the proper administration of the Fund.

(C)     A judgment in Plaintiff's favor and against Defendant NLCP and PAYCOR. to the fullest extent allowed by law for:

      (i)     All the delinquent contributions that are owed to the Fund;

      (ii)     Penalties in the amount of $100 per day for each day that a required certification and submission was late;

      (iii)     Interest on the delinquent contributions;

      (iv)     Liquidated damages in the amount of $100 per day, not to exceed 20% of the principal contributions due; and

      (v)     Attorney's fees and costs, including audit costs, incurred by Plaintiff in connection with this action.

(D)     That this Court retain Jurisdiction of this cause pending compliance with its orders.

(E)     For such further or different relief as this Court may deem proper and just.

### COUNT VI
### AGAINST NLCP AND PAYCOR FOR VIOLATION OF
### THE ILLINOIS WHISTLEBLOWER'S ACT

113.     Plaintiff restates and realleges the allegations contained in Paragraphs 1- 71.

114.     Section 704 ILCS 174/1 of the Illinois Whistleblower's Act, provides that:

(740 ILCS 174/10)

    Sec. 10. Certain policies prohibited. An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency if the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

(Source: P.A. 93-544, eff. 1-1-04.)

115.     Section 704 ILCS 174/15 of the Illinois Whistleblower's Act, provides that:

> (740 ILCS 174/15)
>    Sec. 15. Retaliation for certain disclosures prohibited. An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation. (Source: P.A. 93-544, eff. 1-1-04.)

116.     Section 704 ILCS 174/20 of the Illinois Whistleblower's Act, provides that:

(740 ILCS 174/20)    Sec. 20. Retaliation for certain refusals prohibited. An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation.

(Source: P.A. 93-544, eff. 1-1-04.)

117.     The Illinois Whistleblower Act defines an employer as:

"Employer" means: an individual, sole proprietorship, partnership, firm, corporation, association, and any other entity that has one or more employees in this State, including a political subdivision of the State; a unit of local government; a school district, combination of school districts, or governing body of a joint agreement of any type formed by two or more school districts; a community college district, State college or university, or any State agency whose major function is providing educational services; any authority including a department, division, bureau, board, commission, or other agency of these entities; and any person acting within the scope of his or her authority express or implied on behalf of those entities in dealing with its employees.

118.     NLCP is an employer within the meaning of the Illinois Whistleblower's Act.

119.     PAYCOR is an agency of NLCP acting within the scope of their authority express or implied on behalf of NLCP in dealing with its employees.

120.     PAYCOR is an employer within the meaning of the Illinois Whistleblower's Act.

121.    STONE is an employee within the meaning of the Illinois Whistleblower's Act.

122.    As an NLCP employee a teacher with a license must be paid pension benefits.

123.    NLCP acknowledged receipt of STONE'S licensure.

124.    NLCP deducted pension funds for STONE, which funds were to be paid to the Chicago Teacher's pension Fund, on behalf of STONE.

125.    Upon information and belief, no pension fund payments were made to the Chicago Teacher's Pension Fund between the time period August 1, 2021 to January 31, 2023 on behalf of STONE and other NLCP teachers.

126.    As a NLCP teacher, STONE was to be paid salary/wages in accordance with her employment contract and duties and responsibilities she performed for NLCP.

127.    NLCP was required by state and federal regulations to issue STONE check stubs and W-2 forms that correctly reflected the payments STONE was entitled to receive for the work she performed for NLCP.

128.    During all times relevant to this complaint, PAYCOR, handled all payroll functions including but not limited to: choosing a pay schedule: determining employee pay information: set up pay rates, benefits, deductions, and calculate taxes and withholdings; calculate employee hours: keep track of the number of hours each employee works and import timesheets if using time and attendance software; review the pay run: double-check the numbers, including employees' net pay and the company's total cash requirements; pay taxes: withhold and remit payroll taxes and federal income tax based on various factors; withhold and remit other benefits, including pension funds; schedule and deposit taxes on time to avoid penalties; deliver pay: distribute paychecks or initiate direct deposits, run reports and maintain records: Keep detailed records of hours worked, overtime, and wages

to comply with regulations and track payroll information; complete year-end requirements; and at year-end, provide necessary forms to employees, i.e. a W-2 Statement of Wages or a 1099-MISC.

129. Over the time period in which STONE and other NLCP teachers were employed by NLCP, STONE and other NLCP teachers received incorrect pay stubs and W-2 forms from NLCP and/or PAYCOR.

130. Funds deducted from STONE' salary as and for pension contributions were not deducted from STONES'S pay, and or were deducted and not transferred to the Chicago Teacher's Pension Fund as required by the CBOE, the Charter Agreement and Illinois Pension Code

131. On numerous occasions, STONE complained to NLCP management, including but not limited to HR and the CEO, and to PAYCOR.

132. STONE was excluded from payment of pension fund benefits and denied her request to receive corrected W-2 tax forms even though NLCP and PAYCOR acknowledged receipt of STONES licensure.

133. Plaintiff believed the above-described actions on the part of NLCP and PAYCOR were unethical and a violation of the law.

134. NLCP initiated a materially adverse employment action against STONE when they terminated STONE'S employment on or about December 15, 2022.

135. PAYCOR initiated a materially adverse employment action against STONE when they intentionally blocked her access to her payroll records, and refused to correct her pay stubs, pension contributions and W-2 forms.

136.    PAYCOR'S failure to pay STONE as agreed in her employment contract significantly altered the terms and conditions of employment in that STONE lost material benefits, including her agreed upon compensation, pension benefits, tax benefits, and incurred tax liabilities.

137.    Said materially adverse employment actions was retaliation for STONE'S complaints about the above-described actions she believed to be improper, unethical and illegal, i.e. failure to pay STONE in the correct amounts, provide her with accurate paystubs and W-2 Statement of Wages, failure to make proper pension deductions, including employee and employer contributions, failure to timely make pension contributions to the PENSION FUND, failure to allow her access to her payroll records, and finally a retaliatory termination..

138.    Plaintiff has suffered damages because of NLCP'S and PAYCOR'S adverse employment actions against her.

WHEREFORE, STONE requests that this Court enter judgment in her favor and against NLCP and PAYCOR as follows:

(A).    A declaratory judgment that NLCP and PAYCOR have violated the Illinois Whistleblower Act;

(B).    An order requiring NLCP to return STONE to employment;

(C).    Reinstatement with the same seniority status that the employee would have had, but for the violation;

(D).    Double the amount of back pay, with interest;

(E).    Compensation for any damages, including actual damages and special damages, sustained as a result of the violation, including litigation costs, expert witness fees, and reasonable attorney's fees; and

(F).    Such other and further relief as the Court deems just and proper.

## COUNT VII
## AGAINST NLCP
## FOR VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT
## DISCRIMINATION BASED UPON AGE

139.    Plaintiff restates and realleges the allegations contained in Paragraphs 1- 71.

140.    STONE'S year of birth is 1981.

141.    STONE was discriminated against by NLCP based upon her age in that similarly situated individuals who were significantly younger than STONE were treated differently, as enumerated above, including but not limited to:

    a.    denied her access to the "30-60-90" Program.

    b.    continued to add additional work responsibilities for which she was not paid;

    c.    required her to handle many more responsibilities that her younger similarly situated co-workers; and

    d.    disciplined her up to and including termination for activities which her younger similarly situated co-workers did not receive discipline or termination.

