# Exhibit D

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 2 of 16 PageID #:433

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

2020 WL 12813968
Only the Westlaw citation is currently available.
United States District Court, C.D. Illinois,
Urbana Division.

Dr. Donald OWEN, Plaintiff,
v.
BOARD OF EDUCATION OF URBANA
SCHOOL DISTRICT #116, John H. Dimit,
Anne Hall, Paul Poulosky, Peggy Patten,
Brenda Carter, and Tori Exum, Defendants.

Case No. 20-CV-2010
|
Signed 09/03/2020

**Attorneys and Law Firms**

Ronald S. Langacker, Langacker Law Ltd, Urbana, IL, for Plaintiff.

Frank B. Garrett, III, Tyler Jon Bohman, Robbins Schwartz Nicholas Lifton & Taylor Ltd, Chicago, IL, for Defendants.

## ORDER

COLIN S. BRUCE, UNITED STATES DISTRICT JUDGE

*1 Plaintiff, Dr. Donald Owen, filed a Second Amended Complaint (#20) on April 17, 2020, against Defendants Board of Education of Urbana School District (#116) ("the Board"), and individual Board members John H. Dimit, Anne Hall, Paul Poulosky, Peggy Patten, Brenda Carter, and Tori Exum, alleging violations of federal civil rights law and Illinois state law. Defendants filed a Motion to Dismiss (#26) on May 11, 2020, to which Plaintiff filed a Response (#31) on May 26, 2020. Defendants then filed a Reply (#33) on June 11, 2020.

For the following reasons, Defendants' Motion to Dismiss (#26) is GRANTED.

### BACKGROUND

The following background is taken from the allegations in Plaintiff's Second Amended Complaint. At this stage of the proceedings, the court must accept as true all material allegations of the Second Amended Complaint, drawing all reasonable inferences therefrom in Plaintiff's favor. See *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016).

*The Parties*
Plaintiff was the superintendent of the Urbana School District #116 ("School District"), and a full-time public employee of Defendant Board.

Defendant Board is a municipal corporation, organized and existing under the laws of the State of Illinois. Pursuant to Section 10-10 of the Illinois School Code (105 Ill. Comp. Stat. 5/10-10), the Board is the duly constituted and elected governing body of the School District.

Defendants Dimit, Carter, Hall, Poulosky, Patten, and Exum are all elected members of the Board, and have been sued in both their individual and official capacities. Dimit was the President of the Board at the time of Plaintiff's termination. Exum was elected to the Board on April 2, 2019.

*Allegations*
Plaintiff had been an educator for over 30 years, and began his employment with the School District in 1989. From 2013 until December 4, 2018, he was employed as the School District's superintendent.

The Board was an "Employer" and/or "Person" within the meaning of sections 2-101(B)(1)(a), 2-101(B)(1)(b), and 1-103(L) of the Illinois Human Rights Act ("IHRA"), and was subject to the provisions of the Act. Among the duties of the Board set forth in Section 10-21.4 of the Illinois School Code (105 Ill. Comp. Stat. 5/10-21.4) is "to employ a superintendent who shall have charge of the administration of the schools under the direction of the board of education." Under the Illinois School Code, the Board makes all employment decisions pertaining to the superintendent. 105 Ill. Comp. Stat. 5/10–16.7.

On June 16, 2015, Plaintiff and the Board entered into an employment contract whereby the Board hired and retained Plaintiff as superintendent of the School District. The 2015 Employment Contract had a term that commenced on July 1, 2015, and concluded on June 30, 2019. The Illinois School Code requires a performance-based contract for superintendents that includes "the goals and indicators of student performance and academic improvement determined and used by the local school board to measure the

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 3 of 16 PageID #:434

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

performance and effectiveness of the superintendent and such other information as the local school board may determine." 105 Ill. Comp. Stat. 5/10–23.8.

**\*2** The 2015 Employment Contract entered into between the Board and Plaintiff made reference to, and complied with, the requirements set forth in Section 10-23.8 of the Illinois School Code (105 Ill. Comp. Stat. 5/10-23.8). Specifically, the 2015 Employment Contract is a performance-based contract with goals and indicators of student performance and academic improvement.

Throughout the course of his employment with Defendants, Plaintiff performed his job duties in a satisfactory manner consistent with Defendants' standards.

During his tenure with the School District, Plaintiff focused on issues concerning social justice and he promoted initiatives to address the needs of a multicultural School District. Plaintiff has been a passionate advocate for resolving issues related to racial and gender bias within the School District. Notably, Plaintiff was instrumental in instituting a restorative discipline process within the School District after data revealed a significant disparity between the number and severity of punishments for students who were members of racial minorities.

In recent years, a pronounced racial disparity existed within the District between a student body composed primarily of racial minorities, and teachers who were not in racial minorities. In order to address this inequality, Plaintiff, along with other members of the Administration, formed a Recruitment and Retention Committee in 2017 with the intention to recruit, retain, and develop teachers, faculty and staff who would reflect the demographics of the student population in race, ethnicity, and spoken languages. The effort of the Administration to recruit and retain faculty and staff to more closely reflect the demographics of the School District is expressed in Urbana School District Board Policy 5:10, entitled Minority Recruitment: "The District will attempt to recruit and hire minority employees. The implementation of this policy may include advertising openings in minority publications, participating in minority job fairs, and recruiting at colleges and universities with significant minority enrollments."

Though Plaintiff and others members of School District's Administration were committed to reducing the School District's racial disparity, several School District employees complained to individual Board members that minority candidates were being hired in violation of existing policy. One anonymous letter to the Board alleged that, "many people in the district feel that positions are being cut to hire people of color in order for the district to be more diverse." (Gains, Lee. "Audit Report Points to Problems in Urbana School Hiring Process." The News-Gazette. 15 November, 2018).

As a result of these complaints, the Board, without consulting with Plaintiff or other members of Administration, commenced what became known as the hiring practices audit of specific School District employees who had allegedly been hired in violation of the School District's policies. Around 30 District employees were audited with the suspicion they had been wrongfully hired. The specific employees were selected for audit by individual members of the Board, and without input from Administration.

All of the employees who were audited based on Board suspicion that they had been wrongfully hired were people of color: specifically, employees of African-American, Latino, or Asian descent. No Caucasian individuals were on the list of alleged wrongful hire. When Plaintiff became aware that the audit was being conducted, he notified the Board that the employees who had been selected were all people of color, and that it appeared that the Board was targeting minority employees.

**\*3** During the Board's closed session meeting on September 24, 2018, Plaintiff stated that several building administrators had asked him about a review of the hiring of employees of color. Plaintiff stated that he was very concerned about both the public perception and legal consequences of auditing individuals based on race. The Board President (Defendant Dimit) responded by stating that he wanted everyone in the meeting to know that, while the School District was publicly calling the record review an "audit," in his mind, it was an "investigation" of specific individuals.

At the conclusion of the September 24, 2018, Board meeting, it was discovered that there was no audio recording of the closed session meeting. Plaintiff was told that the Recording Secretary had turned the recorder off after public comment and failed to turn it back on.

On September 26, 2018, Plaintiff expressed his concerns to Defendant Board member Peggy Patten that word was now circulating that "there was a list that had the names of the

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 4 of 16 PageID #:435

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

black secretaries, but no white secretaries," who had been recently hired. Patten did not have a suggestion or response.