142.    STONE timely filed a charge of discrimination with the EEOC and has received a right to sue letter.  This lawsuit is timely filed in accordance with the EEOC's right to sue letter. (Said Right to Sue Letter is attached hereto as Exhibit "D"

    WHEREFORE, Plaintiff LAKEISHA STONE, prays that this court enters an order granting the following relief:

(A).    Awarding compensatory damages in an amount over $50,000.00.

32

(B).    Awarding punitive damages in an amount over $50,000.00.

(C).    Ordering NLCP to reinstate STONE to the position she would have held, if not for the Defendants discriminatory conduct.

(D).    Enjoining NLCP from engaging in similar civil rights violations.

(E).    Awarding reasonable attorney's fees.

(F).    Awarding any further or different relief that this court deems just and proper.

## COUNT VIII
## VIOLATION OF ILLINOIS HUMAN RIGHTS ACT
## RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY
## AGAINST NLCP

143.    Plaintiff STONE incorporates the preceding paragraphs 1-71 and further alleges as follows:

144.    Plaintiff STONE engaged in protected activity when she complained about discrimination and harassment based on age.

145.    In retaliation for Plaintiff's complaints, NLCP disciplined and terminated her.

146.    There was a causal connection between STONE'S complaints and the materially adverse actions taken against STONE by NLCP.

147.    The retaliation endured by STONE would dissuade a reasonable employee from making complaints of discrimination and harassment.

148.    NLCP retaliated against STONE for engaging in protected activity in violation of the Illinois Human Rights Act.

149.    STONE timely files this complaint in accordance with a duly issued Notice of Right to Sue Letter. (See attached Exhibit "D")

WHEREFORE, Plaintiff LAKEISHA STONE, prays that this court enter an order granting the following relief:

(A).        Awarding compensatory damages in an amount over $50,000.00.

(B).        Awarding punitive damages in an amount over $50,000.00.

(C).        Ordering NLCP to reinstate STONE to the position she would have held, if not for the Defendants discriminatory conduct.

(D).        Enjoining NLCP from engaging in similar civil rights violations.

(E).        Awarding reasonable attorney's fees.

(F) .        Awarding any further or different relief that this court deems just and proper.

### COUNT IX
### AGAINST NLCP
### VIOLATION OF ADEA

150.        Plaintiff incorporates the preceding paragraphs 1-71.

151.        STONE engaged in protected activity when she complained about discrimination and harassment based on age, namely STONE complained that during her employment that she was treated less favorably than similarly situated younger employees, subjected to different terms and conditions of employment, assigned many more duties for which she did not receive additional pay, and that she was excluded from the Defendants "30'60'90" programs. Subsequently, on or about December 15, 2022, STONE was discharged.

152.        In retaliation for STONE'S complaints, NLCP disciplined and terminated her.

153.        There was a causal connection between Plaintiff's complaints and the materially adverse actions taken against STONE by NLCP.

154.        The retaliation endured by STONE would dissuade a reasonable employee from making complaints of discrimination and harassment.

155.        NLCP retaliated against STONE for engaging in protected activity in violation of the Age Discrimination in Employment Act.

156.     Plaintiff timely files this complaint in accordance with a duly issued Notice of Right to Sue Letter. (See attached Exhibit "D")

WHEREFORE, Plaintiff LAKEISHA STONE, prays that this court enters an order granting the following relief:

(A).     Awarding compensatory damages in an amount over $50,000.00.

(B).     Awarding punitive damages in an amount over $50,000.00.

(C).     Ordering Defendant to reinstate STONE to the position she would have held, if not for the Defendants discriminatory conduct.

(D).     Enjoining Defendants from engaging in similar civil rights violations.

(E).     Awarding reasonable attorney's fees.

(F).     Awarding any further or different relief that this court deems just and proper.

**COUNT X**
**NEGLIGENCE**
**AGAINST NLCP AND ALL INDIVIDUAL DEFENDANTS**
**(filed in the alternative to COUNTS VII, VIII, AND IX)**

157.     Plaintiff incorporates the preceding paragraphs 1-71.

158.     Plaintiff STONE and Defendants NLCP and all INDIVIDUAL DEFENDANTS were employee and employer, and as such stood in relationship to one another such that the law imposed upon NLCP and all INDIVIDUAL DEFENDANTS, a duty of reasonable care to STONE.

159.     As STONE'S employer, NLCP and all INDIVIDUAL DEFENDANTS owed STONE a duty of reasonable care to:

a.     pay STONE regularly, fairly and in the correct amount;

b.     properly report earnings, withholdings and deductions and to provide a correct and timely W-2 Statement of Earnings to STONE;

35

    c.    treat STONE fairly;

    d.    not to discriminate against STONE;

    e.    not to harm STONE through carelessness; and

    f.    to avoid acts or omissions which injury to STONE could reasonably be foreseen.

160.    As STONE'S employer, NLCP and all INDIVIDUAL DEFENDANTS owed STONE an ethical duty to:

    a.    be a responsible employer including providing a safe workplace, compensating STONE fairly, treating STONE with a sense of dignity and equality, while respecting a minimum of privacy; and

    b.    model ethical behavior by not violating the law or company policy.

161.    Defendants NLCP and all INDIVIDUAL DEFENDANTS, breached that duty of reasonable care when they, inter alia:

    a.    failed to pay STONE regularly, fairly, and in the correct amount;

    b.    failed to properly report earnings, withholdings and deductions and to provide a correct and timely W-2 Statement of Earnings;

    c.    failed to treat STONE fairly;

    d.    discriminated against STONE based upon her age and retaliated against her for participating in a protected activity; and

    e.    harmed STONE through carelessness and acts and/or omissions which could reasonably be foreseen to cause injury to STONE;

    f.    failed to avoid acts or omissions in which injury to STONE was reasonably foreseeable.

162.    Defendants NLCP and all INDIVIDUAL DEFENDANTS, breached that ethical duty when they, inter alia:

a.    failed to be a responsible employer which included providing a safe workplace, compensating STONE fairly, treating STONE with a sense of dignity and equality, while respecting a minimum of privacy; and

b.    failed to model ethical behavior by violating the law and company policy.

163.    STONE suffered injury including lost gross and net income, loss of pension income, penalties for the delay caused in filing her state and federal income taxes because her W-2 were incorrect; physical and emotional distress, all proximately caused by the breach of the duty owed to the Plaintiff.

WHEREFORE, Plaintiff, STONE, requests this Court to enter a judgement order against the defendants, NLCP and each of the individually named Defendants, as follows:

(A).    Damages in an amount to be determined by this Court;

(B).    That Plaintiff be awarded costs and legal fees expended to redress this wrong;

(C).    For such other and further relief as this Court deems just and proper.

## COUNT XI
### GROSS NEGLIGENCE – WILFUL AND WONTON INTENTIONAL MISCONDUCT
### AGAINST NLCP AND ALL INDIVIDUAL DEFENDANTS
### (Filed in the alternative to COUNTS VII, VIII, AND IX)

164.    Plaintiff incorporates the preceding paragraphs 1-71 and 157-163.

165.    The defendants' conduct was willful and wanton and with total disregard for STONE'S rights.

166.     STONE repeatedly informed defendants of the errors and omissions related to her periodic paychecks and her W-2 Statement of Earnings.

167.     Even after STONE and her agents informed the defendants of the omissions and errors, Defendants and each of them ignored STONE and failed and refused to correct the incorrect, and fraudulent documents.