On October 16, 2018, Plaintiff spoke to Board Vice President, Benita Rollins-Gay, and advised her of his concerns about public comment at the Board meeting on that date, based on the audit and the fact that employees in district offices were becoming aware that the audit was based on a list of names containing only racial minorities, and that he was not able to answer any questions about the reason behind the audit. Rollins-Gay stated that she wanted Plaintiff to direct all questions from the media to Defendant Board members Anne Hall and Peggy Patten, because they were the two Board members behind the audit.

Plaintiff continued to express concerns about the audit to members of the Board; specifically, that the way the audit had been conducted violated the collective civil rights of a protected class of employees. The Board attempted to keep the audit from becoming public knowledge due to concern about public perception.

On November 8, 2018, Plaintiff had a regularly scheduled meeting with Board member Paul Poulosky. Plaintiff again reiterated his concerns about the audit. Poulosky mentioned that the entire process was handled poorly from both Board and attorney actions. Later in the meeting, Poulosky stated that he needed to get in touch with Board member Anne Hall right away and tell her to delete all of the texts between them.

On November 12, 2018, Plaintiff electronically presented the Board with a Memorandum detailing his specific concerns regarding the audit. (Attached to the Second Amended Complaint as Exhibit D). Within the Memorandum, Plaintiff unequivocally stated that there was a perception that the Board was investigating only a small percentage of the total School District hires, and because the individuals whose hiring had been questioned were all employees of color, the audit was problematic—especially since the School District had previously committed to increasing the recruitment and retention of faculty and staff of color.

At the November 20, 2018 executive Board meeting, eight days after providing the Board with the Memorandum, Plaintiff was verbally notified that he would be placed on paid administrative leave for the remainder of the term of his contract, and that Dr. Preston Williams would be named as interim superintendent on December 4, 2019. On December 4, 2018, the Board voted to place Plaintiff on administrative leave for the remaining term of his Contract. Five Board members (Dimit, Poulosky, Hall, Patten, and Carter) voted in favor of Plaintiff being placed on leave, with two board members (Rollins-Gay and Fisher) opposed.

**\*4** Two other Administrators who had also been instrumental in the promotion of racial diversity within the District, Assistant Superintendents Katherine Barbour and Samuel Byndom, were also placed on administrative leave by the Board on that date. At the conclusion of the meeting, Rollins-Gay announced she would not be running for another Board term in 2019.

Plaintiff was not provided with a reason for having been placed on administrative leave. On February 24, 2019, the Board notified Plaintiff by certified mail that it would not be renewing his employment contract with the District. The Board affirmed its decision on May 6, 2019, at a special meeting of the School Board. The five Board members listed above (Dimit, Poulosky, Hall, Patten, and Carter) and Defendant Tori Exum voted to affirm the decision not to renew Plaintiff's contract.

*Plaintiff's Claims*

Counts I and II of the Second Amended Complaint allege that Plaintiff was retaliated against by Defendant Board after engaging in opposition to unlawful discriminatory practices. Count I is based on the IHRA, and Count II is based on Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3(a)). Those counts are not at issue in the Motion to Dismiss.

Count III alleges the individual Defendants violated Plaintiff's First Amendment rights to freedom of speech when they retaliated against him for exercising that right. Plaintiff alleges that he spoke as a private citizen on a matter of public concern when he informed the Board that the School District was engaging in discriminatory practices by targeting people of color in their hiring audit, and were violating federal and/or state law as a result. Defendants, acting under the color of law, misused their authority by punishing Plaintiff for reporting wrongdoing, and did not have adequate justification for treating an employee differently than they would the public. Plaintiff alleges that the conduct, undertaken intentionally and with callous disregard for Plaintiff's constitutional rights, would deter an ordinary person from exercising their First Amendment rights.

In Count IV, Plaintiff alleges that the Board violated his First Amendment rights pursuant to *Monell v. Department*

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 5 of 16 PageID #:436

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

of Social Services of the City of New York, 436 U.S. 658 (1978), because the individual Defendants were policymakers for the School District and had final decisionmaking authority with regard to Plaintiff's employment, including placing him on administrative leave and failing to renew his contract. Plaintiff alleges this was a deliberate choice to follow a course of action as official government policy, and thus the Board's official policy caused the deprivation of Plaintiff's First Amendment rights.

In Count V, Plaintiff alleges the individual Defendants engaged in a conspiracy, in violation of 42 U.S.C. § 1983, to deprive him of his right to freedom of speech and right to be free from retaliation for reporting that the Board was engaging in discriminatory practices. Plaintiff alleges that, in furtherance of the conspiracy, the individual Defendants, acting willfully and maliciously, reached an agreement amongst themselves to put Plaintiff on administrative leave and they subsequently voted not to renew his employment contract.

In Count VI, Plaintiff alleges the Board and individual Defendants violated the Illinois Whistleblower Act when they retaliated against him for reporting to the Board his reasonable belief that the Board's actions with regard to the audit were a violation of state and/or federal law. Plaintiff alleges Defendants retaliated against him by placing him on administrative leave and choosing not to renew his contract, because of his report of the Board's discriminatory practices. Plaintiff alleges that each Defendant took part in, assisted in, or participated in the decision to retaliate against him.

*5 Plaintiff attached to his Second Amended Complaint the following: Exhibit A-his Illinois Department of Human Rights ("IDHR") and Equal Employment Opportunity Commission ("EEOC") complaint; Exhibit B- IDHR Opt-out notice; Exhibit C- EEOC 90-day letter; Exhibit D- Plaintiff's November 12, 2018, letter to the Board concerning the alleged discrimination occurring due to the hiring audit.

## ANALYSIS

Defendants have moved to dismiss Counts III, IV, V, and VI of Plaintiff's Second Amended Complaint. Plaintiff objects to all of Defendants' arguments.

*Rule 12(b)(6) Standard*

When a motion to dismiss is filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the district court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in the plaintiff's favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). Federal Rules of Civil Procedure 8 and 12 set the conditions for a sufficient pleading. *Taha v. International Brotherhood of Teamsters*, 947 F.3d 464, 469 (7th Cir. 2020). Rule 8(a)(2) says a complaint "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). If a complaint falls short of this requirement, it risks dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Taha*, 947 F.3d at 469.

A claim satisfies Rule 8(a)(2)—and avoids dismissal under Rule 12(b)(6)—if the complaint alleges facts that show the claim is "plausible on its face." *Taha*, 947 F.3d at 469, quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

> Rule 8(a)(2) prescribes what a pleading must show; *Twombly* and *Iqbal* clarify that rule's demands. In the wake of those cases, a complaint must include facts showing a plausible—not merely "conceivable"—entitlement to relief. *Iqbal*, 556 U.S. at 683, 129 S.Ct. 1937. When a complaint's facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.' " *Id.* at 679, 129 S.Ct. 1937 (quoting FED. R. CIV. P. 8(a)(2)). That means a complaint must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678, 129 S.Ct. 1937. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955) (internal brackets omitted). In keeping with these principles, when considering the viability of a claim in the face of a Rule 12(b)(6) challenge, we may reject sheer speculation, bald assertions, and unsupported conclusory statements. See *Yeftich*, 722 F.3d at 915; *Iqbal*, 556 U.S. at 678, 681, 129 S.Ct. 1937; *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

*Taha*, 947 F.3d at 469.