168.     Sometime in 2024, SIMUNOVIC sent STONE an undated letter wherein SIMUNOVIC states that pension contributions have been made on behalf of STONE for the tax years 2022 and 2023; however, the amounts of the pension contributions are unsupported, appear to be incorrect, and make no mention of the pension contributions for the year 2021. (See Letter attached hereto as Exhibit "E")

169.     The failure of the NLCP to intervene with PAYCOR, NLCP'S agent servant and or employee, to intervene on STONE'S behalf, and to stop the inaccurate paychecks and to correct the incorrect W-2's being generated by PAYCOR related to STONE'S payroll when SIMUNOVIC, and the individually named Defendants had the ability and obligation to do so, is further evidence of a deliberate intention to harm STONE and or conscious disregard for STONE'S welfare and her property rights.

170.     The individually named Defendants and NLCP are vicariously liable for the gross negligence of PAYCOR because the individually named Defendants and NLCP knew of PAYCOR'S actions related to STONE'S paychecks and her W-2's, and authorized and or ratified the wrongful and harmful activities related to STONE'S payroll.

171.     Said tortious actions by PAYCOR were within the scope of their employment by NLCP and the individually named Defendants.

WHEREFORE, Plaintiff, STONE, requests this Court to enter a judgement order against the defendants, NLCP, the individually named defendants and each of them, individually, as follows:

(A) Damages in an amount to be determined by this Court;

(B) That Plaintiff be awarded costs and legal fees expended to redress this wrong;

(C) Punitive damages in an amount to be determined by this Court; and

(D) For such other and further relief as this Court deems just and proper.

**COUNT XII**
**AGAINST NLCP**
**FOR BREACH OF EMPLOYMENT CONTRACT**
**(Filed in the alternative to Counts VII, VIII, and IX)**

172.    Plaintiff incorporates the preceding paragraphs 1-71.

173.    STONE entered into an employment contract with NLCP that provided payment for the academic school year 2021-2022 at annual salary of $65,323.00. (See employment contract attached hereto as Exhibits "A")

174.    The employment contract prepared and submitted to STONE for the school year 2021 was an offer. STONE accepted the offer made by NLCP. The consideration for the contract was the annual salary of $65,323.00.

175.    A valid contract exists for the school year 2021-2022 between NLCP and STONE.

176.    STONE entered into an employment contract with NLCP that provided payment for the 2022-2023 academic school year at the annual salary of $74,907.00 (See employment contract attached hereto as Exhibit "B")

177.     The employment contract prepared and submitted to STONE for the school year 2022-2023 was an offer.  STONE accepted the offer made by NLCP.  The consideration for the contract was the annual salary of $74,807.00

178.     STONE performed all of the duties she was assigned to perform in accordance with the employment contract for the 2021-2022 school year.

179.     STONE performed all of the duties she was assigned to perform in accordance with the employment contract for the 2022-2023 school year until the day of her termination.

180.     NLCP failed and refused to pay STONE as agreed for the years 2021-2022 and 2022-2023.

181.     NLCP breached the contract entered into by and between NLCP and STONE for the school year 2021-2022.

182.     NLCP breached the contract entered into by and between NLCP and STONE for the school year 2022-2023.

183.     STONE has suffered damages because of NLCP'S failure to pay STONE as promised, including but not limited to lost wages, lost pension income and problems associated with incorrect payroll documents produced by NLCP for each of the years 2021, 2022, and 2023.

WHEREFORE, Plaintiff, STONE, requests this Court to enter a judgement order against the defendants, NLCP, as follows:

(A).     Damages in an amount to be determined by this Court;

(B).     That Plaintiff be awarded costs and legal fees expended to redress this wrong; and

(C).     For such other and further relief as this Court deems just and proper.

## COUNT XIII
## NEGLIGENCE
## AGAINST PAYCOR

184.    Plaintiff incorporates the preceding paragraphs 1-71.

185.    Plaintiff STONE and Defendant, PAYCOR, stood in relationship to one another such that the law imposed upon PAYCOR a duty of reasonable care as to matters affecting STONE'S payroll.

186.    Defendant PAYCOR, owed STONE a duty of reasonable care to:

    a.    pay STONE regularly, fairly and in the correct amount;

    b.    properly report earnings, withholdings and deductions and to provide a correct and timely W-2 Statement of Earnings to STONE:

    c.    treat STONE fairly;

    d.    not to discriminate against STONE;

    e.    not to harm STONE through carelessness; and

    f.    to avoid acts or omissions which injury to STONE could reasonably be foreseen.

187.    As NLCP's agent servant and/or employee, PAYCOR owed STONE an ethical duty to:

    a.    to be a responsible employer including compensating STONE fairly, treating STONE with a sense of dignity and equality, while respecting a minimum of privacy; and

    b.    to model ethical behavior by not violating the law or company policy.

188.    Defendant PAYCOR, breached that duty of reasonable care when they, inter alia:

    a.    failed to pay STONE regularly, fairly and in the correct amount;

     b.     failed to properly report earnings, withholdings and deductions and to provide a correct and timely W-2 Statement of Earnings;

     c.     failed to treat STONE fairly;

     d.     harmed STONE through carelessness and acts and/or omissions which could reasonably be foreseen to cause injury to STONE; and

     e.     failed to avoid acts or omissions in which injury to STONE was reasonably foreseeable.

189.    Defendants PAYCOR, breached that ethical duty when they, inter alia:

     a.     failed to be a responsible employer which included, compensating STONE fairly, treating STONE with a sense of dignity and equality, while respecting a minimum of privacy; and

     b.     failed to model ethical behavior by violating the law and company policy.

190.    STONE suffered injury including lost gross and net income, loss of pension income, penalties for the delay caused in filing her state and federal income taxes late, because her W-2's were incorrect, and physical and emotional distress, all proximately caused by the breach of duty owed to the Plaintiff.

WHEREFORE, Plaintiff, STONE, requests this Court to enter a judgement order against the defendant PAYCOR, as follows:

(A).    Damages in an amount to be determined by this Court;

(B).    That Plaintiff be awarded costs and legal fees expended to redress this wrong;

(C).    For such other and further relief as this Court deems just and proper.

## COUNT XIV
### GROSS NEGLIGENCE – WILFUL AND WONTON INTENTIONAL MISCONDUCT AGAINST PAYCOR

191.     Plaintiff incorporates the preceding paragraphs 1-71 and 184-190.

192.     The defendant's conduct was willful and wanton and with total disregard for STONE'S rights.

193.     STONE repeatedly informed PAYCOR of the errors and omissions related to her periodic paychecks, her pension deductions and her W-2 Statement of Earnings.

194.     Even after STONE and her agents informed the defendants of the omissions and errors, Defendant PAYCOR ignored STONE and failed and refused to correct the incorrect, and fraudulent documents.

195.     Not only did PAYCOR fail and refuse to correct the incorrect W-2 Statement of Earnings after being informed of the problems with the documents they produced, PAYCOR subsequently cut STONE'S access to their system, as a further retaliation for STONE'S complaints.

196.     Sometime in 2024 SIMUNOVIC sent STONE an undated letter wherein SIMUNOVIC states that pension contributions have been made on behalf of STONE for the tax years 2022 and 2023; however, the amounts of the pension contributions are unsupported, appear to be incorrect, and make no mention of the pension contributions for the year 2021.