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 6 of 16 PageID #:437

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

The court takes note that Plaintiff, in reference to his allegation of First Amendment retaliation in Count III, cites to the Seventh Circuit's decision in *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1999), that a complaint is not required to "allege all, or any, of the facts logically entailed by the claim[,]" that a "plaintiff does not have to plead evidence[,]" and that a "complaint does not fail to state a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." Indeed, *Bennett* held that, so far as it related to a Title VII racial discrimination claim, " 'I was turned down for a job because of my race' is all a complaint has to say." *Bennett*, 153 F.3d at 518.

**\*6** However, *Bennett* was decided in 1999, before *Iqbal* and *Twombly*. While *Bennett* remains good law, the Seventh Circuit has been careful to note that it remains so due to the minimal pleading standard for simple claims of race or sex discrimination in Title VII cases. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Plaintiff's claim in Count III is not a "simple claim of race or sex discrimination" under Title VII, but rather is a claim of retaliation due to engaging in protected activity under the First Amendment. Indeed, even under Title VII, the Seventh Circuit has cautioned that the very minimal pleading requirements approved in *Bennett* for claims of simple racial discrimination may not be enough for retaliation claims:

> The simple allegation of racial discrimination described in *Bennett* is factually richer than the empty assertion of Title VII retaliation here. People have reasonably clear ideas of how a racially biased person might behave, and a defendant responding to an allegation of racial bias can anticipate the sort of evidence that may be brought to bear and can investigate the claim (by inquiring if any decision-making employees have a background of making racially insensitive comments and the like). An allegation of retaliation for some unspecified act does not narrow the realm of possibility nearly as much. Further, once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical importance to the claim. Requiring a more detailed complaint in *Bennett* would have replicated the inefficient chase for facts decried in *Bennett* and *Dioguardi*.

> But to require a more detailed complaint in the present case is neither to adopt fact pleading nor to impose the heightened pleading required in some instances by Rule 9(b); it is only to insist upon easily provided, clearly important facts. The proper analogue for the present complaint is not a complaint alleging racial discrimination in hiring; it is a complaint in which the plaintiff withholds the basis upon which she suspects her employer acted: "I was turned down for a job for a reason forbidden by Title VII." To permit the EEOC's complaint would reward obfuscation, a perverse result.

*EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 782 (7th Cir. 2007).

Plaintiff's claim is a one for retaliation based on First Amendment activities. Plaintiff cannot just say "I was retaliated against for speaking out on racial discrimination." Rather, Plaintiff must allege that he spoke as a citizen on a matter of public concern and that Defendants retaliated against him for that speech, and must make such allegation in a manner that plausibly suggests that he has a right to relief, raising that possibility above a speculative level. See *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016).

*First Amendment Retaliation (Count III)*
Defendants argue that Plaintiff's First Amendment retaliation claim must be dismissed because Plaintiff was not speaking as a private citizen when he notified the Board that it was engaging in discriminatory practices and violating state and/or federal law by targeting people of color in its hiring audit. Plaintiff argues he was acting as a private citizen, because he was not bringing his concerns to the Board as part of any official policy, nor was his input sought by Board members.

"To establish a claim for retaliation in violation of the First Amendment, a public employee must prove that: (1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter speech, and (3) his speech was at least a motivating factor in the employer's action." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013). Under the first element, for a public employee's speech to be protected under the First Amendment, the employee must show that "(1) he made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) his interest in expressing that speech was not outweighed by the state's interests as an employer in 'promoting effective and efficient public service.' " *Swetlik*, 738 F.3d at 825, quoting *Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008).

**\*7** Defendant challenges the sufficiency of Plaintiff's First Amendment retaliation claim only on the first prong of the constitutional protection element, that is, whether Plaintiff made the speech as a private citizen. "The Supreme Court

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 7 of 16 PageID #:438

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

has held that 'when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.' " *Kubiak*, 810 F.3d at 481, quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description. *Kubiak*, 810 F.3d at 481. A focus on core job functions is too narrow. *Kubiak*, 810 F.3d at 482. Rather the court looks at whether the speech was made pursuant to the employee's official responsibilities. *Spiegla v. Hull*, 481 F.3d 961, 966 (7th Cir. 2007). Some factors the court looks at are whether the speech is intimately connected with the speaker's job and to whom the speaker directed the speech. *Kubiak*, 810 F.3d at 482.

Based on the allegations in Plaintiff's Second Amended Complaint, the court finds that Plaintiff's speech was not made as a private citizen, but rather was made pursuant to Plaintiff's position as superintendent of schools.

First, the court finds that Plaintiff's speech was made pursuant to his official job duties. Plaintiff was superintendent of schools. As such, Plaintiff, under the direction of the Board, had charge of the administration of the schools, and, in addition to the administrative duties, Plaintiff was to "make recommendations to the board concerning the budget, building plans, the locations of sites, *the selection, retention and dismissal of teachers and all other employees*, the selection of textbooks, instructional material and courses of study." See 105 Ill. Comp. Stat. 5/10-24.1 (emphasis added). Illinois law vests Plaintiff, as superintendent, with broad supervisory administrative and personnel-related powers in the School District. While *Garcetti* explicitly admonishes courts not to tolerate "excessively broad job descriptions" that might restrict artificially an employee's First Amendment rights, courts are also directed to take a "practical" view of whether an employee is speaking as an employee or as a citizen, and, in taking such a "practical" view, courts must take into account the employee's level of responsibility. *Tamayo*, 526 F.3d at 1092. The audit of School District personnel by the Board, and whether that audit was discriminatory and violative of the law, falls directly within the ambit of Plaintiff's job duties and responsibilities.

Plaintiff's own words indicate that his speech on the impropriety of the audit related to his official job duties. Paragraphs 24 through 27 of the Second Amended Complaint detail how Plaintiff himself, as superintendent, was focused on social justice initiatives and efforts to reduce racial inequality and disparities at the School District. Plaintiff, along with other members of the administration, formed the "Recruitment and Retention Committee" in 2017 to recruit, retain, and develop teachers, faculty, and staff who would reflect the demographics of the student population. This effort was even reflected in Urbana School District Board Policy 5:10, "Minority Recruitment." It would be expected that it would be Plaintiff's responsibility, as superintendent of schools and based on Plaintiff's own intimate involvement in the racial equality hiring plan that gave rise to the Board's audit, to report to the Board (his supervisor and employer) incidents of discriminatory/illegal activity related to the auditing and possible termination of School District employees. See *Houskins*, 549 F.3d at 491.

Plaintiff argues that Defendants have cited no formal reporting responsibilities for Plaintiff as superintendent in regard to the hiring audit, that the Board had not requested Plaintiff's input on the audit, and that the Board did not commission Plaintiff with the responsibility of conducting the audit. Thus, Plaintiff argues, his speech on the audit cannot be considered part of his official job duties.

**\*8** Plaintiff's assertion that his complaints to the Board about the audit were outside of his job duties is belied by a memorandum sent by Plaintiff to the Board on November 12, 2018, attached to the Second Amended Complaint as Exhibit D.

Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim, and they may be considered by a district court in ruling on the motion to dismiss without converting the motion into a motion for summary judgment. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013). Exhibit D meets all of these requirements.

In the memo, which was written on his apparently official Urbana School District #116 superintendent letterhead, Plaintiff, as "Donald Owen, Superintendent," states that he is writing to state his concerns over the hiring practices audit because "[o]ne of my duties is to ensure that the policies and practices of the district are being followed." School District policy and practice had been to work in tandem with Administration on such issues, but this time the Board had not clearly explained the purpose or reason for the audit.