197.     The failure of PAYCOR, NLCP'S agent servant and or employee, to intervene on STONE'S behalf, and to stop the inaccurate paychecks and to correct the incorrect W-2's being generated by PAYCOR related to STONE'S payroll when PAYCOR had the ability

and obligation to do so, is further evidence of a deliberate intention to harm STONE and or a conscious disregard for STONE'S welfare, and her property rights.

198.    The individually named Defendants and NLCP are vicariously liable for the gross negligence of PAYCOR because the individually named Defendants and NLCP knew of PAYCOR'S actions related to STONE'S paychecks, her pension funds and her W-2's, and authorized and or ratified the wrongful and harmful activities related to STONE'S payroll.

199.    Said tortious actions by PAYCOR were within the scope of their employment.

200.    WHEREFORE, Plaintiff, STONE, requests this Court to enter a judgement order against the defendant PAYCOR, as follows:

    (A).        Damages in an amount to be determined by this Court;

    (B) .        Costs and legal fees expended to redress this wrong;

    (C)        Punitive damages in an amount to be determined by this Court; and

    (D) .        For such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Jessica G. Brown
JESSICA G. BROWN
Attorney for LaKEISHA STONE

Jessica G. Brown
Attorney for Plaintiff
Post Office Box 802945
Chicago, Illinois 60680
(773) 426-4749
ARDC ID # 6307684

**VERIFICATION BY CERTIFICATION**

Under penalties as provided by the law pursuant to Section 1-109, Illinois Code of Civil Procedure, that the information contained in the foregoing pleading is true and correct, except of matter alleged upon information and belief, which matter, the undersigned believes to be true.

DATED _____January 22, 2025_____          /s/LaKeisha Stone_____
                                              LaKEISHA STONE

                                              /s/ Jessica G. Brown_____
                                              JESSICA G. BROWN
                                              **Attorney for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26, 2025, I filed the above Second Amended Complaint with exhibits and provided service to all attorneys of record by the following means: USDC Electronic Filing System.

Signature:   /s/ Jessica G. Brown                Date:   January 26, 2025

Jessica G. Brown
Attorney for Plaintiff
Post Office Box 802945
Chicago, Illinois 60680-2945
(773) 426-4749
ARDC #        6307684

# EXHIBIT "A"

FILED DATE: 8/5/2024 11:53 AM   2024L006012



FILED
8/5/2024 11:59 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L006012
Calendar, I
28803549

July 6, 2021

Dear Lakeisha Stone,

We are excited to offer you a position with North Lawndale College Preparatory Charter High School (NLCP) as a social studies teacher. We are grateful to have your talent and efforts leading and supporting student learning. We hope you will choose to join us as we are confident that you will be an asset to our school community and we are confident you will find this new opportunity both challenging and rewarding. The following points outline the terms and conditions we are proposing.

Start date: *August 2021*

Salary: $ 65,323

Hours of work: M-F 8:00a - 3:45p

Probation: Your probation is based on the completion of the onboarding and orientation program for NLCP

Group benefits: NLCP offers a comprehensive benefits package that starts on your first day of employment.  Those offerings include:  BCBS PPO and HMO medical options, Guardian Dental PPO and DHMO options, Eyemed Vision Insurance, NLCP paid life insurance and long term disability, and voluntary short term disability and life insurance options, 403b option for retirement, and Chicago Teachers Pension Fund contributions for employees who hold a current IL Professional Educator License.

Reporting relationship: *Darryl Baker, Assistant Principal and Kyera Bradley, Assistant Principal Intern*

If you accept the terms of this  offer, please sign this offer letter and return to DeAndre Brown, dbrown@nlcphs.org

Best,

*Kyera Bradley*

*Assistant Principal Intern*

With the signature below, I accept this offer for employment.

_____          _____

Name                                                              Date

# EXHIBIT "B"

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, I

**NORTH LAWNDALE**
C O L L E G E   P R E P
*To and Through College!*

Christiana Campus
1615 S. Christiana Ave.
Chicago, IL 60623

Collins Campus
1313 S. Sacramento Dr.
Chicago, IL 60623

FILED
8/5/2024 11:53 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L006012
Calendar, I
28803549

FILED DATE: 8/5/2024 11:53 AM   2024L006012

Dear Lakeisha Stone,

Over the past few months, we have researched market trends and worked to create a staff salary scale for North Lawndale College Prep that is competitive and honors the hard work and dedication of our staff. We are inspired by our staff's efforts and outcomes every day and hope you will see this reflected in the salary increase.

We are pleased to inform you that your salary for SY 22-23 will be $74,907. The increase in your salary will be effective 8/1/2022

Your position next year is Teacher. If you are a teacher, this salary is based on placement in Lane 3 Step 7. To verify these placements, send a resume, license, and a copy of your transcripts to hrteam@nlcphs.org. We will also ask for employment verification forms.

NLCP will continue to offer competitive benefits packages. Each July, we renegotiate our plans with our carriers and work to provide the best benefit options for our employees and their families. We understand the importance of access to high quality benefits and are committed to keeping the costs as low as possible.

We appreciate your commitment to create a strong school culture and provide excellent instruction for our students and commend you for all you have accomplished this year.

If you have any questions or concerns, please reach out to your principal or assistant principal. If you do not plan to return for SY 22-23, please reach out to your supervisor immediately.  If your plans are still uncertain, please let us know so we can schedule a follow-up conversation.

We look forward to SY 22-23 and the teamwork ahead. Thank you for being a part of the Phoenix team. Together, we rise.

Best,

Michael Stewart
Principal, Christiana Campus

# EXHIBIT "C"

FILED DATE: 8/5/2024 11:53 AM   2024L006012

**EXPERT REPORT:**

**E. Hopewell**

FILED
8/5/2024 11:53 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L006012
Calendar, I
28803549

## REPORT OF POTENTIALLY FRAUDULENT TRANSACTIONS

By Earl Hopewell, MBA., CPA., CFE

**IN THE MATTER OF:**

**LAKEISHA STONE**

**v.**

**NORTH LAWNDALE COLLEGE PREP CHARTER HIGH SCHOOL**

**And**

**Board of Directors (Individually)**

November 1, 2023

**EXPERT REPORT:**                                    **E. Hopewell**

FILED DATE: 8/5/2024 11:53 AM    2024L006012

## Table of Contents

Summary of Opinions: Potentially Fraudulent Transactions                3

Factual Bases Underlying Potentially Fraudulent Transactions            4-5

Organizational Red Flags                                                6

Limitations Of This Preliminary Investigative Report                    7

Expert Rule 26 (B) Information                                          8

November 1, 2023

**EXPERT REPORT:**                                                        **E. Hopewell**

FILED DATE: 8/5/2024 11:53 AM   2024L006012

### Summary of Opinions:   Potentially Fraudulent Transactions

- North Lawndale College Prep Charter High School's (NLCP) senior management
  produced and mailed to Lakeisha Stone two erroneous federal annual employee tax
  filings, reported to the United States Department of Treasury's Internal Revenue Service
  (IRS), that management knew and should have known to be incorrect.  Members of the
  organization's board of directors bear liability for the erroneous filings, and uncollected
  and unpaid Federal Trust Funds under the Internal Revenue codes.  (See Bases for
  Opinion, page 4).