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 8 of 16 PageID #:439

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

Plaintiff wrote that the audit's implementation, findings, and recommendations "all need to be carefully critiqued before any action is taken." Thus, when Plaintiff raised his concerns about the audit to the Board, he clearly believed he was doing so pursuant to his duty as superintendent "to ensure that the policies and practices of the district are being followed." There is nothing in Plaintiff's allegations, or Exhibit D, that indicates he was raising his concerns as a private citizen.

Plaintiff, in his Response, argues that he made other communications outside of the November 12, 2018, memorandum, but he does not say how those complaints differed from the manner and context of the complaints raised in the November 12, 2018, memo, or why those other complaints would be made in his capacity as a private citizen, as opposed to his status as an employee of the School District.

Next, the court's determination that Plaintiff spoke in his official capacity as superintendent is buttressed by the fact that Plaintiff only complained internally to his superiors, the Board.

To whom the speech is directed is a factor the court looks at to determine whether the speaker is speaking as a private citizen or in his capacity as a government employee. *Kubiak*, 810 F.3d at 482. When an employee shares complaints only with his or her employer, it weighs against finding that they spoke as a private citizen. See *Roake v. Forest Preserve District of Cook County*, 849 F.3d 342, 346 (7th Cir. 2017); *Tamayo*, 526 F.3d at 1091 (collecting cases where courts have determined that reports by government employees to their superiors concerning alleged wrongdoing in their government office were within the scope of their job duties, and, therefore, the employees were not speaking as private citizens); *Carter v. Illinois Gaming Board*, 2020 WL 1639914, at *3 (N.D. Ill. Apr. 2, 2020) ("If the public employee reports official misconduct in the manner directed by official policy, to a supervisor or an external body with formal oversight responsibility, then the employee speaks pursuant to her official duties and her speech is unprotected by the First Amendment.") (collecting cases). "By contrast, if an employee testifies about misconduct to a jury or grand jury, or reports misconduct outside official channels or in violation of official policy, she speaks as a private citizen and her speech may be constitutionally protected." *Carter*, 2020 WL 1639914, at *3 (collecting cases).

*9 In the Second Amended Complaint, the only listed instances of Plaintiff engaging in the allegedly protected speech were internal complaints to the Board itself or individual Board members. The Board was Plaintiff's employer. 105 Ill. Comp. Stat. 5/10-24.1. As previously noted, Exhibit D was an official memorandum from Plaintiff to the Board on November 12, 2018. The remaining instances of allegedly protected speech, as detailed in the Second Amended Complaint were all internal communications from Plaintiff to the Board or its individual members: (1) Plaintiff notified the Board that employees who had been selected were all people of color, and that it appeared the Board was targeting minorities (¶ 31); (2) Plaintiff raised the issue with the Board during its closed session meeting on September 24, 2018 (¶ 32); (3) Plaintiff expressed his concerns to Board member Defendant Patten on September 26, 2018 (¶ 34); (4) Plaintiff spoke to Board Vice President Rollins-Gay of his concerns on October 16, 2018 (¶ 35); (5) Plaintiff continued to express concerns about the audit to members of the Board (¶ 36); (6) Plaintiff expressed concerns about the audit to Board member Defendant Poulosky during a regularly scheduled meeting on November 8, 2018 (¶ 37).

Plaintiff, in his Response, argues that "Defendants further ignore the fact that the complaint deals with other communications outside of the November Board Memorandum." If Plaintiff is attempting to argue that he made communications outside of his communications to the Board, that is not borne out by the allegations in the Second Amended Complaint. All of his communications were to the Board itself as a body or to individual Board members. This is not a situation where Plaintiff spoke to an outside supervisory body, or outside law enforcement agency like the FBI, or a grand jury about wrongdoing. He made internal complaints to the supervisory body that employed him. In terms of reporting to an "official channel," the court agrees with Defendants that it is disingenuous to state that Plaintiff's "official channel" within the School District to report any wrongdoing was something other than making a report to the Board. If not the Board, then who?

The court finds Plaintiff's claim to be similar to one before the Seventh Circuit in *Roake v. Forest Preserve District of Cook County*, 849 F.3d 342, 346 (7th Cir. 2017). In *Roake*, the plaintiff police officer alleged that fellow officers retaliated against him for complaining about racial profiling and unlawful disciplinary action within the police force. The Seventh Circuit upheld the district court's Rule 12(b) (6) dismissal of the claim, noting that the plaintiff spoke pursuant to his official duties as a public employee because he "shared complaints only with his employer, and the

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 9 of 16 PageID #:440

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

complaints focused exclusively on official misconduct by his fellow officers." *Roake*, 849 F.3d at 346. The court noted that reporting police misconduct is a basic part of a police officer's job, and that, as an officer, the plaintiff had a duty to protect the public from harm, including harm resulting from illegal activity by law enforcement. *Roake*, 849 F.3d at 346. Thus, when the plaintiff internally reported that his fellow officers were abusing the public trust by acting illegally on the job, he was speaking as a public employee pursuant to his official responsibilities, and not "as a citizen contributing to the civic discourse." *Roake*, 849 F.3d at 346-47.

Likewise in the instant case, Plaintiff shared his complaints only with his employer and the complaints focused exclusively on the manner in which the internal audit of School District employees was being carried out. See *Roake*, 849 F.3d at 346-47. Plaintiff was merely doing his job, as codified in statute and noted by Plaintiff himself in the November 12, 2018, memorandum, when he reported to the Board (his supervisor and employer) his concerns about the propriety and legality of the audit, and, even if Plaintiff's concerns and actions in this area were pursuant to a more general duty as opposed to a specifically enumerated duty, a public employee's more general responsibilities are not beyond the scope of official duties for First Amendment purposes. See *Vose v. Kliment*, 506 F.3d 565, 571 (7th Cir. 2007); see also *Ulrey v. Reichhert*, 941 F.3d 255, 260 (7th Cir. 2019) (plaintiff assistant principal's complaint to the school board about superintendent's allowing student to bring smoking materials to school not protected speech because even if superintendent violated school district policy by making an exception allowing an adult student to possess cigarettes when he attended school, the speech fell within the plaintiff's official duties as her written job description included duties to "coordinate and administer student attendance and discipline policies"); *McArdle v. Peoria School Dist. No. 150*, 705 F.3d 751, 754 (7th Cir. 2013) (plaintiff principal's complaint to the school board about predecessor's misconduct not protected speech because "[t]his court has held that a public employee's commentary about misconduct affecting an area within her responsibility is considered speech as an employee even where investigating and reporting misconduct is not included in her job description or routine duties.").

 **\*10**  Plaintiff states, in his complaint, that "[i]n making these statements, Plaintiff spoke as a private citizen on a matter of public concern[,]" but offers no specific allegations in support of the assertion that he spoke as a private citizen. Plaintiff cannot escape the strictures of *Garcetti* by including in his complaint the conclusory legal statement that he "spoke as a private citizen," because Plaintiff cannot rely on "labels and conclusions," nor is the court bound to accept as true a legal conclusion couched as a factual allegation. See *Tamayo*, 526 F.3d at 1092.