- North Lawndale College Prep Charter High School's (NLCP) senior management
  potentially misappropriated Lakeisha Stone's pension contributions to the Chicago
  Teachers Pension Fund, thereby engaging in potentially abusive tax transactions
  involving a retirement plan.  Members of the organization's board of directors bear
  liability for the abusive tax transactions under the Internal Revenue codes. (See Bases
  for Opinion, page 5).


- North Lawndale College Prep Charter High School's senior management knew and
  should have known that its weak internal control structure over processing of employee
  tax filings and pension fund contributions would result in material misstatement and
  financial irregularities.

3

November 1, 2023
**EXPERT REPORT:**                                        **E. Hopewell**

FILED DATE: 8/5/2024 11:53 AM   2024L006012

**Factual Bases for Opinions Expressed**

The following facts were relied upon by this expert in this report:

1. Lakeisha Stone is a certified and licensed teacher during all relevant times (See Exhibit A).

2. Lakeisha Stone completed the on-boarding process put forth by the organization resulting in her attestation to the process.(See Exhibit B).

3. Lakeisha Stone received an initial contract from NLCP. (See Exhibit C).

4. Lakeisha Stone received a second contract from NLCP. (See Exhibit D).

5. Lakeisha Stone's Paycor bi-weekly payroll direct-deposit receipts do not reconcile to her annual employee federal tax filings mailed to her residence. Stone's tax practitioner, Nedra Cales, CPA., informed Stone of the errors and omissions along with the unreconciled status of the documents as required by United States Treasury Department Circular No. 230 (See Exhibit E). This expert confirmed these matters.

6. Internal Revenue Code Section 7501 requires NLCP to the withholding and collection of · Internal Revenue taxes be held in a special trust fund.

7. IRC Section 6672(a) addresses the failure to collect or pay over trust fund taxes as willful conduct by responsible person(s).

8. A responsible person's failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid satisfies the willfulness criteria. (Finley v United States, 123 F.3d 1342) (10th. Cir.1997).

9. A voluntary board member of a tax-exempt organization who is involved in the financial decisions of the company may be a responsible person. (See Jefferson v. United States, 459 F.Supp.2d 685 (N.D. ILL.2006).

4

November 1, 2023
**EXPERT REPORT:**                                            **E. Hopewell**

10. Lakeisha Stone's initial contract (See Exhibit F) and NLCP's On-Boarding documents require periodic pension contributions totaling 9% of her total wages be contributed to the Chicago Teachers Pension Fund (inclusive of 2% by the employee and 7% by the employer).

11. Chicago Teachers Pension Fund confirmed that it received no pension contributions from NLCP for Lakeisha Stone for either 2021, 2022, or the 2023 fiscal or calendar years. (See Exhibit G).

12. United States Treasury Department Circular No. 230, Title 31 Code of Federal Regulations, Subtitle A, Part 10, published June 12, 2014, (See Exhibit E), govern how licensed Certified Public Accountants (CPA) must respond to:

    a. Knowledge of Omissions, and
    b. Must promptly make disposition of such omissions without any unreasonable delay.

13. Illinois State Tax Form AG-990 has been reviewed and contains many of the defalcations noted in items 1) through 12) above, including but not limited to the false certification by management of NLCP that there are no misappropriations or fraud contained in the filed AG-990 forms for 2021-2022 years.

5

November 1, 2023

**EXPERT REPORT:** **E. Hopewell**

**NLCP's Known Red Flags**

  -  - Both Generally Accepted Governmental Auditing Standards (GAGAS) and Generally Accepted Accounting Standards (GAAS) provide guidance to licensed CPA practitioners about red flags that indicate the occurrence of fraud in the financial reporting process.  Additionally, the State of Illinois published a document entitled ***Illinois Charter Schools Fraud,*** *Risking Public Money,* Jan. 2015., that details "charter schools oversight depends heavily on self-reporting by charter schools, **or by whistleblowers** because general auditing techniques alone do not uncover fraud." (See Exhibit H).

  Here are some *key red flags* that pertain to NLCP:

1. NLCP received $1,390,000 from the United States *Payroll Protection Program* in May 2020 that was forgiven in March 2022.

2. Despite the PPP forgiven loan, NLCP has a fully-drawn $700,000 line-of-credit.

3. NLCP is supposedly under "CPS pension contribution" reconciliation process.  The audited financial statements discloses that pension contributions for fiscal year 2021 has been made and the 2022 fiscal year is still open. (See Exhibit I).

4. · NLCP has not made timely reconciliations for accrued expenses and accrued liabilities.

5. Chicago Teachers Pension Fund has not received pension contributions from Lakeisha Stone (Exhibit G) in 2021, 2022, or 2023. (See Exhibit G).

FILED DATE: 8/5/2024 11:53 AM   2024L006012

6

November 1, 2023
**EXPERT REPORT:**                                                    **E. Hopewell**

**Limitations of this Preliminary Report.**

This preliminary report is preliminary subject to revision based upon documentation

forthcoming from the discovery phase of litigation.     It is not only preliminary in the

investigative process but it relies on information and documentation from only the client,

Lakeisha Stone, and her attorney.   As matters progress beyond discovery, the legal process

may produce documentation that may substantially change preliminary opinions and bases for

the opinions expressed in this preliminary report.   I reserve the right to amend this report

based upon such matters.

7

November 1, 2023
**EXPERT REPORT:**                                    **E. Hopewell**

**Earl Hopewell, MBA., CPA., CFE.,** has authored this preliminary report. Hopewell is a licensed Wisconsin CPA (having held license in both Illinois and Michigan since the mid-1980s) and a founding member of the Association of Certified Fraud Examiners. Hopewell's Rule 26 (B) Resume has been attached and discloses his expertise in public school matters in the State of Illinois which includes the following cases:

1. **Shirley Woodard v Chicago Board of Education/KMPG International. 00-C-5515**

   In this case, Hopewell testified against Chicago Board of Education and its auditor, KPMG, which produced a report entitled, "Litany of Financial Horrors by Shirley Woodard." Hopewell's investigative report disclosed how KPMG failed to following generally accepted standards in producing a report that not only falsified but overstated financial transactions. Woodard prevailed at trial in the Northern District Federal Court against both CBOE and KPMG.

2. **State of Illinois v Alex Boyd and Mable Chapman. 12CR-14315**

   In this case, the Cook County States' Attorney Anita Alvarez, brought forth a 26-count felony-theft criminal indictment against West Harvey School District 147's superintendent and board treasurer. Hopewell investigated and produced a report that concluded no fraud or theft took place at the school district from 2002 through 2012. On the morning of trial, the States Attorney dismissed all charges against Mable Chapman and accepted a insignificant violation of law from Boyd due to Hopewell's investigative work.

8

FILED DATE: 8/5/2024 11:53 AM   2024L006012

# CERTIFICATE

**EXHIBIT A**

FILED DATE: 8/5/2024 11:53 AM   2024L006012

## EMPLOYEE HANDBOOK ACKNOWLEDGMENT AND RECEIPT

**I have received my copy of the Employee Handbook.**

The employee handbook describes important information about North Lawndale College Prep High School ("NLCP"), and I understand that I should consult my supervisor or Human Resources regarding any questions not answered in the handbook. I have entered into my employment relationship with NLCP voluntarily and acknowledge that there is no specified length of employment.

This handbook and the policies and procedures contained herein supersede any and all prior practices, oral or written representations, or statements regarding the terms and conditions of my employment with NLCP. By distributing this handbook, NLCP expressly revokes any and all previous policies and procedures that are inconsistent with those contained herein.