Finally, the court finds the cases cited by Plaintiff in support of his argument that he spoke as a private citizen to be inapplicable or distinguishable from this case. Plaintiff cites *Garcetti* for the argument that, in order to be outside First Amendment protection, it is not enough that the speech took place inside an office, rather than publicly, or that it concerned the subject matter of the plaintiff's employment, but rather it must constitute "work product" that has been commissioned or created by the employer. *Garcetti*, 547 U.S. at 420-21. However, the Court's statements in regard to speech inside an office or subject matter of employment were only made as broad, generalized statements of the law, illustrating that the mere fact that speech occurred at the workplace or touched on a subject relating to a plaintiff's employment did not act as an absolute, automatic bar on First Amendment protection. *Garcetti*, 547 U.S. at 420-21 ("That Ceballos expressed his views inside his office, rather than publicly, is not *dispositive*" and "[e]mployees in some cases *may* receive First Amendment protection for expressions made at work." (Emphasis added); "The memo concerned the subject matter of Ceballos' employment, but this, too, is *nondispositive*[,]" because "[t]he First Amendment protects *some* expressions related to the speaker's job.").

Further, the court agrees with Defendants that Plaintiff's argument that *Garcetti* requires unprotected speech to be "work product" specifically commissioned or created by the employer is an exceedingly narrow and restrictive interpretation of the Supreme Court's holding. Rather, the Court's actual holding is "that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. This is the holding applied and interpreted by the Seventh Circuit in the years since *Garcetti*, and applied and interpreted to Plaintiff's case by this court. For the reasons stated above, the court has found Plaintiff's speech was made pursuant to his official duties as superintendent of schools.

Similarly unavailing is Plaintiff's citation to the Supreme Court's holding in *Givhan v. Western Line Consolidated*

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 10 of 16 PageID #:441

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

*School Dist.*, 439 U.S. 410, 415-16 (1979), for the proposition that "[n]either the Amendment itself nor our decisions indicate that this freedom is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public." Again, this court has not found that Plaintiff's speech was unprotected solely because he communicated internally with the Board as opposed to spreading his views in public, but, rather, found that it is unprotected because it was made pursuant to Plaintiff's official duties as superintendent. See *Garcetti*, 547 U.S. at 421.

Plaintiff cites to several cases in support of his argument that "if a public employee reports misconduct outside established channels or in violation of official policy, he speaks as a private citizen and his speech is constitutionally protected." These cases are distinguishable.

**\*11** First, in *Chaklos v. Stevens*, 560 F.3d 705 (7th Cir. 2009), the two plaintiffs, employed by the Illinois State Police ("ISP") to train forensic scientists, discovered that Illinois was going to pay an out of state organization to train forensic scientists without first soliciting competitive bids, and, in an effort to save taxpayers money, the plaintiffs wrote a letter to an ISP procurement official. The plaintiffs, however, had their own independent side business, Midwest Forensic Services ("MFS"), and the submitted letter was on MFS stationary, with the plaintiffs identified as MFS president and vice president, and noting that MFS could provide superior forensic scientist training to the State of Illinois. The plaintiffs were then fired from their ISP job.

The Seventh Circuit held that the plaintiffs were speaking as private citizens, not pursuant to their jobs as state employees. The court noted that the plaintiffs signed their letter as employees of MFS, "an outside company," and "did not complain to their own supervisors about matters relating to their jobs[,]" and thus did not submit the letter as part of their official duties. *Chaklos*, 560 F.3d at 712. The court also rejected the ISP's argument that, under the Illinois Procurement Code, the plaintiffs had a general duty to report their concerns about no-bid contracts. The court reiterated *Garcetti*'s caution about overly broad job descriptions that bear little resemblance to the duties an employee is actually expected to perform, and found that: (1) the plaintiffs did not report their concerns to the attorney general or chief procurement officer as required under the Code; and (2) that the plaintiffs were employed as scientists, and there was no expectation on the part of the ISP that the plaintiffs' job duties

included writing such a letter protesting the no-bid contracts and proposing their own services. *Chaklos*, 560 F.3d at 712.

Here, by contrast, Plaintiff submitted a letter in his official capacity as superintendent, on his official superintendent letterhead, and complained directly and only to his superiors, the Board. The court has also determined that, unlike in *Chaklos*, complaining about the type of misconduct at issue related directly to Plaintiff's job duties as superintendent of schools.

Plaintiff also cites to the Seventh Circuit's decision in *Houskins*. However, in *Houskins* the court found that First Amendment protection did *not* apply to an internal complaint made by a social worker employed by the county jail about an assault by a corrections officer, because she was fulfilling her responsibility as a jail employee to report incidents of misconduct immediately to a supervisor pursuant to the jail's general orders. The court did find that First Amendment protection *did* apply to a police report she filed the same day because it was "not made pursuant to her job, as the report was not generated in the normal course of her duties and most likely was similar to reports filed by citizens every day." *Houskins*, 549 F.3d at 491.

Here, Plaintiff's complaints were made internally, not to an outside agency, and were made pursuant to Plaintiff's job as superintendent, for reasons detailed above.

In *Spalding v. City of Chicago*, 186 F.Supp.3d 884 (N.D. Ill. 2016), the plaintiff police officer's speech reporting criminal misconduct by other officers to the FBI was protected under the First Amendment because it was made "to an outside law enforcement agency, on their own initiative, while off-duty and on their own time." *Spalding*, 186 F.Supp.3d at 905. In the instant case, Plaintiff's speech was not "off duty" and "on his own time," as it was made pursuant to his superintendent duties and while functioning in his role as superintendent, and was reported internally to his superiors, not to "an outside agency."

**\*12** For the same reasons, Plaintiff's citation to *Novick v. Staggers*, 2012 WL 2325661 (N.D. Ill. June 19, 2012), is unpersuasive. The plaintiff there reported hiring misconduct in a political campaign to the FBI, and "nothing in [the plaintiff's] job duties required him to report hiring misconduct to outside, federal investigators." *Novick*, 2012 WL 2325661, at \*4.

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 11 of 16 PageID #:442

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

Based on all of the above, Defendants' Motion to Dismiss is GRANTED with regard to Count III. Count III is dismissed.

*Monell (Count IV)*

The basis for Plaintiff's *Monell* claim in Count IV is that "the individual Defendants discriminated and retaliated against Plaintiff in violation of his rights under the First Amendment." Plaintiff's Second Amended Complaint (#20), ¶¶ 67-71. This is reaffirmed in Plaintiff's Response (#31) at pages 6-7. However, as described above, Plaintiff has failed to establish that he was deprived of a constitutional right. His speech was not constitutionally protected. Therefore his claim under *Monell* against the individual Defendants must also fail. See *Houskins*, 549 F.3d at 493; *King v. East St. Louis School Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights."). Therefore, Defendants' Motion to Dismiss is GRANTED as to Count IV, and that count is dismissed.

*Conspiracy Pursuant to § 1983 (Count V)*

"Conspiracy" is not an independent basis of liability under § 1983, in that, there must be an underlying constitutional injury, or the conspiracy claim fails. *Drager v. Village of Bellwood*, 969 F.Supp.2d 971, 984 (N.D. Ill. 2013). In order to state a § 1983 claim, a plaintiff must allege that the defendants deprived him of a constitutional right, and that they did so acting under color of state law, and a conspiracy claim premised on § 1983 must indicate "the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Drager*, 969 F.Supp.2d at 984, quoting *Cooney v. Casady*, 652 F.Supp.2d 948, 957 (N.D. Ill. 2009).

The court has already determined that Plaintiff has not stated a claim for deprivation of a constitutional right under the First Amendment in Count III and, thus, to the extent Plaintiff's conspiracy claim in Count V is premised on that claim, the conspiracy claim must be dismissed. See *Drager*, 969 F.Supp.2d at 984; *Gardunio v. Town of Cicero*, 674 F.Supp.2d 976, 989 (N.D. Ill. 2009) ("Because the Court has determined that Plaintiff has failed to state a viable equal protection claim, his attendant conspiracy claim also must be dismissed.").