I understand that, except for employment-at-will status, any and all policies and practices may be changed at any time by NLCP. I understand that revised information may supersede, modify or eliminate existing policies. Only NLCP has the ability to adopt any revisions to the policies in this handbook.

**I understand and agree that nothing in the Employee Handbook creates, or is intended to create, a promise or representation of continued employment and that employment at NLCP is employment at will, which may be terminated and the will of either NLCP or myself.**

**Furthermore, I acknowledge that this handbook is neither a contract of employment nor a legal document.** I understand and agree that employment and compensation may be terminated with or without cause and with or without notice at any time by NLCP or myself.

I have received the handbook, and I understand that it is my responsibility to read and comply with the policies contained in this handbook and any revisions made to it.

_____

Employee's Signature

_____

Employee's Name (Print)

_____

Date

41

# EXHIBIT B



NORTH LAWNDALE
COLLEGE PREP

FILED DATE: 8/5/2024 11:53 AM 2024L006012

July 6, 2021

Dear Lakeisha Stone,

We are excited to offer you a position with North Lawndale College Preparatory Charter High School (NLCP) as a social studies teacher. We are grateful to have your talent and efforts leading and supporting student learning. We hope you will choose to join us as we are confident that you will be an asset to our school community and we are confident you will find this new opportunity both challenging and rewarding. The following points outline the terms and conditions we are proposing.

Start date: *August 2021*

Salary: $ 65,323

Hours of work: M-F 8:00a - 3:45p

Probation: Your probation is based on the completion of the onboarding and orientation program for NLCP

Group benefits: NLCP offers a comprehensive benefits package that starts on your first day of employment. Those offerings include: BCBS PPO and HMO medical options, Guardian Dental PPO and DHMO options, Eyemed Vision Insurance, NLCP paid life insurance and long term disability, and voluntary short term disability and life insurance options, 403b option for retirement, and Chicago Teachers Pension Fund contributions for employees who hold a current IL Professional Educator License.

Reporting relationship: *Darryl Baker, Assistant Principal and Kyera Bradley, Assistant Principal Intern*

If you accept the terms of this offer, please sign this offer letter and return to DeAndre Brown, dbrown@nlcphs.org

Best,

*Kyera Bradley*

*Assistant Principal Intern*

With the signature below, I accept this offer for employment.

| Name | Date |
|------|------|

**EXHIBIT C**



NORTH LAWNDALE
C O L L E G E   P R E P
*To and Through College!*

Christiana Campus
1615 S. Christiana Ave.
Chicago, IL 60623

Collins Campus
1313 S. Sacramento Dr.
Chicago, IL 60623

FILED DATE: 8/5/2024 11:53 AM   2024L006012

Dear Lakeisha Stone,

Over the past few months, we have researched market trends and worked to create a staff salary scale for North Lawndale College Prep that is competitive and honors the hard work and dedication of our staff. We are inspired by our staff's efforts and outcomes every day and hope you will see this reflected in the salary increase.

We are pleased to inform you that your salary for SY 22-23 will be $74,907. The increase in your salary will be effective 8/1/2022

Your position next year is Teacher. If you are a teacher, this salary is based on placement in Lane 3.Step 7. To verify these placements, send a resume, license, and a copy of your transcripts to hrteam@nlcphs.org. We will also ask for employment verification forms.

NLCP will continue to offer competitive benefits packages. Each July, we renegotiate our plans with our carriers and work to provide the best benefit options for our employees and their families. We understand the importance of access to high quality benefits and are committed to keeping the costs as low as possible.

We appreciate your commitment to create a strong school culture and provide excellent instruction for our students and commend you for all you have accomplished this year.

If you have any questions or concerns, please reach out to your principal or assistant principal. If you do not plan to return for SY 22-23, please reach out to your supervisor immediately. If your plans are still uncertain, please let us know so we can schedule a follow-up conversation.

We look forward to SY 22-23 and the teamwork ahead. Thank you for being a part of the Phoenix team. Together, we rise.

Best,

Michael Stewart
Principal, Christiana Campus

**EXHIBIT D**

FILED DATE: 8/5/2024 11:53 AM  2024L006012

**Treasury Department Circular No. 230 (Rev. 6-2014)**

Catalog Number 16586R
www.irs.gov

**Regulations Governing Practice before the Internal Revenue Service**

Department
of the
Treasury

**Internal
Revenue
Service**

**Title 31 Code of Federal Regulations, Subtitle A, Part 10, published (June 12, 2014)**

EXHIBIT E

**Subpart B — Duties and Restrictions Relating to Practice Before the Internal Revenue Service**

## § 10.20 Information to be furnished.

(a) *To the Internal Revenue Service.*

(1) A practitioner must, on a proper and lawful request by a duly authorized officer or employee of the Internal Revenue Service, promptly submit records or information in any matter before the Internal Revenue Service unless the practitioner believes in good faith and on reasonable grounds that the records or information are privileged.

(2) Where the requested records or information are not in the possession of, or subject to the control of, the practitioner or the practitioner's client, the practitioner must promptly notify the requesting Internal Revenue Service officer or employee and the practitioner must provide any information that the practitioner has regarding the identity of any person who the practitioner believes may have possession or control of the requested records or information. The practitioner must make reasonable inquiry of his or her client regarding the identity of any person who may have possession or control of the requested records or information, but the practitioner is not required to make inquiry of any other person or independently verify any information provided by the practitioner's client regarding the identity of such persons.

(3) When a proper and lawful request is made by a duly authorized officer or employee of the Internal Revenue Service, concerning an inquiry into an alleged violation of the regulations in this part, a practitioner must provide any information the practitioner has concerning the alleged violation and testify regarding this information in any proceeding instituted under this part, unless the practitioner believes in good faith and on reasonable grounds that the information is privileged.

(b) *Interference with a proper and lawful request for records or information.* A practitioner may not interfere, or attempt to interfere, with any proper and lawful effort by the Internal Revenue Service, its officers or employees, to obtain any record or information unless the practitioner believes in good faith and on reasonable grounds that the record or information is privileged.

(c) *Effective/applicability date.* This section is applicable beginning August 2, 2011.

## § 10.21 Knowledge of client's omission.

A practitioner who, having been retained by a client with respect to a matter administered by the Internal Revenue Service, knows that the client has not complied with the revenue laws of the United States or has made an error in or omission from any return, document, affidavit, or other paper which the client submitted or executed under the revenue laws of the United States, must advise the client promptly of the fact of such noncompliance, error, or omission. The practitioner must advise the client of the consequences as provided under the Code and regulations of such noncompliance, error, or omission.

## § 10.22 Diligence as to accuracy.

(a) *In general.* A practitioner must exercise due diligence —

(1) In preparing or assisting in the preparation of, approving, and filing tax returns, documents, affidavits, and other papers relating to Internal Revenue Service matters;

(2) In determining the correctness of oral or written representations made by the practitioner to the Department of the Treasury; and

(3) In determining the correctness of oral or written representations made by the practitioner to clients with reference to any matter administered by the Internal Revenue Service.

(b) *Reliance on others.* Except as modified by §§10.34 and 10.37, a practitioner will be presumed to have exercised due diligence for purposes of this section if the practitioner relies on the work product of another person and the practitioner used reasonable care in engaging, supervising, training, and evaluating the person, taking proper account of the nature of the relationship between the practitioner and the person.