While the First Amendment claim has been dismissed, the Title VII retaliation claim alleged in Count II still survives. It does not appear that Plaintiff has alleged Title VII as a basis for his § 1983 conspiracy claim, although it is not entirely clear. However, even if Plaintiff did allege Title VII as the underlying claim for his conspiracy charge, that would be similarly unavailing, as a Title VII claim cannot serve as the basis for a § 1983 claim. A § 1983 action may not be brought to vindicate rights conferred only by a statute that contains its own structure for private enforcement, such as Title VII. *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004); *Hamilton v. District of Columbia*, 720 F.Supp.2d 102, 110-11 (D.D.C. 2010) ("But individuals cannot bring suit under § 1983 to redress violations of rights conferred by Title VII because a right created by Title VII must be asserted directly under Title VII."); *Alexander v. Chicago Park District*, 773 F.2d 850, 855-56 (7th Cir. 1985); *Jones v. Regional Transportation Authority*, 2012 WL 2905797, at *6 (N.D. Ill. July 16, 2012) ("[I]n *Alexander v. Chicago Park District*, the Seventh Circuit reiterated that Title VII violations may not be brought under § 1983."); *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989) ("Section 1983 provides a remedy for deprivation of constitutional rights. It supplies no remedy for violations of rights created by Title VII.").

**\*13** Here, Plaintiff brought claims under both Title VII and § 1983, which is permissible "so long as the § 1983 claim is based on a distinct violation of a constitutional right[.]" *Patterson*, 375 F.3d at 225. Therefore, because the surviving Title VII claim cannot serve as the basis for a conspiracy claim under § 1983, the only viable underlying claim is the First Amendment claim, which has been dismissed. Thus, Plaintiff's § 1983 conspiracy claim in Count V must be dismissed as well. Defendants' Motion to Dismiss is GRANTED as to Count V.

*Illinois Whistleblower Act (Count VI)*

Plaintiff has brought a claim under the Illinois Whistleblower Act (740 Ill. Comp. Stat. 174/1 et seq.), alleging that he was terminated by the Board, in violation of the Act, in retaliation for reporting to the Board that it was violating state and/or federal law, or Board regulations, in conducting the audit in a discriminatory manner. Plaintiff alleges a violation of Section 174/15 of the Act, which prohibits retaliation for disclosing information to a government agency where the employee has reason to believe the information discloses a violation of state or federal law, rule, or regulation. He also alleges a violation of Section 174/20.2 of the Act, which prohibits an employer from threatening "any employee with any act or omission if that act or omission would constitute retaliation against the employee under this Act."

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 12 of 16 PageID #:443

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

Defendants first argue that Plaintiff's Whistleblower Act claim against the Board is barred by the Illinois Tort Immunity Act ("TIA"), which "provides that '[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.' " *Collins v. Bartlett Park District*, 997 N.E.2d 821, 833 (Ill. App. Ct. 2013), quoting 745 Ill. Comp. Stat. 10/2-109. Further, Defendants argue the individual Defendants are also protected by the TIA, which "provides that '[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.' " *Collins*, 997 N.E.2d at 833, quoting 745 Ill. Comp. Stat. 10/2-201.

However, as pointed out by Plaintiff, the Whistleblower Act claim against Defendants is one of retaliation, and "the Illinois Supreme Court has held that TIA immunizes government entities from liability for torts committed by employees, but retaliatory discharge claims are the result of wrongdoing by an employer." *Spratt v. Bellwood Public Library*, 380 F.Supp.2d 783, 789 (N.D. Ill. 2019), citing *Smith v. Waukegan Park District*, 896 N.E.2d 232 (Ill. 2008); see also *Nason v. Rockford Park District*, 2014 IL App (2d) 130364-U, ¶¶ 31-32 (Ill. App. Ct. May 1, 2014) (retaliatory discharge claim under the Whistleblower Act should not be barred by discretionary immunity as codified under Sections 2-109 and 2-201 of the TIA).

The federal district courts in Illinois that have had an opportunity in recent years to consider the TIA's impact on the Whistleblower Act are divided. In *Consolino v. Dart*, 2019 WL 4450498 (N.D. Ill. Sept. 17, 2019), the plaintiffs, longtime employees of the Cook County Sheriff's Office ("CCSO"), sued the CCSO and individual defendants for terminating their employment, allegedly in retaliation for starting a union drive and whistleblowing about conditions in the Cook County Jail. Counts VI and VII of the third amended complaint ("TAC") alleged a claim under the Illinois Whistleblower Act.

 *14  The court dismissed the Whistleblower Act claims, finding the TIA applied:

> Second, Plaintiffs' argument that the TIA does not apply to violations of the Illinois Whistleblower Act (IWA) is similarly unconvincing. Plaintiff cites Illinois cases that refuse to grant immunity under the TIA when the employer discharges an employee for seeking relief under the Illinois Workers' Compensation Act, 820 ILCS 305/1 et seq. (IWCA). [67 at 13–14 (citing *Smith*, 896 N.E.2d at 237).] This attempt to analogize to the IWA, however, ignores the plain language of the TIA: The TIA, by its own terms, does not apply to cases arising under the IWA. 745 ILCS 10/2–101. In contrast, the TIA contains no such provision regarding the IWA, and the IWA does not include any language limiting the applicability of the TIA. See 745 ILCS 10/2–101; 740 ILCS 174/1 et seq.; see also *Thompson v. Bd. of Educ. of Chicago*, 2014 WL 1322958, at *7 n.7 (N.D. Ill. Apr. 2, 2014). Furthermore, the Court cannot disregard the Illinois courts' refusal to read additional exceptions into their immunity laws. See *Barnett*, 665 N.E.2d at 813–814 (refusing to recognize exception for "willful and wanton" conduct); *Bloomingdale*, 752 N.E.2d at 1097–98 (refusing to recognize exception for actions taken with "corrupt and malicious motives"). As other courts have concluded, " '[t]hough it seems anomalous that public employees would have immunity from actions taken against whistleblowers, that is the result dictated by the plain language of the Tort Immunity and Whistleblower Acts.' " *Weiler*, 86 F. Supp. 3d at 886 (quoting *Thompson*, 2014 WL 1322958 at *7 n.7). Counts VI and VII must accordingly be dismissed because the Defendants are immune from Illinois tort suits stemming from firing decisions.

*Consolino*, 2019 WL 4450498, at *11.

Another district court has noted that "[t]he Tort Immunity Act specifically lists the statutes that constitute exceptions, and the Whistleblower Act is not one of them[,]" and "Illinois courts have been reticent to infer exceptions that are not expressly stated in the Tort Immunity Act." *Weiler v. Village of Oak Lawn*, 86 F.Supp.3d 874, 886 (N.D. Ill. 2015).