FILED DATE: 8/5/2024 11:53 AM  2024L006012

# Transactions

FILED DATE: 8/5/2024 11:53 AM    2024L006012

**More In Retirement Plans**    **+**

The IRS is engaged in extensive efforts to curb abusive tax shelter schemes and transactions. The Tax-Exempt and Government Entities Division of the IRS, including the office of Employee Plans, participates in this IRS-wide effort by devoting substantial resources to the identification, analysis, and examination of abusive tax shelter schemes and promotions.

- Listed Transactions - Background
- Employee Plans Listed Transactions
- How Abusive Transactions Impact Availability of EPCRS
- Report an Abusive Transaction Involving a Retirement Plan
- Additional Resources

**EXHIBIT F**

FILED DATE: 8/5/2024 11:53 AM 2024L006012

Employee Plans maintains the Abusive Transaction Hotline that people can use to share information (anonymously, if preferred) about abusive tax shelters and emerging issues that may be abusive in retirement plans:

- Email: eoclass@irs.gov✉
- Mai:

    Internal Revenue Service

    EP Tax Shelter Coordinator

    31 Hopkins Plaza, Room 1542

    Baltimore, MD 21201

Return to top

# **Additional Resources**

IRS Corporate Abusive Tax Transactions - Listed transactions, with citations of published guidance, regulations or court cases and other useful resources.

S Corporation ESOP Guidance - Guidance and other useful information to assist in understanding issues that may exist with S Corporation ESOPs.

FILED DATE: 8/5/2024 11:53 AM    2024L006012

Describe the failure - For example: "The plan sponsor failed in operation to make timely contributions to the plan as required by the written terms of the plan document."

The description should include the following:

- The plan year or years for which contributions were not made
- Amount of the deficiency
- Number of participants who should have received a contribution
- Why the failure occurred

# Form 14568, Section III. Description of Proposed Method Correction

Describe the correction method applicable to each failure listed on the attachment for Section II. Include the following information:

- The amount of the corrective contribution made (or to be made) to the plan. Include an explanation of how this amount was determined.
- The date that the late contribution was made

FILED DATE: 8/5/2024 11:53 AM   2024L006012

**From:** Paul Pasternak <pasternakp@ctpf.org>
**Sent:** Monday, October 16, 2023 10:51 AM
**To:** Becky Ziak Gonzales <gonzalesr@ctpf.org>
**Cc:** Edgar M. Samayoa, MBA <samayoae@ctpf.org>; Daniel J. Hurtado <hurtadod@ctpf.org>; Jenn Pentangelo <pentangeloj@ctpf.org>; Ketki Shah, MBA <shahk@ctpf.org>
**Subject:** RE: Lakeisha Stone - Authorization form and questions

Good morning Becky,

Below is snapshot of Ms. Stone employment history and for which schools contributions were reported. During her employment with North Lawndale she was classified as full time employee, however in the second screenshot, the employer indicated that she started and ended her employment on the same day. This looks like the employer entered this date incorrectly. I can follow up with the employer but if I could have a copy of last paystub showing contributions withheld by the employer would be helpful. If that's not possible, then is there a possibility to get exact employment days from Ms. Stone while at North Lawndale?

| Employer | Current Employment Status | Employment Years | Contributions Reported |
|---|---|---|---|
| Chicago Public Schools | Active | FY23 | Yes |
| Kipp Ascend Charter School | Terminated | FY20-FY22 | Yes |
| North Lawndale College Prep | Terminated | FY23 | No |

**North Lawndale Employment**

Employment Status

| Status | | Start Date | | End Date | |
|---|---|---|---|---|---|
| Active | ⌄ | 08/01/2021 | 📅 | 07/31/2021 | |

| Status | | Start Date | | End Date | | Last Day Worked | |
|---|---|---|---|---|---|---|---|
| Terminated | ⌄ | 08/01/2021 | 📅 | mm/dd/yyyy | | 01/06/2023 | 📅 |

Add Status

Please let me know if you have any que

**EXHIBIT G**

Thank you!

FILED DATE: 8/5/2024 11:53 AM   2024L006012

**Paul Pasternak**
*Employer Reporting Manager*
Chicago Teachers' Pension Fund
T: 312-604-1239 | F: 312-641-7185

**From:** Becky Ziak Gonzales
**Sent:** Friday, October 13, 2023 3:14 PM
**To:** 'calvita.frederick@att.net' <calvita.frederick@att.net>
**Subject:** Lakeisha Stone - Authorization form and questions

Hi Calvita,

Attached is the information release form; please return it to me at your earliest convenience.  The information that I would need to have benefits/compliance look into this would be:

- Dates of employment at the charter.
- Exact check dates in which she is seeing deductions for pension contributions but believes contributions were not posted to her CTPF account.
- Amounts of contributions deducted.
- Name of the school (I think you said North Lawndale Charter, but please verify).
- Was Ms. Stone working in a full-time teaching position at the school?

Thanks,

Becky

FILED DATE: 8/5/2024 11:53 AM    2024L006012

# Risking Public Money: Illinois Charter School Fraud

## Best Practices to Protect Public Dollars & Prevent Financial Mismanagement



## January 2015





EXHIBIT H

FILED DATE: 8/5/2024 11:53 AM   2024L006012

# Risking Public Money: Illinois Charter School Fraud

## Best Practices to Protect Public Dollars & Prevent Financial Mismanagement

**Center for Popular Democracy
Action Now**

January 2015

## Executive Summary

In 2010, fourteen years after Illinois passed its charter school law, the U.S. Department of Education raised a red flag about the state's oversight of fiscal controls at its charter schools, finding that the state "has no system in place for monitoring [charter schools]." Four years later, this problem continues. To date, $13.1 million in fraud by charter school officials has been uncovered in Illinois. Because of the lack of transparency and necessary oversight, total fraud is estimated at **$27.7 million in 2014 alone.** Our research uncovered three fundamental flaws with the state's oversight of charter schools:

- **Oversight depends heavily on self-reporting by charter schools, or by whistleblowers.** Illinois oversight agencies rely almost entirely on complaints from whistleblowers and audits paid for by charter operators. Both methods are important to uncover fraud; however, neither is a systematic approach to fraud detection, nor are they effective in fraud prevention.

- **General auditing techniques alone do not uncover fraud.** The audits commissioned by the charters and provided to Illinois oversight agencies use general auditing techniques, not those specifically designed to uncover fraud. The current processes may expose inaccuracies or inefficiencies; however, without audits targeted at uncovering financial fraud, state and local agencies will rarely be able to detect fraud without a whistleblower.

- **Adequate staffing is necessary to detect and eliminate fraud.** We found evidence that the government agencies tasked with investigating fraud are severely understaffed, which is prohibitive to conducting high quality, time-intensive audits of any type.

We propose the following targeted reforms of the existing oversight structure to remedy these flaws:

### .Mandate Audits Designed to Detect and Prevent Fraud

- Charter schools should institute an internal fraud risk management program, including an annual fraud risk assessment and audits that specifically investigate high-risk areas;

- Charter schools should commission audits of internal controls over financial reporting that are integrated with an audit of financial statements;

June 30, 2022 and 2021, total lease expense under operating lease agreements amounted to $14,684 and $23,756, respectively.

## NOTE 8   EMPLOYEE BENEFIT PLANS

The School participates in the Public School Teachers' Pension and Retirement Fund of Chicago (the Plan), a defined benefit plan covering all certified employees. The School makes contributions to the Plan each year equal to 7% of all participants' base salary. In addition, the School deducts 2% from the employees' base salary to be paid into the Plan. Total expenses for these contributions for the years ended June 30, 2022 and 2021 were $257,682 and $204,114, respectively.