However, in *Spalding*, where the defendants argued the TIA barred a Whistleblower Act claim, the court did not apply the TIA. The court noted the limiting principle "that 'because the Tort Immunity Act is in derogation of the common law, it must be strictly construed against the public entities involved.' " *Spalding*, 186 F.Supp.3d at 918-19, quoting *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 679 (7th Cir. 2009). With that limiting principle in mind, the court wrote that "Section 2-201 immunizes an individual defendant only to the extent that the action he is being sued for involves both the making of a policy choice and the exercise of discretion[,]" and that, in the case before it, "the record would allow a reasonable jury to find that the defendant officers retaliated against Plaintiffs for statutorily protected activity,

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 13 of 16 PageID #:444

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

and such retaliation cannot be characterized as a policy decision or a discretionary 'judgment call between interests.' " *Spalding*, 186 F.Supp.3d at 919. The court concluded that "[i]t follows that the TIA does not immunize the defendant officers on summary judgment[,]" and "because the defendant officers may be found liable for some or all of the federal and state law claims, § 2-109 of the TIA, which provides that a local public entity cannot be liable if its employees are not liable, 745 ILCS § 10/2–109, does not immunize the City." *Spalding*, 186 F.Supp.3d at 919.

**\*15** The court finds instructive a decision from this district, *McBride v. McLean County*, 397 F.Supp.3d 1198 (C.D. Ill. 2019). In that case, a investigator with the public defender's office sued her employers under the Whistleblower Act, alleging they terminated her by using the pretext of budgetary concerns after she spoke out on matters regarding the misuse of county funds, of how the former public defender may have improperly aided the prosecution in a murder trial, and of how the current public defender, defendant Barnes, failed to report the old public defender's actions from that trial.

The defendants argued the TIA applied to bar the Whistleblower Act claims. The court noted that "to determine whether the Tort Immunity Act applies in this case, the Court must examine whether Plaintiff has pled that the Defendants discharged her in a manner involving a determination of policy and an exercise of discretion[,]" and that "[p]olicy determinations are those acts that require the balancing of competing interests to make a judgment as to what solution will best serve those interests." *McBride*, 397 F.Supp.3d at 1212.

The court found that defendant Wasson, the county administrator, had to make policy determinations due to the recently passed Illinois state budget, and had to balance the new budget issues with workforce reduction recommendations. The court concluded that:

> The policy determinations made by Defendant Wasson were left in the hands of the McLean County Board members to finalize the budget that was voted on and adopted on November 21, 2017. Accordingly, the act of suggesting a reduction in the workforce, which ultimately led to an adoption of the budget for Fiscal Year 2018 that eliminated Plaintiff's position, was a discretionary decision. Therefore, Defendant Wasson is immune. Because employee actions are immune from suit for such discretionary policy decisions, a local public entity is also immune from suit under the Tort Immunity Act where the tort in question flows from the employee. 745 ILCS 10/2–109. As such, Defendant McLean County is also immune.

*McBride*, 397 F.Supp.3d at 1212-13.

The court then addressed whether the TIA applied to bar Whistleblower Act claims in the same manner as to the plaintiff's old boss, public defender Barnes:

> However, accepting Plaintiff's allegations as true, Defendant Barnes was not balancing competing interests when she allegedly retaliated against Plaintiff for speaking out on matters of public concern by limiting Plaintiff's job duties and conveniently recommending to Defendant Wasson that Plaintiff's position be included in the workforce reduction shortly after she discovered Plaintiff provided a second affidavit in Boswell's post-conviction hearings. [internal citation omitted]. The provision of the Whistleblower Act alleged by Plaintiff prohibits employers from retaliating against an employee "because of the employee disclosing or attempting to disclose public corruption or wrongdoing." 740 ILCS 174/20.1. In this case, Plaintiff disclosed information she allegedly believed to be illegal to the Attorney General's office, Chief Judge Robb, and the local police. The Seventh Circuit has held that an employer who fired an employee after she exposed corrupt practices was not immune from retaliatory discharge under the Tort Immunity Act, because the employer failed to establish that he had made a policy decision. See generally *Valentino*, 575 F.3d at 679. Here, Defendant Barnes has failed to establish [that] she made a policy decision that resulted in a discretionary determination to eliminate Plaintiff's position.

**\*16** *McBride*, 397 F.Supp.3d at 1213.

The court finds the *McBride* court's application of the TIA to Whistleblower Act claims to be well-reasoned and persuasive. Here, Plaintiff's allegations under the

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 14 of 16 PageID #:445

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

Whistleblower Act against the Board are more akin the *McBride* plaintiff's claims against the public defender than the county administrator. Plaintiff is alleging that he disclosed possible state and/or federal violations and School District policy regulations violations to the Board, and, for speaking out on those matters of public concern, the Board retaliated against Plaintiff via adverse employment actions, ultimately resulting in Plaintiff's termination as superintendent. Based on those allegations, the Board fired Plaintiff after he exposed illegal practices, and would not be immune from retaliatory discharge under the Tort Immunity Act, because the Board has failed to establish that it made a policy decision. See *McBride*, 397 F.Supp.3d at 1213, citing *Valentino*, 575 F.3d at 679. Thus, the TIA will not apply to bar Plaintiff's Whistleblower Act claim.

Defendants next argue that Plaintiff cannot state a claim under Section 174/15. First, Defendants argue that Plaintiff does not allege that he disclosed anything in a "judicial or other proceeding," and as such, cannot state a claim under Section 15(a). Plaintiff does not contest this argument. Thus, the court agrees Plaintiff is not making a claim under Section 174/15(a) of the Act.

Defendants further argue that Plaintiff cannot state a claim under Section 174/15(b). "[T]o establish a cause of action under section 15(b), the employee must show (1) an adverse employment action by his or her employer, (2) which was in retaliation (3) for the employee's disclosure to a government or law enforcement agency (4) of a suspected violation of an Illinois or federal law, rule, or regulation." *Sweeney v. City of Decatur*, 79 N.E.3d 184, 188 (Ill. App. Ct. 2017).

Defendants argue that Plaintiff cannot state a claim because, under the third prong, Plaintiff must have made his disclosure to some government or law enforcement agency *other* than the alleged violator. Here, Plaintiff disclosed to the Board, the alleged violator. Plaintiff, in response, appears to misconstrue Defendants' argument, and argues that the Board is a governmental agency under the Act. Defendants are not arguing that the Board is not a governmental agency. Defendants are arguing that the Act does not apply where the whistleblower only discloses the violation to the violator.

In *Brame v. City of North Chicago*, 955 N.E.2d 1269 (Ill. App. Ct. 2011), the plaintiff, a police lieutenant, brought a claim against the defendants the city, the mayor, and the chief of police, under Section 15(b) of the Act, alleging that the chief of police retaliated against him for disclosing information to the mayor concerning what the plaintiff believed was criminal activity committed by the chief. At trial, the defendants argued that the Act does not support the plaintiff's claim for reporting suspected unlawful activity to his own employer, even if that employer is a government or law enforcement agency. The trial court agreed and granted summary judgment.

*17 The appellate court reversed, holding that the plain language of the Act supported such a cause of action even if the government agency is also the employer. *Brame*, 955 N.E.2d at 1271.

The court found:

> The language of the Act is plain and consistent. Clearly, the legislature intended to afford relief to employees retaliated against by their employers for reporting criminal activity to government or law-enforcement agencies. There are no other requirements or exceptions written in the Act. Thus, when plaintiff informed the mayor about the alleged misconduct of the chief, plaintiff disclosed the information to a government or law-enforcement agency. In fact, plaintiff brought his concerns to one of the highest government or law-enforcement officials in the jurisdiction where the suspected illegal conduct took place. That plaintiff disclosed the alleged criminal activity to his own employer, who also happens to be the head of a "government or law enforcement agency," does not change the outcome. The result is dictated by the plain language of the Act.

*Brame*, 955 N.E.2d at 1271.