During the years ended June 30, 2022 and 2021, CPS deducted from the School additional contributions of $293,582 and $423,977, respectively, representing 11.16% of estimated pensionable salaries.

The difference between the estimated contributions deducted by CPS and the calculated contributions based on actual pensionable salaries for each fiscal year is the pension true-up amount. The pension true-up amount is subject to reconciliation and review by CPS prior to being paid out by or owed to CPS and, as a result, the outstanding true-up amounts may change. The amounts refunded or paid as a result of the claim will be recognized in the year CPS has completed their review and reconciliation.

The pension true-up reconciliation and approval by CPS for the school was completed for the year ended June 30, 2021 during the year ended June 30, 2022 and resulted in a true-up receipt of $98,563. The pension true-up reconciliation and approval by CPS for the school was completed for the year ended June 30, 2020 during the year ended June 30, 2021 and resulted in a true-up receipt of $64,413. The pension true-up reconciliation and approval by CPS for the School is still outstanding for the year ended June 30, 2022.

A summary of the School's participation in the Fund for the year ended June 30, 2022 is as follows:

| | |
|---|---|
| Total Pensionable Salaries | $ 3,681,165 |
| Employee's Contribution Expense Picked up by Employer (7%) | $ 257,682 |
| Employer's Contribution Expense (11.16%) | $ 410,818 |
| Less: CPS Deduction Amount for Employer's Pension Expense | (293,582) |
| Pension True-Up Amount | $ 117,236 |

(18)

## NORTH LAWNDALE COLLEGE
## PREPARATORY CHARTER HIGH SCHOOL, INC.
## NOTES TO FINANCIAL STATEMENTS
### JUNE 30, 2022 AND 2021

## NOTE 8   EMPLOYEE BENEFIT PLANS (CONTINUED)                **EXHIBIT I**

The School adopted a 403(b) plan for the benefit of its employees during ___ , ___ ___ June 30, 2019. All employees are eligible to participate in the Plan and make contributions to the Plan up to the maximum dollar limit which is set by law. The Plan includes discretionary employer contributions. Charges to expenses for the Plan amount to $-0- for the years ended June 30, 2022 and 2021.

FILED DATE: 8/5/2024 11:53 AM   2024L006012

# EXHIBIT "D"

Hearing Date: No hearing scheduled
Courtroom Number:
Location: Law Division Call Case Management Dates will be heard via Zoom or In Person
Judge: Calendar, I
Court Date: 8/5/2024 9:30 AM

Law Division Motion Section and Case Management Dates for CALENDARS (A, B, C, D, E, F, H, X, Z) will be heard via Zoom or In Person
Additional Case Management Dates will be heard via Zoom
For opposite location and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME?Zoom-Links?Agg4906_SelectTab/12

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:

☐ EEOC

☐ FEPA

FILED
6/5/2024 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L006012
Calendar, I
29003983

Agency(ies) Charge No(s):

☐ 2024L006012 and EEOC

### Illinois Department Of Human Rights
*State or local Agency, if any*

| I Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| Lakeisha Stone | (773) 870-9978 | 1981 |

Street Address

1510 S 48TH CT

CICERO, IL 60804

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| North Lawndale College Prep High School | 501+ Employees | |

Street Address

1615 S. Christiana

Chicago, IL 60623

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address          City, State and ZIP Code

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest          Latest |
| Age, Retaliation | 10/07/2022          12/15/2022 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began my employment with the Respondent in or around July 2019. My most recent position title was African American History Teacher. During my employment, I was treated less favorably than similarly situated, younger, employees. I was also subjected to different terms and conditions of employment, including but not limited to, not being compensated for additional duties, and being excluded from the Respondents 30-60-90 program. I complained to the Respondent. Subsequently, on or about December 15, 2022, I was discharged.

I believe I have been discriminated against because of my age, 40 (YOB: 1981), and in retaliation for engaging in protected activities, in violation of the Age Discrimination in Employment Act of 1967, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Lakeisha Stone** **03/01/2023** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

FILED DATE: 8/5/2024 12:00 AM 2024L006012

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

Hearing Date: No hearing scheduled
Location: No hearing scheduled
Judge: Calendar, I
Court Date: 8/5/2024 9:30 AM

Law Division Motion and Case Management Dates for CALENDARS (A,B,C,D,E,F,H,R,X,Z) will be heard In Person
All other Law Division Room Case-Management Dates will be heard via Zoom
For zoom information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME?Zoom-Links?Agg4906_SelectTab/12

FILED
8/5/2024 12:00 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L006012
Calendar, I
28803989

FILED DATE: 8/5/2024 12:00 AM  2024L006012

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/04/2024

**To:** Lakeisha Stone
1510 S 48TH CT
CICERO, IL 60804
Charge No: 440-2023-02557

EEOC Representative and email:    FATIMA SANDOVAL
Investigator
fatima.sandoval@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2023-02557.

On behalf of the Commission,

Digitally Signed By:Amrith Kaur Aakre
03/04/2024

Amrith Kaur Aakre
District Director

FILED DATE: 8/5/2024 12:68 AM 2024L006012

**Cc:**

Kevin McKeown
Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP
500 PARK BLVD STE 1000
Itasca, IL 60143

Erin Simunovic
North Lawndale College Prep
1615 S. Christiana
Chicago, IL 60623

Athena Christofalos
Hodges and Loizzi
500 PARK BLVD STE 1000
Itasca, IL 60143

Calvita  J Frederick
Calvita J. Frederick & Associates
Post Office Box 802976
Chicago, IL 60680

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 440-2023-02557 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 440-2023-02557 to the District Director at Amrith Kaur Aakre, 230 S Dearborn Street , Chicago, IL 60604.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

# EXHIBIT "E"



**NORTH LAWNDALE**
C O L L E G E   P R E P

1615 S Christiana Ave. Chicago, IL 60623
nlcphs.org | (773) 542-1490

Lakeisha Stone
1510 S 48th Ct
Cicero, IL 60804

Dear Lakeisha,

North Lawndale College Prep (NLCP) recently conducted a financial audit, which included a review of contributions to the Chicago Teachers' Pension Fund (CTPF). This audit revealed that, due to an inadvertent payroll error, required employee contributions of 2% of wages were not deducted from your payroll from certain pay periods in fiscal years 2022 and 2023. NLCP has rectified this by making these contributions on your behalf. For you, this is a contribution of $1921.95 which was submitted for deposit into your CTPF account in December 2023. NLCP made its required 7% contribution during this time period.

There is no action needed from you at this time. If you would like to check your CTPF balance, you can login to your account at https://www.ctpf.org/myctpf. If you have questions about this CTPF contribution, please contact pension@nlcphs.org.

Thank you,

North Lawndale College Prep



# NORTH LAWNDALE
## C O L L E G E  P R E P
#### P.O. Box 23400 · Chicago, IL 60623

CAROL STREAM IL 601
3 JAN 2024 PM 5 L





US POSTAGE IMI PITNEY BOWES

ZIP 60623
02 7H
0006053695

$ 000.63⁰

DEC 15 2023

FIRST-CLASS

Lakeisha Stone
1510 S 48th Ct
Cicero ,IL 60804

TOGETHER WE RISE!

60804-153410