The court went on to hold that the statute only required an employee to report to a government or law enforcement agency, and no exception applied if a government or law enforcement agency was also the employer. *Brame*, 955

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 15 of 16 PageID #:446

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

N.E.2d at 1272-73. Had the legislature intended that the Act not apply to reports made to an employee's own government agency, "it certainly would have included such a limitation." Brame, 955 N.E.2d at 1273.

A different result was reached by the appellate court six years later in *Sweeney*. In *Sweeney*, the plaintiff was appointed the police chief of Decatur, and reported directly to the city manager, Gleason. Gleason told the plaintiff to provide a police car and uniformed officer to drive him to the airport so he could start his vacation. The plaintiff told Gleason his use of public resources was wrong. The plaintiff also discussed the situation with the deputy police chief, Getz, who agreed Gleason's request was improper but volunteered to drive Gleason anyway. After Gleason returned from vacation, the plaintiff again informed him this was an improper use of public resources. Gleason stated he understood the objection, but the two's relationship was "difficult" after this.

The plaintiff filed a Section 174/15(b) Whistleblower Act claim against the City of Decatur. The appellate court acknowledge *Brame*'s holding that disclosure to an employer in a government or law enforcement agency falls under 174/15(b). The court noted that, unlike in *Brame*, the plaintiff did not report Gleason's alleged violation of Illinois law to Gleason's superior. The question for the court, then, was whether telling the alleged government violator his acts are improper constitutes "disclosing information" under Section 174/15(b) of the Whistleblower Act. Sweeney, 79 N.E.3d at 189.

The court, after conducting a statutory analysis, found that:

> Simply having a conversation with the wrongdoer about the impropriety of his or her actions is not exposing the alleged improper activity, making it known, or reporting the wrongful conduct. The fact the violator is the employee's boss does not alter the analysis, as the information is still not disclosed. We hold section 15(b) of the Whistleblower Act does not protect an employee who simply notes the impropriety of conduct with the alleged wrongdoer, as that does not constitute the disclosure of information under the Whistleblower Act.

**\*18**  Sweeney, 79 N.E.3d at 190.

The court concluded that since the plaintiff only alleged the disclosure of information was made to Gleason, the violator, the plaintiff had failed to state a cause of action under the Whistleblower Act. Sweeney, 79 N.E.3d at 190.

Since *Sweeney*, federal district courts have interpreted Section 174/15(b) of the Act in a similar manner. See MiMedx Group, Inc. v. Fox, 2018 WL 558500, at \*9 (N.D. Ill. Jan. 24, 2018) (internal reporting is insufficient to trigger the Act's protections); Huang v. Fluidmesh Networks, LLC, 2017 WL 3034672, at \*3 (N.D. Ill. July 18, 2017) (plaintiff's reporting of securities violations internally failed to state a Whistleblower Act claim because under the IWA, there is no cause of action where an employee reveals information only to his or her employer, and even though the complaint states that the plaintiff had "indicated" to his supervisors that he would report the alleged violation "to the appropriate authorities," the complaint fails to allege that the plaintiff actually did so).

At least one Illinois Appellate Court decision released after *Sweeney* reached a similar conclusion. In Runge v. Board of Education for Community Unit School District No. 300, 2019 IL App (2d) 180190-U (Ill. App. Ct. Feb. 28, 2019), the plaintiff, a special education teacher, made claims under the Whistleblower Act that she was dismissed from her job after she disclosed to the principal, the district's superintendent, assistant superintendent, and chief legal counsel, that the principal and the principal's administration were violating special education requirements with regard to two of the plaintiff's students.

Concerning her disclosure to the principal, the appellate court noted that the plaintiff repeatedly averred that she informed the principal that the school was violating the students' special education needs and requirements, and this would "plainly" be insufficient disclosure under the Act standing alone, because, "[f]or disclosure to be cognizable under the Act, it must not be solely to the alleged wrongdoer." Runge, 2019 IL App (2d) 180190-U, at ¶ 39. The court continued that "[i]nforming the alleged wrongdoer about the impropriety of her actions does not expose, make known, or report the wrongful conduct; the fact that the alleged wrongdoer is the

Case: 1:24-cv-11350 Document #: 29-5 Filed: 02/10/25 Page 16 of 16 PageID #:447

Owen v. Board of Education of Urbana School District #116, Not Reported in Fed....

whistleblower's boss does not change the analysis, because the information has not been disclosed for purposes of the Act." *Runge*, 2019 IL App (2d) 180190-U, at ¶ 39. "As *Sweeney* makes clear, the disclosure of the wrongdoing to the wrongdoer him-or herself is insufficient to expose, to make known, or to report the wrongful conduct, even if the wrongdoer happens to be the employee's boss and the head of a government agency." *Runge*, 2019 IL App (2d) 180190-U, at ¶ 39. See also *Snow v. Department of Human Services*, 2019 IL App (4th) 180060-U ¶¶ 49-50 (Ill. App. Ct. Jan. 10, 2019) (disclosure means bringing previously unknown information of illegal or unethical activities to a supervisor or a public body, and informing the violator his or her actions are improper does not expose to view or make known the alleged improper activity).

**\*19** Based on *Sweeney*, and the cases following *Sweeney*, Plaintiff has not stated a claim under Section 174/15(b). All of Plaintiff's allegations indicate that he only complained about the audit internally, to his employer, the Board, the alleged violator, which does not constitute "disclosure" under the Act. See *Sweeney*, 79 N.E.3d at 190; *Runge*, 2019 IL App (2d) 180190-U, at ¶ 39; *Huang*, 2017 WL 3034672, at \*3. Plaintiff did not make known previously unknown information of illegal or unethical conduct to his supervisors or a public body. See *Snow*, 2019 IL App (4th) 180060-U at ¶ 49. All he did was inform the alleged wrongdoer about the impropriety of its/their actions, which does not expose, make known, or report the wrongful conduct, and the fact that the Board is Plaintiff's boss does not change the analysis, because the information has not been disclosed for purposes of the Act. See *Runge*, 2019 IL App (2d) 180190-U, at ¶ 39. Plaintiff cannot state a claim under Section 174/15(b) of the Act.

Plaintiff also raises a claim pursuant to Section 174/20.2 of the Act, under which an employer may not threaten any employee with any act or omission if that act or omission would constitute retaliation against the employee under this Act. However, Defendants assert, and the court agrees, that nowhere in Plaintiff's Second Amended Complaint, whether in Count VI itself or the "Allegations Common to All Counts," does Plaintiff actually allege that the Board as an entity or any individual Board member ever *threatened* to retaliate against Plaintiff in any way, until he was actually allegedly retaliated against, when he was verbally notified at the November 20, 2018, Board meeting that he would be placed on paid administrative leave for the remainder of his contract, and that Dr. Preston Williams would be named interim superintendent. Therefore, Plaintiff has not stated a claim under Section 174/20.2.

Based on the foregoing, Defendants' Motion to Dismiss is GRANTED in this regard, and Plaintiff's claim in Count VI under the Illinois Whistleblower Act is dismissed.

IT IS THEREFORE ORDERED:

(1) Defendants' Motion to Dismiss (#26) is GRANTED. Counts III, IV, V, and VI of the Second Amended Complaint are DISMISSED. Individual Defendants Dimit, Hall, Carter, Poulosky, Patten, and Exum are dismissed and terminated as Defendants in this case. Counts I and II against Defendant Board remain pending.

(2) This case is referred to the magistrate judge for further proceedings in accordance with this Order.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 12813968

---

End of Document © 2025 Thomson Reuters. No claim to original U.S. Government Works.